# TOLLING AGREEMENT

This Tolling Agreement ("Agreement") is made effective on this 20th day of December, 2018 (the "Effective Date"), by and between Barbara Meier, Madison Hough, Jason Hough, Govinda Hough, Tiffany Young, Sandra Stokes, Yolanda McPherson, Troy Harvey, and Bill Crowell (collectively, "Plaintiffs") and Alan B. Miller ("Miller") (collectively referred to herein as "Parties" and individually as a "Party").

## RECITALS

WHEREAS, Plaintiffs filed a lawsuit against Miller and others styled *Barbara Meier, et al. v. UHS of Delaware, Inc., et al.*, filed in the United States District Court for the Eastern District of Texas, Sherman Division, Case No. 4:18-cv-00615-ALM (the "Lawsuit");

WHEREAS, Plaintiffs alleged in the Lawsuit that, among other things, Miller owns 81% of the general partnership interest of Millwood Hospital, LP;

WHEREAS, Douglas Tewksbury has provided an affidavit (fully incorporated herein as **Exhibit A**) stating that Miller does not have any direct ownership interest in Millwood Hospital, LP;

WHEREAS, direct ownership is defined to mean any equity interest including stock, partnership interest, limited partnership interest, or membership interest in any form of limited liability company;

WHEREAS, Miller does own approximately 83.1% of the voting stock in the company that is publicly traded as UHS, but has no direct ownership interest in any hospitals in Texas and is not a signatory on the management agreements for any of the hospitals in this Lawsuit;

WHEREAS, the Parties mutually desire a reasonable opportunity to further evaluate and investigate the aforementioned claims, and/or otherwise possibly attempt to resolve this dispute without prejudice by reason of the passage of additional time, and without the need to continue a civil action to prevent the expiration or bar of any of the aforementioned claims or defenses by the passage of additional time;

WHEREAS, the Parties desire and intend to hereby enter into an agreement to interrupt and/or toll any and all applicable statutes of limitations and/or other time periods which create deadlines for the commencement of any civil action or other formal commencement of the potential claims;

WHEREAS, Plaintiffs are willing to dismiss Miller from the Lawsuit without prejudice in exchange for this Agreement;

WHEREAS the Parties agree to file this agreement as of record with the Court and request an Order from the Court that dismisses Miller without prejudice from the Lawsuit and prohibits reference by any person to the fact that Miller was once a party to the Lawsuit or the facts giving

rise to Miller's inclusion in the Lawsuit, provided Miller is not later joined to this Lawsuit via the terms set forth in the Agreement; and

WHEREAS, the Parties agree that they will not object to or otherwise attempt to hinder the production of otherwise discoverable documents solely on the basis that Miller is not a party to this Lawsuit.

## AGREEMENT

NOW, THEREFORE, for and in consideration of the foregoing and the mutual promises and covenants set forth herein and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. *Notice of Dismissal Without Prejudice.* Within three (3) business days of the execution of this Agreement by all Parties, Plaintiffs will dismiss Miller from the Lawsuit without prejudice.

2. *Tolling.* Commencing for all purposes on October 1, 2018 (the "*Commencement Date*") and ending on the longer of the (a) deadline to add additional parties to the Lawsuit or any amended deadline to add additional parties to the Lawsuit, or (b) one (1) year after the Effective Date of this Agreement (the "*Expiration Date*," and such period of time between the Commencement Date and the Expiration Date being referred to herein as the "*Tolled Time Period*"), the Parties agree that the running of all time periods and statutes of limitation for the assertion of any rights, claims, demands, causes of action, defenses, or avoidance theories by Plaintiffs relating to any of the issues raised by Plaintiffs' First Amended Original Complaint filed on October 1, 2018 in the Lawsuit, are in all respects, tolled. The Parties further agree that the running of all time periods and statutes of limitation for the assertion of any rights, claims, demands, causes of action, defenses, or avoidance theories by Miller relating to any of the issues raised by Plaintiffs' First Amended Original Complaint filed on October 1, 2018 in the Lawsuit are in all respects, tolled until the Expiration Date plus forty five (45) days.

3. *No Resurrection of Claims.* This Agreement shall not in any manner revive, resurrect, or create any claims, rights, causes of action, or suits that have expired or are barred by any applicable statute of limitations or repose or other rule, provision, defense, or principle based upon the passage of time (including, without limitation, waiver, estoppel, and laches) whether statutory, contractual, or otherwise, as of October 1, 2018. This Agreement shall have no application to any claims, rights, causes of action, or suits commenced other than the claims that have been or could be asserted in the Lawsuit. The Parties reserve all rights to assert any defense or counterclaim arising out of or related to the allegations in the Lawsuit.

4. *No Admissions Regarding Statutes of Limitation.* This Agreement does not constitute any admission of law or fact or acknowledgment on the part of any Party regarding any issue concerning any statute of limitations. Plaintiffs expressly reserve the right to assert that no statute of limitations applies or that other principles of law or equity have tolled any applicable statutes of limitations separate and apart from this Agreement. Miller expressly reserves the right to assert, plead, or otherwise raise any defense based on the running of any applicable statute of limitations, or any defense based on other principles concerning the timeliness of commencing a civil action,

so long as any such argument or defense is not based upon the passage of time during the Tolled Time Period. However, neither Party may assert as a defense that this Agreement is invalid and/or that any other laws or principles supersede or preclude a tolling agreement.

5. <u>No Admission Regarding Claims or Defenses</u>. This Agreement is not an admission by any of the Parties that valid claims or defenses exist or do not exist for or against any of the Parties. By entering into this Agreement, none of the Parties admits to any claim in favor of the other, or to any fault, failure, or wrongdoing, or to any responsibility from one Party to the other. The purpose of this Agreement is simply to toll or suspend the running of time periods and statutes of limitation during the Tolled Time Period as stated herein, and not to constitute any admission or other concession.

6. <u>Benefit</u>. This Agreement shall apply to, be binding on, and inure to the benefit of the individuals and legal entities that are signatories to this Tolling Agreement and on their respective assignees, successors, indemnities, beneficiaries, guardians, administrators, or heirs at law.

7. <u>Headings and Pronouns</u>. The headings in this Agreement are inserted for convenience and identification only and are in no way intended to describe, interpret, or limit the scope, extent, or intent of this Tolling Agreement or any provision hereof. All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular, or plural, wherever the context of the Tolling Agreement so requires.

8. <u>Termination</u>. This Agreement shall expire and terminate on the Expiration Date, unless extended by an amendment that satisfies the terms of this Agreement.

9. <u>Amendment</u>. This Agreement may only be amended or modified by written agreement signed by the Parties to which any such amendment or modification applies, or their respective counsel.

10. <u>Successors and Assigns</u>. This Agreement shall be binding and effective with respect to any legal representative, successor, assignee, transferee, or guarantor of any of the Parties.

11. <u>Entire Agreement</u>. This Agreement constitutes the Parties' entire agreement with respect to the subject matter hereof, and any prior oral or written statements concerning its subject are merged herein for all purposes and are of no further force and effect. No oral agreements regarding the subject matter of this Agreement exist, and each Party expressly disclaims any reliance on any such promise or representation in deciding to enter this Agreement, except to the extent specifically set forth in this Agreement. The Parties expressly agree that no representations, warranties, or other statements or promises have been made by any Party to the other Parties in connection with this Agreement that are not fully expressed herein.

12. <u>Severability</u>. The provisions of this Agreement are intended to be severable. If any provision of this Agreement is held invalid or unenforceable, in whole or in part, such provision shall not in any manner affect the validity or enforceability of the remaining provisions of this Agreement.

13. <u>Authority</u>. The attorneys signing this Agreement represent that they have the authority to

execute this Agreement and bind their clients.

14.     Governing Law. This Agreement shall be governed under the laws of Texas, without regard to any State's choice-of-law rules.

15.     Counterparts. This Agreement may be executed in two or more counterparts; it shall not be necessary that the signatures of all Parties hereto be contained on any one counterpart, and each counterpart shall constitute one and the same agreement. This Agreement may also be executed by PDF or facsimile signatures, which shall be deemed originals for all purposes.

    IN WITNESS WHEREOF, the Parties have executed this Agreement to be effective on the Effective Date.

[REST OF PAGE INTENTIONALLY BLANK]

**AGREED:**

_/s/ Frank L. Branson_
Frank L. Branson
John Tindall Burkhead
THE LAW OFFICES OF FRANK L. BRANSON, P.C.
Highland Park Place
4514 Cole Avenue, 18th Floor
Dallas, Texas 75205
Tel: (214) 522-0200
Fax: (214) 521-5485
flbranson@flbranson.com
jburkhead@flbranson.com

Martin J. Cirkiel
CIRKIEL & ASSOCIATES, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
Tel: (512) 244-6658
Fax: (512) 244-6014
marty@cirkielaw.com

ATTORNEYS FOR PLAINTIFFS

_/s/ Stacy L. Brainin_
Stacy L. Brainin
Anne M. Johnson
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Tel: (214) 651-5000
Fax: (214) 651-5940
stacy.brainin@haynesboone.com
anne.johnson@haynesboone.com

ATTORNEYS FOR DEFENDANT
ALAN B. MILLER

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BARBARA MEIER, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 4:18-cv-00615-ALM |
| | § | |
| UHS OF DELAWARE, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## AFFIDAVIT OF DOUGLAS TEWKSBURY

BEFORE ME, the undersigned authority, on this day personally appeared Douglas Tewksbury, who, being by me duly sworn, stated on her oath the following:

1. My name is Douglas Tewksbury. I am over twenty-one years of age, am of sound mind, and am competent to make this affidavit and to testify to the facts stated therein. I have personal knowledge of the facts stated herein, and they are true and correct.

2. Since 2016, I have been employed as a senior corporate paralegal with UHS of Delaware, Inc.

3. I am responsible for, among other things, assisting facilities with the preparation and drafting of applications and documents filed with state regulatory bodies.

4. In March 2018, I completed a Psychiatric Hospital License Renewal Application for Millwood Hospital, LP (the "Application"), an indirect subsidiary of Universal Health Services, Inc. ("UHS"), to be submitted to the Texas Department of State Health Services. The Application included an Ownership Addendum requiring a list of any owner of Millwood Hospital, LP that was a partnership with individuals as partners or a corporation in which an individual has an ownership interest of at least 25%.

5.    In completing the Ownership Addendum, I assumed it required a list of any owner of Millwood Hospital, LP *or a parent company*. Accordingly, I listed "Alan B. Miller" as having 83.1% ownership, which was Alan B. Miller's beneficial stock ownership of UHS at the time. My assumption was incorrect and my inclusion of Alan B. Miller in the Application's Ownership Addendum was an error.

6.    Alan B. Miller was not listed as an owner in any previous version of the Psychiatric Hospital License Renewal Application for Millwood Hospital, LP, and Alan B. Miller does not have any direct ownership interest in Millwood Hospital, LP.

_____
Douglas Tewksbury

SWORN TO AND SUBSCRIBED before me by Douglas Tewksbury on November 15, 2018, to certify which witness my hand and seal of office.

_____
Notary Public in and for the
State of Pennsylvania

My commission expires: _____

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHERYL KIM HARTLINE, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires June 30, 2020

2