## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **BARBARA MEIER,** *et al.***,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Case No. 4:18-cv-00615-ALM** |
| | § | |
| **UHS OF DELAWARE, INC.,** *et al.***,** | § | |
| | § | |
| **Defendants.** | § | **JURY TRIAL DEMANDED** |

## UNIVERSAL HEALTH SERVICES, INC.'S AND
## UHS OF DELAWARE, INC.'S MOTION FOR SUMMARY JUDGMENT

Stacy L. Brainin
Anne M. Johnson
Bill Morrison
Neil Issar
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Tel: (214) 651-5000
Fax: (214) 651-5940

# TABLE OF CONTENTS

I.  Introduction ................................................................................................................. 1

II.  Statement of Issues ...................................................................................................... 2

III.  Legal Standard ............................................................................................................. 2

IV.  Statement of Undisputed Material Facts ...................................................................... 3

V.  Procedural Background ................................................................................................ 7

VI.  Arguments & Authorities ............................................................................................. 8

    A.  Plaintiffs' RICO Claim Fails as a Matter of Law. ................................................. 9

        1.  Plaintiffs Have Failed to Establish, and Have No Evidence of, Injury Proximately Caused by UHS's Alleged Racketeering Activity. ................................................................................................ 10

        2.  Plaintiffs Have Failed to Establish, and Have No Evidence of, Two or More Predicate Acts. ............................................................ 13

            a.  *The Claims of Mail Fraud and Wire Fraud as Predicate Acts Fail as a Matter of Law.* ............................................. 14

            b.  *The Claims of Other Predicate Acts Also Fail as a Matter of Law.* ............................................................................ 15

        3.  Plaintiffs Have Failed to Establish, and Have No Evidence of, a Pattern of Racketeering Activity ........................................................ 17

        4.  Plaintiffs Have Failed to Establish, and Have No Evidence of, the Existence of an Enterprise. ........................................................ 18

        5.  Plaintiffs Have Failed to Establish, and Have No Evidence of, the Existence of a RICO conspiracy. ................................................ 19

    B.  Plaintiffs' Rehabilitation Act Claim Fails as a Matter of Law. ............................ 20

    C.  Plaintiffs' Civil Conspiracy Claim Fails as a Matter of Law ............................... 22

    D.  Plaintiffs' Respondeat Superior Claim Fails as a Matter of Law. ........................ 24

    E.  Plaintiffs' Negligence Claim Fails as a Matter of Law .......................................... 25

    F.  Plaintiffs' Gross Negligence Claim Fails as a Matter of Law. ............................. 26

G.     Plaintiff Barbara Meier's Non-RICO Claims Also Fail as a Matter of Law Because They Are Barred by Statutes of Limitations............................................27

VII.   Prayer .................................................................................................................... 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Achee v. Port Drum Co.*,
    197 F. Supp. 2d 723 (E.D. Tex. 2002) ...................................................................27

*Albritton v. Quarterman*,
    2009 WL 585659 (E.D. Tex. Mar. 6, 2009) ..........................................................21

*Allstate Ins. Co. v. Plambeck*,
    802 F.3d 665 (5th Cir. 2015) ................................................................................10

*Am. Tobacco Co., Inc. v. Grinnell*,
    951 S.W.2d 420 (Tex. 1997)..................................................................................22

*Atkinson v. Anadarko Bank & Tr. Co.*,
    808 F.2d 438 (5th Cir. 1987) ................................................................................19

*Balle v. Nueces Cty., Tex.*,
    690 F. App'x 847 (5th Cir. 2017) .........................................................................30

*Bonton v. Archer Chrysler Plymouth, Inc.*,
    889 F. Supp. 995 (S.D. Tex. 1995) .......................................................................14

*Borskey v. Medtronics, Inc.*,
    1995 WL 120098 (E.D. La. Mar. 15, 1995) ..........................................................10

*Boudreaux v. Swift Transp. Co., Inc.*,
    402 F.3d 536 (5th Cir. 2005) ..................................................................................3

*Bowman v. Sandofi-Aventis U.S.*,
    2009 WL 5083435 (W.D. Tex. Dec. 10, 2009) ........................................27, 28, 30

*Bradley v. Phillips Petroleum Co.*,
    527 F. Supp. 2d 625 (S.D. Tex. 2007), *aff'd*, 337 F. App'x 397 (5th Cir. 2009) ...................10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).............................................................................................2, 3

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994)...............................................................................................16

*Conrad v. Krc*,
    2016 WL 5853738 (E.D. Tex. June 17, 2016), *aff'd*, 678 F. App'x 236 (5th
    Cir. 2017) ........................................................................................................19, 20

*DiLosa v. City of Kenner*,
2004 WL 2984342 (E.D. La. Dec. 16, 2004)........................................................................24

*Doe v. Steward Health Care Sys. LLC*,
2018 WL 4233816 (S.D. Tex. July 31, 2018)........................................................................20

*Dunn v. Bd. of Incorporators African Methodist Episcopal Church*,
2002 WL 340772 (N.D. Tex. Feb. 28, 2002)............................................................................8

*Eber v. Harris Cty. Hosp. Dist.*,
130 F. Supp. 2d 847 (S.D. Tex. 2001) ...........................................................................28, 30

*Elliott v. Foufas*,
867 F.2d 877 (5th Cir. 1989) ........................................................................................13

*Frame v. City of Arlington*,
657 F.3d 215 (5th Cir. 2011) ...................................................................................20, 27

*Fredericksen v. Halliburton Co.*,
2011 WL 1232991 (S.D. Tex. Mar. 31, 2011)........................................................................24

*Garcia v. Lion Mexico Consol. L.P.*,
2018 WL 6427350 (W.D. Tex. Sept. 14, 2018)........................................................................12

*Gay v. Aramark Unif. & Career Apparel, Inc.*,
2007 WL 4190781 (S.D. Tex. Nov. 21, 2007) .................................................................25, 26

*Gibson v. Hous. Launch Pad*,
378 F. App'x 399 (5th Cir. 2010) ...................................................................................29

*Gordon v. Neugebauer*,
2014 WL 6611991 (N.D. Tex. Nov. 21, 2014)........................................................................13

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) ........................................................................................25

*Hargraves v. Armco Foods, Inc.*,
894 S.W.2d 546 (Tex. App.—Austin 1995, no writ)............................................................29

*Hemi Grp., LLC v. City of New York*,
559 U.S. 1 (2010)......................................................................................................9

*In re Heritage Org., LLC*,
2008 WL 5215688 (Bankr. N.D. Tex. Dec. 12, 2008) ........................................................27

*Holmes v. Sec. Inv'r Prot. Corp.*,
503 U.S. 258 (1992)....................................................................................................10

*Hughes v. Tobacco Inst.*,
   2000 WL 34004261 (E.D. Tex. May 5, 2000), *aff'd*, 278 F.3d 417 (5th Cir.
   2001) ..................................................................................................................................11

*Hughes v. Tobacco Inst.*,
   278 F.3d 417 (5th Cir. 2001) ...............................................................................................9

*Jennings v. Towers Watson*,
   2018 WL 2422054 (N.D. Tex. Apr. 16, 2018) ....................................................................23

*Joe N. Pratt Ins. v. Doane*,
   2008 WL 819011 (S.D. Tex. Mar. 20, 2008) ......................................................................16

*K&F Rest. Holdings, Ltd. v. Rouse*,
   2018 WL 3553422 (M.D. La. July 24, 2018) ......................................................................16

*Kurth v. Gonzales*,
   472 F. Supp. 2d 874 (E.D. Tex. 2007) ...........................................................................3, 21

*Labaty v. UWT, Inc.*,
   121 F. Supp. 3d 721 (W.D. Tex. 2015) ...............................................................................15

*Lollar v. Baker*,
   196 F.3d 603 (5th Cir. 1999) ..............................................................................................21

*In re MasterCard Int'l. Inc., Internet Gambling Litig.*,
   132 F. Supp. 2d 468 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002) ...........................16

*Mayes v. Stewart*,
   11 S.W.3d 440 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ..................................27

*Mendez v. Caterpillar Inc.*,
   2011 WL 6999659 (W.D. Tex. Dec. 16, 2011) .............................................................25, 26

*Morriss v. Enron Oil & Gas Co.*,
   948 S.W.2d 858 (Tex. App.—San Antonio 1997, no writ) ....................................................27

*Morse v. Ditech Fin., LLC*,
   2017 WL 4230550 (E.D. Tex. Sept. 25, 2017) ...................................................................17

*Murphy v. Bancroft Constr. Co.*,
   135 F. App'x 515 (3d Cir. 2005) .........................................................................................11

*O'Donnell v. Diaz*,
   2018 WL 3827617 (N.D. Tex. Aug. 9, 2018) ......................................................................30

*Paul v. Aviva Life & Annuity Co.*,
   2010 WL 5105925 (N.D. Tex. Dec. 14, 2010) ....................................................................14

*Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*,
  767 F.3d 503 (5th Cir. 2014) ...................................................................................3

*United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*,
  274 F. Supp. 2d 824 (S.D. Tex. 2003), *aff'd*, 384 F.3d 168 (5th Cir. 2004) ..........................23

*Redi-Mix Sols., Ltd. v. Express Chipping, Inc.*,
  2017 WL 4079542 (E.D. Tex. Aug. 24, 2017) ......................................................24

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979)..................................................................................................9

*Sedima S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985) ................................................................................................9

*Shannon v. Ham*,
  639 F. App'x 1001 (5th Cir. 2016) .....................................................................9, 10

*St. Paul Mercury Ins. Co. v. Williamson*,
  224 F.3d 425 (5th Cir. 2000) ...............................................................................14

*Steele v. Hosp. Corp. of Am.*,
  36 F.3d 69 (9th Cir. 1994) .......................................................................................9

*StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*,
  2019 WL 4346538 (E.D. Tex. Sept. 12, 2019)................................................22, 23

*In re Sunpoint Sec., Inc.*,
  350 B.R. 741 (Bankr. E.D. Tex. 2006) ..............................................................16, 20

*Tri v. J.T.T.*,
  162 S.W.3d 552 (Tex. 2005)..................................................................................23

*Turner v. Baylor Richardson Med. Ctr.*,
  476 F.3d 337 (5th Cir. 2007) ..................................................................................3

*W. Tex. Nat'l Bank v. FEC Holdings, LP*,
  2013 WL 2158947 (W.D. Tex. May 17, 2013) ....................................................14

*Whelan v. Winchester Prod. Co.*,
  319 F.3d 225 (5th Cir. 2003) .............................................................9, 17, 18, 19

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*,
  90 F.3d 118 (5th Cir. 1996) ..............................................................................16, 17

*Zastrow v. Houst. Auto Imports Greenway Ltd.*,
  789 F.3d 553 (5th Cir. 2015) .............................................................................9, 18

**Statutes**

18 U.S.C. § 1341 ................................................................................................................14

18 U.S.C. § 1343 ................................................................................................................14

18 U.S.C. § 1961 .......................................................................................................8, 9, 17

18 U.S.C. § 1962 .......................................................................................................8, 9, 19

18 U.S.C. § 1964 ..................................................................................................................8

29 U.S.C. § 794 ................................................................................................................20

42 U.S.C. § 12102(1) ........................................................................................................30

Tex. Civ. Prac. & Rem. Code § 16.001 .....................................................................28, 30

Tex. Civ. Prac. & Rem. Code § 16.003 ...........................................................................27

**Other Authorities**

Fed. R. Civ. P. 9(b) ..........................................................................................................14

Fed. R. Civ. P. 56 ......................................................................................................1, 2, 30

Local Rule CV-56(a) ............................................................................................................2

Defendants Universal Health Services, Inc. and UHS of Delaware, Inc. (collectively, "UHS"), file this Motion for Summary Judgment and Brief in Support, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and request that all claims asserted against them in Plaintiffs' Third Amended Original Complaint (the "Complaint") be dismissed.

## I.      INTRODUCTION

This case involves an unsubstantiated attempt by a dozen plaintiffs to recast potential health care liability claims into a claim under the RICO statute.  Plaintiffs allege that 23 defendants, including UHS, four hospitals, and several providers associated with those hospitals, engaged in racketeering activities and conspired to fraudulently admit and detain patients.  But Plaintiffs' RICO claim against UHS must be dismissed because Plaintiffs have failed to establish, and have no evidence of, injuries to business or property that were proximately caused by UHS's alleged racketeering activities.  There is also no evidence of an enterprise or a conspiracy between UHS and the other defendants as UHS was not involved in the hospitals' admission and discharge decisions or in providing clinical care.

In addition, Plaintiffs fail to provide any evidence to support their claims asserted against UHS in the alternative—violations of the Rehabilitation Act, civil conspiracy, negligence, gross negligence, and respondeat superior liability.  Each of those claims fails as a matter of law.  Further, Plaintiff Barbara Meier's alternative causes of action are all barred by the applicable two-year statutes of limitations and there is no legitimate basis for tolling.

In short, this is not a RICO case.  Plaintiffs improperly cobbled together a RICO claim and sued UHS even though UHS was not involved in any of the alleged acts underlying the asserted claims.  Plaintiffs' failure to provide evidence of the existence of a genuine fact issue for any of their claims requires summary judgment in favor of UHS.

## II.     STATEMENT OF ISSUES

Pursuant to Local Rule CV-56(a), UHS requests that the Court resolve the following issues:

1.      Whether there is no genuine issue of material fact as to Plaintiffs' claim for violations of the RICO statute and UHS is entitled to judgment as a matter of law dismissing Plaintiffs' RICO claim with prejudice.

2.      Whether there is no genuine issue of material fact as to Plaintiffs' claim for violations of the Rehabilitation Act and UHS is entitled to judgment as a matter of law dismissing Plaintiffs' Rehabilitation Act claim with prejudice.

3.      Whether there is no genuine issue of material fact as to Plaintiffs' claim for civil conspiracy and UHS is entitled to judgment as a matter of law dismissing Plaintiffs' civil conspiracy claim with prejudice.

4.      Whether there is no genuine issue of material fact as to Plaintiffs' claim for liability under a theory of respondeat superior and UHS is entitled to judgment as a matter of law dismissing Plaintiffs' respondeat superior claim with prejudice.

5.      Whether there is no genuine issue of material fact as to Plaintiffs' claim for negligence and UHS is entitled to judgment as a matter of law dismissing Plaintiffs' negligence claim with prejudice.

6.      Whether there is no genuine issue of material fact as to Plaintiffs' claim for gross negligence and UHS is entitled to judgment as a matter of law dismissing Plaintiffs' gross negligence claim with prejudice.

7.      Whether Plaintiff Barbara Meier's non-RICO claims are time-barred by the applicable statutes of limitations.

## III.     LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The movant is required to identify areas essential to the nonmovant's claim for which there is an "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant is not required to "negate the elements of the nonmovant's case" or "present evidence proving the absence of a material fact issue; rather, the moving party may meet its burden

by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, *Inc.*, 402 F.3d 536, 540, 544–45 (5th Cir. 2005).

Once the movant makes an initial showing that there is no evidence to support the nonmovant's claim, the nonmovant must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Celotex*, 477 U.S. at 324; *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014). The nonmovant cannot rely on allegations in the pleadings alone, conclusory allegations, speculation, unsubstantiated assertions, or "only a scintilla of evidence." *Pioneer*, 767 F.3d at 511; *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted). Instead, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Pioneer*, 767 F.3d at 511. In addition, "[t]o survive motions for summary judgment, plaintiffs must present evidence sufficient to prove *all* elements of a prima facie case." *Kurth v. Gonzales*, 472 F. Supp. 2d 874, 882 (E.D. Tex. 2007) (emphasis in original). Thus, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial." *Id.*

## IV.   STATEMENT OF UNDISPUTED MATERIAL FACTS

The following undisputed material facts are based on proper summary judgment evidence and entitle UHS to summary judgment as requested here:

1.     This lawsuit is brought by nine individuals who allege that they were improperly admitted, detained, and treated at four mental health hospitals in Texas: (1) Barbara Meier, Madison Hough, and Sandra Stokes at Mayhill Hospital ("Mayhill"); (2) Yolanda McPherson, Troy Harvey, and Jalisa Green at Millwood Hospital ("Millwood"); (3) Tiffany Young at Hickory Trail Hospital ("Hickory Trail"); and (4) William Crowell and Diane Creel at Behavioral Hospital

of Bellaire ("BHB").  The three remaining Plaintiffs, Jason Hough, Govinda Hough, and Lynn Creel, are the parents of Madison Hough and husband of Diane Creel, respectively.

2.      Meier, Stokes, McPherson, Harvey, Green, and Crowell were admitted voluntarily. *See* Ex. 1 (Barbara Meier's Physician Admission Order); Ex. 2 (Barbara Meier's Pre-Admission Exam & Certification); Ex. 3 (Sandra Stokes' Physician Admission Order); Ex. 4 (Sandra Stokes's consent to treatment); Ex. 5 (Yolanda McPherson's comprehensive psychiatric evaluation at Millwood); Ex. 6 (Yolanda McPherson's consent to treatment); Ex. 7 (Troy Harvey's consent to treatment); Ex. 8 (Deposition of Troy Harvey) at 206:11–18, 209:25–210:5; Ex. 9 (Jalisa Green's comprehensive psychiatric evaluation at Millwood); Ex. 10 (Jalisa Green's consent to treatment); Ex. 11 (Deposition of Jalisa Green) at 92:13–16; Ex. 12 (William Crowell's conditions of admission form); Ex. 13 (Deposition of William Crowell) at 191:4–6.

3.      Universal Health Services, Inc. is a holding company that owns and operates mental health care facilities across the country through subsidiary entities.

4.      UHS of Delaware, Inc. is a subsidiary of Universal Health Services, Inc. and provides management services to Universal Health Services, Inc.'s facilities via management agreements.  *See, e.g.*, Ex. 14 (Management Agreement between UHS of Delaware, Inc. and BHB). These services include, among other things, assisting in budget preparation, recommending service line developments, ordering and purchasing inventory and supplies, developing procedures for facility operations, developing public relations programs, maintaining property and equipment, and providing human resources management services.  *See id.*

5.      Neither Universal Health Services, Inc. nor UHS of Delaware, Inc. provides any clinical services or medical care.

6.      The relationship between Universal Health Services, Inc., UHS of Delaware, Inc., and the facilities for purposes of the management agreements is that of independent contracting parties.  *See, e.g.*, Ex. 14.  They are not employees, servants, agents, or representatives of each other, nor are their respective employees, servants, agents, or representatives considered to be the employee, servant, agent, or representative of any other.  *Id.*

7.      Defendant-psychiatrists Drs. Sabahat Faheem, Quingguo Tao, Harmanpreet Buttar, Sejal Mehta, Gary Malone, and Jamal Rafique have no contractual relationship with UHS.

8.      Defendant Kenneth Chad Ellis, a nurse who formerly worked at Mayhill, and Defendants Drs. Yupo Jesse Chang and Timothy Tom, both physicians allegedly involved in the generation of false admission documents, have no contractual relationship with UHS.

9.      Defendant Yung Hsuan Yao, a notary alleged to work for Dr. Chang, and four Defendant entities alleged to be alter egos of Dr. Chang, Universal Physicians, P.A., Dr. Says, LLC, MD Reliance, Inc., and Officewinsome, LLC, have no contractual relationship with UHS.

10.      Yao kept a notarial record in the ordinary course of business.  *See* Dkt. No. 105.  Neither Universal Health Services, Inc. nor UHS of Delaware, Inc. have any involvement in or connection to this notarial record.

11.      Defendant Behavioral Health Connections, Inc. ("BHC") is a subsidiary of Universal Health Services, Inc. that provides mobile psychiatric assessment services. Ex. 15 (BHC advertisement of services).

12.      Defendant Wendell Quinn is a current BHC employee.

13.      Defendant Jan Arnette is a former BHC employee.

14.     As with Universal Health Services, Inc.'s hospital facilities, UHS of Delaware, Inc. provides management services to BHC via a management agreement.  Ex. 16 (Management Agreement between UHS of Delaware, Inc. and BHC).

15.     The relationship between UHS of Delaware, Inc. and BHC for purposes of the management agreement is that of independent contracting parties.  *Id*.  They are not employees, servants, agents, or representatives of each other, nor are their respective employees, servants, agents, or representatives considered to be the employee, servant, agent, or representative of the other.  *Id*.

16.     BHC contracts with acute care facilities in Texas to provide psychological needs assessments and disposition recommendations.  Ex. 17 (Service Agreement between BHC and Methodist Mansfield Medical Center); Ex. 18 (Duties under the Service Agreement between BHC and Methodist Mansfield Medical Center).  The assessments are performed by a licensed professional counselor ("LPC"), licensed professional counselor intern ("LPC-I"), licensed master social worker ("LMSW"), licensed clinical social worker ("LCSW"), registered nurse ("RN"), or psychiatrist.  *See* Ex. 18.

17.     BHC's employees provided psychological needs assessments for only four of the Plaintiffs in this case: Sandra Stokes, Yolanda McPherson, Troy Harvey, and Jalisa Green.

18.     BHC and its employees did not assess or have any interaction or relationship with the other Plaintiffs.

19.     The corporate Defendants are legitimate business that exist independently from one another.  Dkt. No. 183 ¶ 283.

# V.      PROCEDURAL BACKGROUND

This case was initially filed in Denton County state court by Plaintiff Barbara Meier against Mayhill.  Dkt. No. 6.  Meier amended her state court petition to name UHS of Delaware, Inc. as a defendant and assert 12 causes of action arising from her four-day stay at Mayhill in December 2015.  *See* Dkt. No. 7.  UHS of Delaware, Inc. removed the suit on August 28, 2018.  Dkt. No. 3. On October 1, 2018, Meier filed a 61-page First Amended Complaint that added eight new plaintiffs and 21 new defendants.  *See* Dkt. No. 11.  The amended pleading alleged that various hospitals, providers, and UHS violated the RICO statute by engaging in acts of racketeering and conspiring to fraudulently admit and detain patients.

UHS, along with BHC, Quinn, and Arnette, moved to dismiss the First Amended Complaint under Rule 12(b)(6), arguing that Plaintiffs failed to meet the threshold requirement of RICO standing because they did not sufficiently allege injury to business or property proximately caused by UHS.  *See* Dkt. No. 31.  UHS also argued that Plaintiffs' RICO claim failed because they asserted only impermissible and vaguely-pleaded predicate acts and did not adequately allege an enterprise or a conspiracy.  *See id.*  Further, UHS argued that Meier's alternative claims were barred by the applicable statutes of limitations and that Plaintiffs failed to sufficiently allege the elements of the other alternative claims to survive dismissal.  *See id.*

Before the Court ruled on the motion to dismiss, Plaintiffs filed a Second Amended Complaint.  Dkt. No. 130.  The Second Amended Complaint added three new plaintiffs and one new defendant, and unsuccessfully attempted to address UHS's dismissal arguments by (a) alleging without support that the statute of limitations for Meier's claims was tolled due to disability, (b) asserting new non-RICO damages, and (c) including several conclusory allegations

that were nothing more than formulaic recitations of the elements of the causes of action.  *See id*.
UHS again moved to dismiss on similar grounds as before.  *See* Dkt. No. 164.

Before the Court ruled on UHS's second motion to dismiss, Plaintiffs sought leave to file
a Third Amended Complaint (the "Complaint"), which the Court granted.  Dkt. Nos. 182, 183,
193.  Once again, UHS moved to dismiss on similar grounds, pointing out that Plaintiffs' multiple
amendments had caused their pleading to swell to 113 pages and 466 paragraphs without adding
anything but inconsequential facts and conclusory allegations.  *See* Dkt. No. 207.  UHS's third
motion to dismiss also pointed out that Plaintiffs had failed to address the fatal pleading
deficiencies identified in UHS's prior filings and in the numerous motions to dismiss and replies
filed by other Defendants.  *See id*.

On June 10, 2019, the Court directed the parties to move forward with discovery despite
the pending motions to dismiss.  Towards that end, the parties have exchanged several thousand
pages of documents and conducted over a dozen depositions, with additional depositions scheduled
for October and November of 2019.  But despite the parties' sufficient time for and progress in
discovery, Plaintiffs have not produced any evidence to support their claims against UHS.  As
such, UHS now files this Motion for Summary Judgment and requests dismissal as to all claims.

## VI.     ARGUMENTS & AUTHORITIES

Plaintiffs' RICO claim fails as a matter of law because Plaintiffs have failed to establish
and have no evidence of (1) injury proximately caused by UHS's alleged racketeering activity, (2)
two or more predicate acts, (3) a pattern of racketeering activity, (4) the existence of a RICO
enterprise, or (5) the existence of a RICO conspiracy.  Plaintiffs also assert nine causes of action
"in the alternative."  Only five of these nine causes of action are asserted against UHS: violations

of the Rehabilitation Act, civil conspiracy, respondeat superior, negligence, and gross negligence. These too fail as a matter of law.

## A.     Plaintiffs' RICO Claim Fails as a Matter of Law.

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, limits recovery to a person who has been "injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). This is a threshold requirement that "helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff." *Dunn v. Bd. of Incorporators African Methodist Episcopal Church*, 2002 WL 340772, at *2 (N.D. Tex. Feb. 28, 2002) (quoting *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)). Plaintiffs are also required to show that the underlying racketeering activities were "the proximate cause" of their injury. *Shannon v. Ham*, 639 F. App'x 1001, 1003 (5th Cir. 2016) (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010)).

The essential elements of a RICO claim under 18 U.S.C. § 1962 are: "(1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (citation omitted). The RICO statute provides a list of criminal offenses that constitute "racketeering activities." *See* 18 U.S.C. § 1961(1). These offenses are known as "predicate acts." A RICO claim requires at least two such predicate acts of racketeering activity. 18 U.S.C. § 1961(5). And the racketeering activities only create a "pattern" if they are "(1) related and (2) amount to or pose a threat of continued criminal activity." 18 U.S.C. § 1961(5); *Zastrow v. Houst. Auto Imports Greenway Ltd.*, 789 F.3d 553, 560 (5th Cir. 2015) (citation omitted). Plaintiffs have failed to establish, and have no evidence, for each of the aforementioned elements of a RICO claim; each failure independently warrants summary judgment dismissal of Plaintiffs' claim.

1.   **Plaintiffs Have Failed to Establish, and Have No Evidence of, Injury Proximately Caused by UHS's Alleged Racketeering Activity.**

Not every injury is cognizable under the RICO statute.  *Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 498 (1985).  The Supreme Court has held that "Congress must have intended to exclude some class of injuries by the phrase 'business or property,'" and personal injuries are among those excluded.  *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339 (1979) (analyzing an identical phrase in the Clayton Act).  The Fifth Circuit has adopted this exclusion.  *See Hughes v. Tobacco Inst.,* 278 F.3d 417, 422 (5th Cir. 2001) (citing *Reiter*, 442 U.S. at 339).  The economic consequences of personal injuries—such as being unable to pursue employment opportunities—likewise are not cognizable RICO injuries.  *See, e.g.*, *Bradley v. Phillips Petroleum Co.*, 527 F. Supp. 2d 625, 646 (S.D. Tex. 2007) ("[T]he economic consequences of personal injuries do not qualify as 'injury to business or property.'") (citations omitted), *aff'd*, 337 F. App'x 397 (5th Cir. 2009); *cf. Borskey v. Medtronics, Inc.*, 1995 WL 120098, at *3 (E.D. La. Mar. 15, 1995) (granting defendant's motion for summary judgment where medical expenses incurred in removing a drug pump were so closely tied to the alleged personal injuries caused by the pump as to be unrecoverable under RICO).

In addition, the injuries must be proximately caused by the alleged racketeering acts, which requires "some direct relation between the injury asserted and the injurious conduct alleged." *Shannon*, 639 F. App'x at 1003 (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)).  The Fifth Circuit has also upheld jury instructions directing that proximate cause for RICO claims is present if "the injury or damage was either a direct result or a reasonably probable consequence of the act."  *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 676 (5th Cir. 2015).  The link cannot, however, be "too remote," "purely contingent," or "indirect."  *Shannon*, 639 F. App'x at 1003 (quoting *Holmes*, 503 U.S. at 271).

Here, Plaintiffs' alleged injuries are all injuries outside the scope of the RICO statute and/or injuries not proximately caused by UHS.[1]  *First*, Plaintiffs all seek personal injury damages.  Dkt. No. 183 ¶ 465.  Most of the Plaintiffs also allege economic damages resulting from their personal injuries, including inability to work or missed work, lost wages, and loss of earning capacity:

- **Sandra Stokes**: loss of income as she was unable to work due to suffering a fall at Mayhill and developing a seizure disorder (Dkt. No. 183 ¶¶ 120–22);

- **Yolanda McPherson**: lost wages for nine days of missed work while she was hospitalized and three days of missed work after discharge (*id.* ¶ 137; Ex. 19 (Deposition of Yolanda McPherson) at 120:7–121:25, 127:2–8);

- **Troy Harvey**: missed six weeks of work on paid sick leave due to anxiety and panic attacks (Dkt. No. 183 ¶ 158; Ex. 8 at 203:14–204:12, 212:24–214:9, 215:18–22);

- **Tiffany Young**: negative impact on her business due to an inability "to think clearly," "make good decisions," or "focus" (Ex. 20 (Deposition of Tiffany Young) at 193:1–20);

- **Diane Creel**: unquantified decrease in business sales after she was hospitalized (Ex. 21 (Deposition of Diane Creel) at 216:12–18); and

- **Jalisa Green**: out of a job for approximately one month after she was hospitalized (Dkt. No. 183 ¶ 280; Ex. 11 at 99:21–100:24).

As explained above, these injuries are not compensable under RICO as a matter of law. *See Hughes v. Tobacco Inst.*, 2000 WL 34004261, at *7 (E.D. Tex. May 5, 2000) (explaining that the economic consequences of personal injuries do not qualify as "injury to business or property"), *aff'd*, 278 F.3d 417 (5th Cir. 2001); *Murphy v. Bancroft Constr. Co.*, 135 F. App'x 515, 518–19

---

[1] Plaintiffs also include in their list of damages payments by Medicare without any explanation of how these are injuries suffered by Plaintiffs.  *See* Dkt. No. 183 ¶ 83 ("Medicare paid Mayhill $8,600 . . . Dec 22-Jan 5 $18,200.00 Medicare paid; Jan 5-31 $16,450.00 Medicare paid.").  Plaintiffs then allege that they have standing to assert Medicare fraud as taxpayers, but the Complaint does not assert a Medicare fraud cause of action.  *See id.* ¶ 227.  Payments made and injuries allegedly suffered by third parties other than Plaintiffs are irrelevant.

(3d Cir. 2005) (affirming dismissal of RICO claim because plaintiff's alleged injury of lost earning capacity due to depression was not a RICO injury).

*Second*, Plaintiffs allege injuries without any evidence demonstrating that they were proximately caused by UHS's alleged racketeering activities (which are discussed in greater detail in Part VI(A)(2) below).  For example, Plaintiffs list, among other things, out-of-pocket costs for doctor visits and medications, damages to medical records, attorneys' fees and court costs, "hail damage" to a parked vehicle, "[l]oss on sale of 2017 Acura," and being "forced to take out Merchant Cash Advance loans at exorbitant rates."  *See* Dkt. No. 183 ¶¶ 106–08, 122, 157–58, 227, 261; Ex. 22 (Plaintiffs' list of expenses incurred by Troy Harvey); Ex. 23 (Plaintiffs' list of expenses incurred by Diane Creel).  Plaintiffs have not, and cannot, provide any evidence linking these injuries to UHS.  Further, the majority of Plaintiffs voluntarily admitted themselves into the hospitals.  *See* Dkt. No. 183 ¶¶ 34 (Meier), 114 (Stokes), 132 (McPherson), 143–46 (Harvey), 266–68 (Green); Exs. 1–7, 9–10, 12; Ex. 8 at 206:11–18, 209:25–210:5; Ex. 11 at 92:13–16; Ex. 13 at 191:4–6.  As such, they knowingly and voluntarily incurred many of the expenses they now claim as RICO damages.  Naturally, UHS could not have proximately caused those damages.

The Complaint attempts to tie UHS and the claimed injuries together by alleging that UHS is involved in every predicate act "both directly and as an aider and abettor" because it "created the strategy involved in the enterprise," "made the personnel choices and policy choices that enabled the enterprise to function," "acquired or created the hospitals," "engineered a system of staffing," "negotiated illegal contracts with referring doctors," and directed the improper billing of insurers.  Dkt. No. 183 ¶¶ 327–28, 339.  But despite these allegations and extensive discovery, there is no evidence that UHS did anything to cause the aforementioned injuries.  For example, there is no evidence demonstrating how medication costs or damage to vehicles were the direct

result or a reasonably probable consequence of UHS's alleged oversight of the RICO enterprise or UHS's provision of management services to the hospitals.  The reason for this glaring absence of evidence is simple: ***no causal link exists, as UHS had no involvement in patients' admission, clinical care, or discharge, and Plaintiffs' injuries are not reasonably probable consequences of UHS's actions***.  *See Garcia v. Lion Mexico Consol. L.P.*, 2018 WL 6427350, at *15 (W.D. Tex. Sept. 14, 2018) (granting defendants' motion for summary judgment because plaintiffs had not shown that defendants factually or proximately caused any of their alleged RICO injuries).

Thus, Plaintiffs have failed to create a genuine dispute of material fact on the issues of injury and causation.

### 2.     Plaintiffs Have Failed to Establish, and Have No Evidence of, Two or More Predicate Acts.

To recover on a RICO claim, Plaintiffs "must do more than simply list the predicate act crimes. . . ."  *Gordon v. Neugebauer*, 2014 WL 6611991, at *10 (N.D. Tex. Nov. 21, 2014). Plaintiffs must prove the elements of the criminal offenses that comprise the predicate acts and provide evidence that would establish that each predicate act was in fact committed by UHS.  *See Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989).

In support of their purported RICO claim, Plaintiffs allege that UHS knowingly committed a laundry list of unlawful acts: (1) falsely admitting people to facilities (Dkt. No. 183 ¶¶ 24–25); (2) fraudulently billing insurers (*id.* ¶¶ 27, 282, 314, 328); (3) mail and wire fraud (*id.* ¶¶ 286–87, 305, 335–37, 341); (4) paying providers to refer, admit, and retain patients (*id.* ¶¶ 27, 291, 296, 299–300, 327–28); (5) violating the Hobbs Act (*id.* ¶¶ 289, 306, 308); (6) violating the Travel Act (*id.* ¶¶ 291, 308, 311–13); (7) commercial bribery (*id.* ¶¶ 297, 456); (8) health care fraud (*id.* ¶¶ 297, 307); (9) financial institution fraud (*id.* ¶ 308); (10) money laundering (*id.* ¶ 308); and (11) violating the "federal and Texas anti-kickback statutes" (*id.* ¶ 315).  But five of the eleven alleged

acts—falsely admitting people to facilities, fraudulently billing insurers, receiving and paying providers to refer, admit, and retain patients, health care fraud, and violating anti-kickback statutes—are not permissible predicates under the RICO statute and must be disregarded.  The remaining predicate acts are not supported by any evidence and therefore fail as a matter of law.

### a.     The Claims of Mail Fraud and Wire Fraud as Predicate Acts Fail as a Matter of Law.

The Complaint claims, in the most general terms, that UHS used "the mail and wires" to admit patients without satisfying threshold legal requirements, and committed mail and wire fraud by submitting fraudulent claims and preadmission assessment forms.  *See id.* ¶¶ 24, 287, 305.  The Complaint also alleges that "several thousand entries" in a notarial record each constitute "a specific instance of wire fraud" by all Defendants, and that the racketeering activity is "ongoing" based on that notarial record.  *Id.* ¶ 286.

RICO claims based on fraud are subject to the heightened pleading requirements of Rule 9(b).  *See Paul v. Aviva Life & Annuity Co.*, 2010 WL 5105925, at *4–5 (N.D. Tex. Dec. 14, 2010).  Thus, for each fraud-based predicate act, "a plaintiff must at a minimum allege the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Id*. (citations and quotations omitted).  "The elements of a properly pled mail fraud claim under 18 U.S.C. § 1341 are (1) defendants' participation in some scheme or artifice to defraud, (2) the use of the mails 'caused by' defendants or someone associated with the scheme, and (3) the use of the mails for the purpose of executing the scheme."  *W. Tex. Nat'l Bank v. FEC Holdings, LP*, 2013 WL 2158947, at *5 (W.D. Tex. May 17, 2013).  "The elements of a wire fraud claim under 18 U.S.C. § 1343 are the same as those for a mail fraud claim except the use of the wire must be interstate."  *Id*.  "A RICO claim asserting mail fraud as a predicate act must allege how each specific act of mail fraud actually furthered the

fraudulent scheme, who caused what to be mailed when, and how the mailing furthered the fraudulent scheme." *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1002 (S.D. Tex. 1995).  As to scienter, "both RICO mail and wire fraud require evidence of intent to defraud, i.e., evidence of a scheme to defraud by false or fraudulent representations." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000).

Here, Plaintiffs have no evidence of the predicate acts of mail and wire fraud.  Specifically, Plaintiffs have no evidence of the time, place, contents, and identity of the person making the misrepresentation and what was obtained thereby.  Plaintiffs also have no evidence of how each specific act of fraud actually furthered the fraudulent scheme and who caused what to be mailed or wired when.  Plaintiffs further have no evidence of the intent to defraud, i.e., evidence of a scheme to defraud by false or fraudulent representations.  Nor is there any evidence of how the notarial record is connected to UHS or, more fundamentally, how or why an entry in a notarial record even constitutes an instance of wire fraud.

In sum, Plaintiffs have no evidence of mail fraud or wire fraud by UHS to support their RICO claim and defeat this Motion for Summary Judgment.  *See Labaty v. UWT, Inc.*, 121 F. Supp. 3d 721, 757 (W.D. Tex. 2015) (granting in part defendants' motion for summary judgment for lack of evidence and holding that plaintiff had failed to establish the prerequisite elements for RICO claims where the summary judgment evidence did not demonstrate that defendants had committed acts of mail or wire fraud).

### *b.*     *The Claims of Other Predicate Acts Also Fail as a Matter of Law.*

For commercial bribery, the Complaint contains only the bare assertions that the alleged enterprise had a "*common purpose* of committing" commercial bribery and that bribes were involved in the admission and retention of patients.  *Id.* ¶¶ 297, 313 (emphasis added).  But there are no allegations or evidence that bribes by UHS were actually paid or received.

Similarly, for violations of the Travel Act, the Complaint contains only the bare assertion that Defendants had an agreement under which they *would* "place long distance telephone calls, transmit long distance facsimile transmissions, and send other electronic communications in interstate commerce, travel in interstate commerce, and cause others to travel in interstate commerce." *See id.* ¶ 302.  There is no evidence that UHS actually made a call, sent a fax, or sent an email in interstate commerce, or did anything that violates the Travel Act.  The Complaint also alleges that the Travel Act was violated by UHS's violation of state fraud laws through their acts to find, admit, and retain patients.  *See id.* ¶ 313.  But there is no evidence that these acts were done while UHS used the mail or a facility in interstate commerce—a required element of a Travel Act claim.  *See K&F Rest. Holdings, Ltd. v. Rouse*, 2018 WL 3553422, at *19 (M.D. La. July 24, 2018) (dismissing with prejudice plaintiffs' RICO claim because the alleged predicate offenses failed to allege use of an interstate facility).

For violations of the Hobbs Act, the Complaint alleges generally that personal property was taken through the use of violence, intimidation, and fear, and that extortion and attempted extortion took place.  *See* Dkt. No. 183 ¶¶ 289, 306.  Similarly, the Complaint merely alleges that financial institution fraud and money laundering were acts in which UHS engaged.  *Id.* ¶ 308. There is no factual support or detail whatsoever, and, as above, discovery in this case has not produced a single piece of evidence demonstrating that UHS engaged in these acts or is linked to them in any way.[2]  As such, they cannot form the basis of Plaintiffs' RICO claim.

---

[2]  The Complaint makes a last-ditch attempt to conceal the inadequacy of its predicate act allegations by stating that UHS is "involved in every predicate act in this case, both directly and as an aider and abettor."  Dkt. No. 183 ¶¶ 308, 339.  But courts in this Circuit have ruled that there is no civil aider and abettor liability under the RICO statute.  *See In re Sunpoint Sec., Inc.*, 350 B.R. 741, 752 (Bankr. E.D. Tex. 2006) ("The great weight of authority establishes that [*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994)] precludes any civil remedy for aider and abettor liability under § 1962 . . ."); *In re MasterCard Int'l. Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, 493 (E.D. La. 2001) ("[T]his Court finds that aiding and abetting liability under § 1962(c) was eliminated by the [Supreme] Court's holding in *Central Bank*."), *aff'd*, 313 F.3d 257 (5th Cir. 2002).  So, no amount

### 3. Plaintiffs Have Failed to Establish, and Have No Evidence of, a Pattern of Racketeering Activity.

To establish a pattern of racketeering activity, Plaintiffs must produce evidence showing a violation of two or more related predicate acts of racketeering activity that amounts to or poses a threat of continued criminal activity. *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996). Continuity of racketeering activity can be established by pointing either to "a closed period of repeated conduct" or to an open period of past conduct "that by its nature projects into the future with a threat of repetition." *Id*. A closed period of repeated conduct may be shown "by proving a series of related predicates extending over a substantial period of time." *Id*. An open period of conduct may be shown by evidence of a "specific threat of repetition extending indefinitely into the future" or that "that the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id*.

Plaintiffs allege "both a closed-ended and open-ended period of continuity of conduct" and argue that the period of time over which Plaintiffs have been admitted (2015 to 2018) indicates a four-year period of continuity and that Yao's notarial record indicates that Defendants' conduct is "ongoing." Dkt. No. 183 ¶ 286. But there is no evidence to support these allegations of continuity. As a threshold matter, Plaintiffs have no evidence of the underlying predicate acts and therefore a pattern of racketeering cannot exist as a matter of law. *See supra* Part VI(A)(2). Setting aside that fatal flaw, Plaintiffs have no evidence that each Plaintiff's admission and clinical care were based on "related predicates." Nor have they demonstrated how a notarial record is evidence of fraud much less fraud that poses a threat of repetition into the future. Plaintiffs' inability to produce any

---

of evidence could support this allegation. Even assuming *arguendo* that aiding and abetting was a permissible theory of liability for a RICO claim, Plaintiffs have not provided any evidence that UHS knew of the other Defendants' conduct or that they substantially assisted in bringing the conduct to fruition—required elements to find liability for aiding and abetting in a civil context. *Joe N. Pratt Ins. v. Doane*, 2008 WL 819011, at *10 (S.D. Tex. Mar. 20, 2008).

evidence to support their allegations of a continuing pattern of predicate RICO acts means UHS is entitled to summary judgment dismissing the RICO claim with prejudice.

### 4. Plaintiffs Have Failed to Establish, and Have No Evidence of, the Existence of an Enterprise.

A RICO enterprise involves "a group of persons or entities associated together for the shared purpose of engaging in a course of conduct." *Morse v. Ditech Fin., LLC,* 2017 WL 4230550, at *11 (E.D. Tex. Sept. 25, 2017) (citing *Whelan,* 319 F.3d at 229). The enterprise may be either a legal entity or "any group of individuals associated in fact" (known as an "association-in-fact enterprise"). *Whelan,* 319 F.3d at 229 (quoting 18 U.S.C. § 1961(4)). An association-in-fact enterprise must have an existence separate and apart from the pattern of racketeering, must have an ongoing organization, and the members of the enterprise must function as a continuing unit. *See Zastrow*, 789 F.3d at 562; *Whelan*, 319 F.3d at 229.

Here, Plaintiffs allege an enterprise comprised of "UHS and its affiliates," as well as the other Defendants, which operates to refer and admit people to UHS's hospital facilities "without satisfying threshold legal requirements." Dkt. No. 183 ¶¶ 25, 284, 293–301. Plaintiffs also allege that UHS worked with other Defendants "to orchestrate the enterprise," "created the strategy involved in the enterprise," directed Defendants to improperly bill insurers, and entered into "illegal contracts" and "clandestine joint ventures" with referring physicians to fraudulently increase referrals, admissions, and lengths of stay. *Id.* ¶¶ 327–28.

However, Plaintiffs concede that Defendants all "exist independently from one another," Dkt. No. 183 ¶ 283, and they have no evidence that establishes the existence of the alleged enterprise; that UHS had any involvement in insurance billing, patient referrals, or patient admissions; or that the alleged enterprise is separate and apart from UHS's alleged racketeering activity. The only allegations or evidence that UHS associated with other Defendants at all is that

UHS of Delaware, Inc. has management agreements with the four hospitals.  *Id.* ¶ 327, 330, 443, 445; Ex. 14; Ex. 16.  That is it.  UHS did not admit or treat Plaintiffs, has no relationship with most of the other Defendants, and has been pulled into a frivolous RICO case that should be, at most, a health care liability case against other parties.

Courts have consistently granted summary judgment as to RICO claims based on such deficient evidence of a RICO enterprise.  *See, e.g.*, *Whelan*, 319 F.3d at 230 (affirming summary judgment dismissal of RICO claims where the plaintiff did not provide evidence to demonstrate an association between the defendants beyond the alleged predicate acts or that the enterprise functioned as a continuing unit); *cf. Atkinson v. Anadarko Bank & Tr. Co.*, 808 F.2d 438, 441 (5th Cir. 1987) (finding no enterprise where there was no evidence that a "bank, its holding company, and the three employees were associated in any manner apart from the activities of the bank.").

In sum, Plaintiffs have no evidence of an "enterprise" under the RICO statute.  Consequently, UHS is entitled to summary judgment dismissing the RICO claim with prejudice.

### 5. Plaintiffs Have Failed to Establish, and Have No Evidence of, the Existence of a RICO conspiracy.

The Complaint alleges a "RICO conspiracy" and references an "illegal conspiracy" and "coconspirators" in the RICO claim's supporting allegations.  Dkt. No. 183 ¶¶ 285, 291, 299–300, 304, 308–09, 317.  As set forth in 18 U.S.C. § 1962(d), a RICO conspiracy requires (1) an agreement to commit a substantive RICO offense, and (2) that the defendant knew of and agreed to the overall objective of the RICO offense.  *See, e.g.*, *Conrad v. Krc*, 2016 WL 5853738, at *6 (E.D. Tex. June 17, 2016), *aff'd*, 678 F. App'x 236 (5th Cir. 2017).  Plaintiffs' RICO conspiracy claim fails as a matter of law for two reasons.

*First*, Plaintiffs have not provided any evidence supporting the existence of a RICO conspiracy.  The Complaint contains only conclusory statements that there was an agreement to

violate RICO and that the predicate acts "were knowingly committed in order to accomplish the unlawful acts" "during the existence of the agreement between Defendants." Dkt. No. 183 ¶¶ 299, 300, 309. There is no evidence to support these statements since, as stated above, UHS did not admit or treat Plaintiffs, did not commit any of the alleged predicate acts, and has no relationship or agreement with the other Defendants other than management agreements with BHC and the hospitals (which have nothing to do with the acts underlying Plaintiffs' RICO claim). *See Whelan*, 319 F.3d at 230 (affirming summary judgment dismissal of civil RICO conspiracy claim because plaintiff offered only conclusory allegations to support the claim and "[c]onclusory allegations are insufficient to defeat a properly supported motion for summary judgment").

*Second*, the failure to provide any evidence supporting the underlying substantive RICO offense also dooms the associated RICO conspiracy claim. *See supra* Parts VI(A)(1)–(4); *In re Sunpoint Sec., Inc.*, 350 B.R. 741, 751 (Bankr. E.D. Tex. 2006) ("[T]he Fifth Circuit has clearly required that, to succeed on a statutory civil conspiracy theory under § 1962(d), a plaintiff must be able to plead and prove a violation of a provision of subsection (a), (b), or (c) of § 1962. . . . Because [defendant] is entitled to summary judgment on Plaintiffs' claims under § 1962(a) and (c), it is also entitled to summary judgment on Plaintiffs' claims under § 1962(d)."); *Conrad*, 2016 WL 5853738, at *6 (granting summary judgment as to plaintiff's civil RICO conspiracy claim because he "ha[d] not established any of the elements of a civil RICO claim").

For these reasons, Plaintiffs' RICO conspiracy claim against UHS fails as a matter of law and must be dismissed with prejudice.

## B.     Plaintiffs' Rehabilitation Act Claim Fails as a Matter of Law.

Section 504 of the Rehabilitation Act prohibits discrimination on the basis of disability by recipients of federal funds. 29 U.S.C. § 794; *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011). To state a claim under § 504, a plaintiff must prove: "(1) that she is a qualified

individual with a disability; (2) that she has been excluded from participation in, denied the benefits

of, or subjected to discrimination under the [d]efendant's program solely because of her disability;

and (3) that the program in question receives federal financial assistance."  29 U.S.C. § 794(a);

*Doe v. Steward Health Care Sys. LLC*, 2018 WL 4233816, at *9 (S.D. Tex. July 31, 2018), *report*

*and recommendation adopted*, 2018 WL 4232921 (S.D. Tex. Sept. 5, 2018).

   Here, Plaintiffs have not provided any evidence to support the second and third elements

of their Rehabilitation Act claim listed above.  *First*, Plaintiffs have not provided any evidence

that they were excluded from participating, denied benefits, or discriminated against because of a

disability by UHS.  *See, e.g.*, Ex. 8 at 225:15–17 (stating that he has never been excluded, denied

benefits, or discriminated against because of his alleged knee injury, which was his only claimed

disability); Ex. 11 at 102:22–103:2 (stating that she has never been denied employment or benefits

because of disability).  In fact, the Complaint only alleges that "Plaintiffs were discriminated

against *by the facilities and facility doctors*."  Dkt. No. 183 ¶ 395 (emphasis added).  There are no

allegations or evidence of exclusionary or discriminatory conduct by UHS.

   In addition, the Complaint fails to allege, and Plaintiffs have not provided any evidence,

that any discrimination was made solely on the basis of the alleged disability.  *See* Ex. 8 at 225:15–

17; Ex. 11 at 102:22–103:2; *see also Kurth*, 472 F. Supp. 2d at 885 (granting summary judgment

and dismissing Rehabilitation Act claim where plaintiff failed to prove that the alleged

discrimination was based solely on his disability).  Instead, Plaintiffs allege that they were

discriminated against by the use of "telemedicine and clandestine doctors" and by being left out

of the process of admission and of receiving mental health services.  Dkt. No. 183 ¶¶ 389, 395,

397.  These nonsensical allegations do not provide any evidence in support of a Rehabilitation Act

claim against UHS.  There is no genuine dispute as to any material fact regarding the second element of Plaintiffs' Rehabilitation Act claim; this alone requires dismissal.

*Second*, Plaintiffs allege that each Defendant is "principally engaged in the business of serving individuals with mental health issues" and a recipient of federal money.  *Id*. ¶¶ 387, 391, 396.  But a Rehabilitation Act claim cannot apply to all Defendants in this case because there is no individual liability under the Act and each Defendant does not receive federal financial assistance.  *Albritton v. Quarterman*, 2009 WL 585659, at *10 (E.D. Tex. Mar. 6, 2009) (citing *Lollar v. Baker*, 196 F.3d 603, 608–09 (5th Cir. 1999)).  Plaintiffs' general statement is evidence that the allegations in the Complaint are nothing more than formulaic recitations of the elements of a Rehabilitation Act claim without any supporting evidence.

For these reasons, Plaintiffs' claim against UHS for violations of § 504 of the Rehabilitation Act fails as a matter of law and must be dismissed with prejudice.

## C.    Plaintiffs' Civil Conspiracy Claim Fails as a Matter of Law.

Civil conspiracy is a derivative tort under Texas law.  This means that "a defendant's liability for conspiracy depends on participation in some underlying tort."  *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, 2019 WL 4346538, at *33 (E.D. Tex. Sept. 12, 2019) (citations omitted).  If a plaintiff fails to provide evidence supporting a separate underlying tort claim that can survive summary judgment, then a claim for civil conspiracy necessarily fails.  *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997).

The Complaint alleges that Defendants conspired "to increase profits" by, among other things, "admit[ting] Plaintiffs without following the standards set forth in Texas Health & Safety Code, Chapter 164 and violating Section 504 of the Rehabilitation Act," "treat[ing] Plaintiffs without following the standards set forth in Texas Health & Safety Code, Chapter 571–577 and Chapter 321," and "falsely imprison[ing] Plaintiffs."  Dkt. No. 183 ¶¶ 431–35.  Since the only

underlying claim alleged against UHS is violations of the Rehabilitation Act, Plaintiffs' civil conspiracy claim is entirely derivative of the Rehabilitation Act claim against UHS and must be dismissed for the same reasons that require dismissal of the Rehabilitation Act claim.  *See supra* Part VI(B); *Am. Tobacco*, 951 S.W.2d at 438 (holding summary judgment on civil conspiracy claim was proper where all other claims had been dismissed).

Even setting aside the underlying claim's failure as a matter of law, Plaintiffs also fail to provide any evidence supporting a plausible claim of civil conspiracy.  The general elements of civil conspiracy are: "(1) [the participation of] two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result."  *Jennings v. Towers Watson*, 2018 WL 2422054, at *2 (N.D. Tex. Apr. 16, 2018) (quoting *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)), *report and recommendation adopted*, 2018 WL 2416576 (N.D. Tex. May 29, 2018).

Plaintiffs have not provided any evidence supporting their vague, conclusory allegations that UHS "act[ed] in concert with each other, and with intent to commit civil conspiracy."  *See* Dkt. No. 183 ¶¶ 432–35; *StoneCoat*, 2019 WL 4346538, at *33 ("The evidence is insufficient to create a genuine issue of material fact that Defendants acted in concert to achieve an unlawful means.  For that reason, Plaintiffs have not presented sufficient evidence to withstand summary judgment on a conspiracy claim . . .").  Indeed, policies and procedures on patient admissions and patient care are developed and implemented by the individual hospital facilities without any involvement by UHS.  *See, e.g.*, Ex. 24 (Mayhill policy on admission procedures); Ex. 25 (Millwood policy on admission forms); Ex. 26 (Millwood policy on patient monitoring); Ex. 27 (Millwood policy on patient's rights).

Similarly, Plaintiffs have not provided any evidence of a meeting of the minds or that Defendants agreed with the alleged objective of the conspiracy. *See United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 274 F. Supp. 2d 824, 858 (S.D. Tex. 2003) (recommending dismissal of conspiracy claim because conclusory statements from plaintiff's own affidavit and hypothetical statements from her expert witness were not evidence of intent to defraud or of any "meeting of the minds"), *aff'd*, 384 F.3d 168 (5th Cir. 2004).   The only agreements that UHS had with any other Defendant were the management agreements with BHC and the hospital facilities, which merely govern the scope of management services provided by UHS of Delaware, Inc. and say nothing about admitting or treating patients. *See* Ex. 14; Ex. 16.

Thus, Plaintiffs' civil conspiracy claim against UHS fails as a matter of law and must be dismissed with prejudice.

## D.      Plaintiffs' Respondeat Superior Claim Fails as a Matter of Law.

Plaintiffs assert a separate cause of action entitled "respondeat superior" and allege that "[e]ach Defendant is liable for the torts committed by employees or agents under its agency or control." Dkt. No. 183 at 104; *id.* ¶ 439.  Respondeat superior is not, however, an independent legal cause of action.  Rather, it is merely a theory of liability dependent on the commission of a tort by someone other than the defendant. *Fredericksen v. Halliburton Co.*, 2011 WL 1232991, at *5 n.5 (S.D. Tex. Mar. 31, 2011).  Accordingly, there can be no respondeat superior liability where the underlying tort claims are unsupported by any evidence and warrant dismissal. *See Redi-Mix Sols., Ltd. v. Express Chipping, Inc.*, 2017 WL 4079542, at *8 (E.D. Tex. Aug. 24, 2017), *report and recommendation adopted*, 2017 WL 4076445 (E.D. Tex. Sept. 14, 2017).

Plaintiff's respondeat superior claim cannot survive summary judgment for one simple reason: none of the torts alleged in the Complaint were committed by an employee or agent of UHS.  In fact, there is no employment or agency relationship between UHS and any of the other

Defendants that would give rise to respondeat superior liability.  The failure to provide any evidence of a requisite underlying tort by an employee or agent of UHS means Plaintiffs' claim of liability under a respondeat superior theory fails as a matter of law.  *See DiLosa v. City of Kenner*, 2004 WL 2984342, at *21 (E.D. La. Dec. 16, 2004) ("[Plaintiff] asserts all his state law tort claims against the [defendant] on a theory of respondeat superior.  Because [plaintiff] has not withstood summary judgment on any of his underlying state law claims . . . , the claims against the [defendant] are also dismissed.").

## E.     Plaintiffs' Negligence Claim Fails as a Matter of Law.

Under Texas law, a negligence claim requires four elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury.  *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314 (5th Cir. 2002).  The Complaint alleges that UHS of Delaware, Inc. was negligent because it "failed to manage and supervise the hospital in the manner that a reasonably prudent hospital management company would do under the same or similar circumstances."  Dkt. No. 183 ¶ 444.

UHS does not, however, owe a duty of care to any of the Plaintiffs.  The Complaint clearly states that UHS of Delaware, Inc.'s contractual agreements, under which the alleged duty of care arose, were with other Defendants—not the Plaintiffs.  *See id.* ¶¶ 443–47.  In addition, UHS did not provide care or services to any of the Plaintiffs and is not involved in the hospital facilities' provision of care or admission and discharge decisions.  The failure to allege even a single piece of evidence demonstrating that UHS had a direct relationship with, much less owed or breached a duty or caused injury to, any of the Plaintiffs, requires dismissal of Plaintiffs' negligence claim.  *See Mendez v. Caterpillar Inc.*, 2011 WL 6999659, at *13 (W.D. Tex. Dec. 16, 2011) (recommending granting defendant's motion for summary judgment on plaintiff's negligence

claim because plaintiff did not present any evidence that defendant assumed a duty of care to plaintiff or performed any services for plaintiff's employer), *report and recommendation adopted*, 2012 WL 90492 (W.D. Tex. Jan. 11, 2012); *Gay v. Aramark Unif. & Career Apparel, Inc.*, 2007 WL 4190781, at *22 (S.D. Tex. Nov. 21, 2007) (granting defendant's motion for summary judgment on plaintiff's negligence claim because plaintiff failed to point to any evidence in the record showing that defendant breached a duty owed to plaintiff).

Thus, Plaintiffs' negligence claim against UHS fails as a matter of law and must be dismissed with prejudice.

## F.    Plaintiffs' Gross Negligence Claim Fails as a Matter of Law.

"Negligence and gross negligence are not separable causes of action but are inextricably intertwined." *Mendez*, 2011 WL 6999659, at *15 (citation omitted).  Gross negligence requires two elements in addition to the threshold elements of a negligent act or omission: "(1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others." *Id*. at *16.

To support their gross negligence claim, Plaintiffs do nothing but recite these legal elements. *See* Dkt. No. 183 ¶ 452.  As with Plaintiffs' negligence claim, this is not enough and warrants dismissal. *See Gay*, 2007 WL 4190781, at *22 (granting defendant's motion for summary judgment on plaintiff's gross negligence claim because plaintiff failed to point to any evidence in the record showing that defendant acted with malice or conscious indifference).  And because the duty element is the same for gross negligence as it is for negligence, Plaintiffs' gross negligence claim fails as a matter of law for the reasons outlined in Part VI(E), *supra*. *See Mendez*, 2011 WL 6999659, at *16 ("[Defendant] has carried its burden of showing there is no genuine issue of

material fact as to whether it performed "services" for [plaintiff's employer] . . . , and thus that it was under no duty to plaintiff.  In the absence of a duty, there can be no claim for gross negligence."); *In re Heritage Org., LLC*, 2008 WL 5215688, at *18 (Bankr. N.D. Tex. Dec. 12, 2008) (holding that defendants were entitled to summary judgment on plaintiff's gross negligence claims because plaintiff had "failed to demonstrate the existence of any fiduciary duties owed by [defendants]" and "[w]ithout a duty, there can be no breach of duty or resulting harm").

Thus, Plaintiffs' gross negligence claim against UHS fails as a matter of law and must be dismissed with prejudice.

## G.    Plaintiff Barbara Meier's Non-RICO Claims Also Fail as a Matter of Law Because They Are Barred by Statutes of Limitations.

Statute of limitations may be properly asserted in a motion for summary judgment.  *See, e.g.*, *Achee v. Port Drum Co.*, 197 F. Supp. 2d 723, 740 (E.D. Tex. 2002) (granting summary judgment based solely on limitations grounds); *Bowman v. Sandofi-Aventis U.S.*, 2009 WL 5083435, at *5 (W.D. Tex. Dec. 10, 2009) (same).  All of Plaintiffs' non-RICO claims are governed by a two-year statute of limitations.  *See* Tex. Civ. Prac. & Rem. Code § 16.003(a); *Frame*, 657 F.3d at 237 (Rehabilitation Act); *Mayes v. Stewart*, 11 S.W.3d 440, 453 (Tex. App.— Houston [14th Dist.] 2000, pet. denied) (civil conspiracy); *Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 869 (Tex. App.—San Antonio 1997, no writ) (negligence and gross negligence).

A claim accrues for limitations purposes when a plaintiff suffers an injury.  *See Achee*, 197 F. Supp. 2d at 729 ("Under Texas state law, a cause of action generally accrues when 'a wrongful act causes some legal injury, even if the fact of the injury is not discovered until later.'") (citation omitted).  Barbara Meier's claims and her alleged injuries stem from her four-day stay at Mayhill in December 2015.  *See* Dkt. No. 183 ¶¶ 30–84.  Thus, Meier's claims accrued at the end of her admission—on December 22, 2015.  Yet Meier did not serve the lawsuit on UHS until August 6,

2018—more than two years and seven months after the events forming the basis of her claims and therefore beyond the limitations period.  But Meier argues that the statute of limitations "has been tolled and continues to be tolled as a result of her disability."  *Id*. ¶ 31.  As to the nature of her disability, Meier alleges only that she was "actually disabled because of [multiple sclerosis]," which impaired her cognitive abilities, and that she was "treated as disabled . . . because she was certified as a person who required mental health institutionalization . . . and inpatient psychiatric care" and because she was "billed for her inpatient psychiatry stay."  *Id*. ¶¶ 397–98.

Under Texas law, a statute of limitation is tolled for persons of unsound mind.  TEX. CIV. PRAC. & REM. CODE § 16.001(a).  The term "unsound mind" is not defined in the statute, but courts have held that it generally refers to "legal disability," "insane persons," or people "unable to manage [their] affairs or to understand [their] legal rights or liabilities."  *Eber v. Harris Cty. Hosp. Dist.*, 130 F. Supp. 2d 847, 871 (S.D. Tex. 2001) (citations omitted).  In other words, the tolling provision protects plaintiffs "who lack access to the courts or are unable 'to participate in, control, or even understand the progression and disposition of their lawsuit.'"  *Bowman*, 2009 WL 5083435, at *2 (citation omitted).  "[P]roof of facts suspending operation of a statute of limitations is the burden of the party pleading suspension" and "a person claiming to have been under a legal disability must establish that he was under a disability *at the time his cause of action accrued*."  TEX. CIV. PRAC. & REM. CODE § 16.001(b), (d) (emphasis added); *id*. at *3; *Eber*, 130 F. Supp. 2d. at 870–71 (citations omitted).  Thus, to defeat summary judgment, Meier must produce "specific evidence that would enable the court to conclude that [she] did not have the mental capacity to pursue litigation for a definite period of time, or produce a fact-based expert opinion to that effect."  *Bowman*, 2009 WL 5083435, at *3 (citations omitted).

Here, Meier has not carried this burden.  There is no evidence that on December 22, 2015 she was legally disabled, unable to manage her affairs, unable to understand her legal rights or liabilities, or unable to timely bring suit against UHS despite the assistance of counsel.  All that is alleged is that Meier was in a "'high' like condition" and "heavily medicated" (though able to consent to transfer from Mayhill), displayed "severe vegetative symptoms," and "was hearing voices."  Dkt. No. 183 ¶¶ 61, 63, 76, 80.  These allegations do not raise a fact issue regarding whether Meier suffered from an "unsound mind" so as to toll the limitations period.  *See Hargraves v. Armco Foods, Inc.*, 894 S.W.2d 546, 547 (Tex. App.—Austin 1995, no writ) (holding that testimony the plaintiff was sleepy, groggy, disoriented, unable to think clearly, and unable to care for herself did not, in and of itself, raise a fact issue as to whether she suffered from an unsound mind so as to toll the limitations period); *cf. Gibson v. Hous. Launch Pad*, 378 F. App'x 399, 400 (5th Cir. 2010) ("[The plaintiff's] vague allegations suggest that he might have suffered serious mental afflictions that were treated with psychoactive medications.  His allegations do not, however, indicate how those conditions or medications rendered him unable to care for himself or manage his affairs such that the limitations period should have been tolled.").

In fact, there is evidence indicating that Meier's "unsound mind," if any, did not arise on December 22, 2015.  Mayhill's medical records indicate she "was engaged in all therapeutic milieu activities" during her hospital course and her only diagnosis on discharge was "major depressive disorder, recurrent, severe, without psychotic features."  Ex. 28 (Discharge Summary for Barbara Meier).  In addition, a psychiatric evaluation conducted at Mayhill state that Meier "denie[d] any psychosis," "was cooperative," and was "oriented to person and place," and that her "abstract thinking is normal" and her "judgment is fair."  Ex. 29 (Psychiatric Evaluation of Barbara Meier).  Moreover, Mayhill's progress notes state that "no neurological deficit [was] noted" and Meier's

"[t]hough process is coherent and goal-directed." Ex. 30 (Progress Note of Barbara Meier). Further, there was no mention of disability in Meier's state court petition against Mayhill, filed on December 8, 2017. *See* Dkt. No. 6. Disability was mentioned for the first time in Meier's amended petition, filed on August 1, 2018.[3] In short, the evidence in the record does not support Meier's theory that she was disabled on December 22, 2015 when her non-RICO claims accrued.

As such, Meier's claims against UHS under the Rehabilitation Act, for civil conspiracy, negligence, and gross negligence, and under a theory of respondeat superior are time-barred and must be dismissed with prejudice. *See Bowman*, 2009 WL 5083435, at *3–5 (granting defendant's motion for summary judgment on limitations ground where plaintiff's "self-serving, conclusory affidavit" was deemed insufficient evidence of disability for purposes of tolling the statute of limitations); *Eber*, 130 F. Supp. 2d at 872 (granting defendant's motion for summary judgment on limitations ground where there was "no evidence of a judicial determination of incompetence" nor "any professional's diagnosis that [plaintiff] was mentally incompetent at any time.").[4]

## VII.   PRAYER

For these reasons, UHS respectfully requests that the Court grant this Motion for Summary Judgment, dismiss the Third Amended Complaint against UHS in its entirety under Rule 56, and grant all other relief to which it is justly entitled.

---

[3]  Meier cannot claim that her amended state court petition naming UHS of Delaware, Inc. relates back to her original petition naming Mayhill only. *See, e.g.*, *Balle v. Nueces Cty., Tex.*, 690 F. App'x 847, 849–51 (5th Cir. 2017) (affirming dismissal of claims asserted against defendants added to a suit by amendment after the limitations period had run); *O'Donnell v. Diaz*, 2018 WL 3827617, at *2 (N.D. Tex. Aug. 9, 2018) (same).

[4]  Meier's allegations that she was "treated as disabled" by Defendants, Dkt. No. 183 ¶¶ 397–98, is an attempt to satisfy the Rehabilitation Act's definition of "an individual with a disability," which includes any person who is "regarded" as having a physical or mental impairment. 42 U.S.C. § 12102(1). But the Rehabilitation Act does not govern courts' interpretation of the terms "legal disability" or "unsound mind" as used for tolling purposes under Tex. Civ. Prac. & Rem. Code § 16.001(a). *See Bowman*, 2009 WL 5083435, at *4–5 (concluding that an administrative law judge's finding that plaintiff was disabled within the meaning of the Social Security Act had very little relevance to the question of whether plaintiff had an unsound mind for tolling purposes).

Respectfully submitted,

*/s/ George W. Morrison*
Stacy L. Brainin
State Bar No. 02863075
stacy.brainin@haynesboone.com
Anne M. Johnson
State Bar No. 00794271
anne.johnson@haynesboone.com
George W. Morrison
State Bar No. 24007710
bill.morrison@haynesboone.com
Neil Issar
State Bar No. 24102704
neil.issar@haynesboone.com
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Tel: (214) 651-5000
Fax: (214) 651-5940

ATTORNEYS FOR DEFENDANTS
UNIVERSAL HEALTH SERVICES, INC.
AND UHS OF DELAWARE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on

counsel of record via the ECF System on this 11th day of October, 2019.

/s/ *George W. Morrison*
George W. Morrison

### CERTIFICATE OF FILING OF MOTION TO SEAL

I hereby certify that a motion to seal certain documents that accompany this motion for summary judgment was served on counsel of record via the ECF System on this 11th day of October, 2019.

/s/ *George W. Morrison*
George W. Morrison