IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BARBARA MEIER, *et al.*, | § | |
|     *Plaintiffs* | § | |
| | § | |
| v. | § | Case No. 4:18-cv-00615-ALM |
| | § | |
| UHS OF DELAWARE, INC., *et al.*, | § | |
|     *Defendants* | § | |

## DEFENDANT SABAHAT FAHEEM'S MOTION TO STRIKE OR LIMIT THE EXPERT REPORT AND TESTIMONY OF DR. MARK BLOTCKY

Defendant Sabahat Faheem ("Dr. Faheem") files this, her Motion to Strike or Limit the Expert Report and Testimony of Dr. Mark Blotcky ("Motion to Strike"). Dr. Mark Blotcky ("Dr. Blotcky") is Plaintiffs' designated testifying retained psychiatric expert. This Motion to Strike concerns Dr. Blotcky's opinions as set forth in his report of November 22, 2019 ("Report"), specifically as they pertain to the three Plaintiffs treated by Dr. Faheem, Barbara Meier ("Meier"), Madison Hough ("Hough"), and Sandra Stokes ("Stokes"), and to Hough's parents, Plaintiffs Jason and Govinda Hough (collectively, "Faheem Plaintiffs"). In support of this Motion to Strike, Dr. Faheem states as follows:

### A.  INTRODUCTION

1. Pursuant to the Court's Order of October 7, 2019,[1] Plaintiffs were given until November 22, 2019 to designate their experts. On November 22nd, Plaintiffs filed the Report prepared by Dr. Blotcky, a psychiatrist retained by Plaintiffs to personally evaluate each of the individuals admitted to a Defendant hospital in this case and to review and opine about the conduct of Defendants, presumably in connection with their state law claims against those hospitals.

---

[1] Docket Entry No. 297.

Notably, the Report does not specifically mention or address Plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") or § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) ("§ 504"), nor does Dr. Blotcky purport to be an expert in evaluating claims under those statutes.

2.  Dr. Blotcky's Report and testimony should be stricken or limited with respect to the Faheem Plaintiffs because the Report does not comply with Fed. R. Civ. P. 26(a)(2) ("Rule 26(a)(2)") and because it is unreliable under Fed. R. Evid. 702 ("Rule 702"). Specifically, the Report does not contain a complete statement of all opinions that Dr. Blotcky will express and the basis and reasons for them, as is required under Rule 26(a)(2). Dr. Blotcky's Report does not set forth his opinions as to the standard of care applicable to Dr. Faheem, how she allegedly breached that standard of care, how the alleged breach caused the injuries complained of by the Faheem Plaintiffs, or what facts he relied upon in forming his opinions. In addition, Dr. Blotcky's Report and testimony are unreliable under Rule 702.

3.  Under Fed. R. Civ. P. 37(c)(1) ("Rule 37(c)(1)"), a party that fails to provide information as required by Rule 26(a)(2) may not use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless.

4.  Plaintiffs have had sufficient time to retain an expert and to make full and complete expert disclosures in this case. Their failure to comply with Rule 26(a)(2) by the Court's deadline was neither substantially justified nor harmless and their inadequate designation has unfairly prejudiced Dr. Faheem's ability to properly prepare and respond. Accordingly, the Report should be stricken and Dr. Blotcky should not be permitted to supply evidence as to the Faheem Defendants.

## B. ARGUMENT AND AUTHORITIES

**B-1. <u>Plaintiffs were required to make disclosures of expert witnesses accompanied by detailed and complete written reports that complied with Rule 26(a)(2) by November 22, 2019.</u>**

5. The Court's Scheduling Order initially required Plaintiffs to make expert disclosures pursuant to Rule 26(a)(2) by May 13, 2019.[2] The parties sought and received multiple extensions of the discovery deadlines such that Plaintiffs' expert disclosures were ultimately due on November 22, 2019.[3]

6. Rule 26(a)(2) provides that if a witness is retained or specially employed to provide expert testimony in a case, the expert disclosure must be accompanied by a report written and prepared by the witness. The expert's report must contain the following:

    (i)    a complete statement of all opinions the witness will express and the basis and reasons for them;

    (ii)    the facts or data considered by the witness in forming them;

    (iii)    any exhibits that will be used to summarize or support them;

    (iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;

    (v)    a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

    (vi)    a statement of the compensation to be paid for the study and testimony in the case.

*Id*.

---

[2] Docket Entry No. 122.
[3] Docket Entry Nos. 158, 276, and 297.

7. An expert's report must be "detailed and complete… to avoid the disclosure of sketchy and vague expert information."[4] "Threadbare opinions are insufficient, and experts are required to give a factual predicate for each opinion in their report."[5] Moreover, "[e]xperts may not merely rest on their credentials and give a subjective opinion on relevant issues."[6] "Without more than credentials and a subjective opinion, an expert's testimony that `it is so' is not admissible."[7]

**B-2. Dr. Blotcky's Report does not comply with the requirements of Rule 26(a)(2)(B) because it does not contain a statement of his opinions, the basis and reasons for those opinions, or the facts or data that he considered in forming such opinions. Specifically, he has not opined about the standard of care applicable to Dr. Faheem, about how she allegedly breached that standard of care, or about how any alleged breach separately caused injury to Meier, Hough, or Stokes.**

8. Although Dr. Blotcky's Report is 58 pages long excluding exhibits, no reasonable reading of the Report leads to the conclusion that it contains a "complete statement" of his opinions regarding Dr. Faheem's care and treatment of Meier, Hough, and Stokes or the basis and reasons for those opinions. As such, the Report does not meet the requirements of Rule 26(a)(2) and must be stricken, along with Dr. Blotcky's testimony as to Dr. Faheem.

9. Dr. Blotcky is a practicing psychiatrist and has been engaged to opine regarding Plaintiffs' health care liability claims against Dr. Faheem and the other psychiatrists named as Defendants in this case. "Under Texas law, the plaintiff in a medical malpractice case bears the burden of proving: (1) the physician's duty to act according to an applicable standard of care; (2)

---

[4] *La Verdure & Assoc. v. Depositors Ins. Co.,* No. 4:16-cv-00883, 2017 WL 4770701, at *1 (E.D. Tex. Oct. 19, 2017), citing **Sierra Club, Lone Star Chap. v. Cedar Point Oil Co.,** 73 F.3d 546, 571 (5th Cir. 1996).
[5] ***Brimer v. Chase Bank, U.S.A., N.A.,*** No. 7:10-cv-7-O, 2011 WL 13233317, at *2 (N.D. Tex. Jan. 13, 2011).
[6] *Green v. Harris County,* No. H-16-893, 2019 WL 2617429 (S.D. Tex. June 26, 2019), *quoting* **Gen. Elec. Co. v. Joiner,** 522 U.S. 136, 146 (1997).
[7] ***Viterbo v. Dow Chem. Co.,*** 826 F.2d 420, 424 (5th Cir. 1987).

a breach of that standard of care; (3) injury; and (4) causation."[8] A plaintiff generally must produce expert testimony to prove the applicable standard of care, a breach of that standard, and a causal connection between the breach and the harm suffered.[9] "The plaintiff must establish the standard of care as a threshold issue before the factfinder may consider whether the defendant breached that standard of care to the extent it constituted negligence."[10] "Unless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman, expert testimony will be required" to meet the plaintiff's burden of proof.[11] That burden was not met here.

10. In a medical malpractice case, a plaintiff's expert report that references multiple providers generally or collectively but does not offer opinions about the conduct of each individual physician defendant does not pass muster under Rule 26(a)(2).[12]

11. Dr. Blotcky's "opinions" regarding the care and treatment of Meier, Hough, and Stokes (along with the other Plaintiffs who were patients at a Defendant hospital) appear on pages 50-57 of his Report.[13] He lists, quite haphazardly, 45 purported "violations" occurring in this case. In ¶ 3 of this list, Dr. Blotcky claims that there were:

> [v]iolations of standard of care by each defendant doctor with each individual patient. Specifically, Mehta/Tao and Green; Mehta/Buttar and McPherson; Malone/Tao and Harvey; Faheem and Hough; Faheem/Tao and Meier; Faheem/Tao and Stokes; Rafique and Crowell; Rafique/Tom and Creel; and Tao and Young.[14]

---

[8] ***Fewins v. CHS/Community Health Systems, Inc.,*** No. 3:14-cv-0898-M, 2017 WL 3394723, at *2 (N.D. Tex. Aug. 7, 2017), *citing **Quijano v. U.S.,*** 325 F.3d 564, 567 (5th Cir. 2003).
[9] ***Hannah v. U.S.,*** 523 F.3d 597, 601-02 (5th Cir. 2008).
[10] *Id.* at 601.
[11] *Ibid., citing **Hood v. Phillips,*** 554 S.W.2d 160, 165-66 (Tex. 1977).
[12] ***Honey-Love v. U.S.,*** 664 Fed. Appx. 358, 360-61 (5th Cir. 2016).
[13] A true and correct copy of the Report is annexed as **"Exhibit A"** and is incorporated herein for all purposes.
[14] **Exhibit A,** p. 52.

12. *Nowhere* in ¶ 3 – or anywhere else in the Report – does Dr. Blotcky describe the standard of care applicable to Dr. Faheem, distinguish it from the standard of care applicable to Defendant Qingguo Tao (an internist), or discuss how Dr. Faheem breached (or in Dr. Blotcky's vernacular, "violated") that standard of care and caused the injuries claimed by the Faheem Plaintiffs. Moreover, the Report does not state the basis and reasons for Dr. Blotcky's opinions or set forth the facts that Dr. Blotcky considered in forming them.

13. Likewise, in ¶¶ 15 and 16[15] of his list of grievances, Dr. Blotcky claims that there was an "inadequate assessment" of Meier and Hough and no "continuity of care" regarding Meier, whom he opines was subject to "inhumane" and "indecent" care (although it is unclear whether or not the criticisms in ¶¶ 15 and 16 are actually being leveled at Dr. Faheem or at Defendants *en masse*). Dr. Blotcky fails to describe what an "adequate" assessment would entail, how (if at all) Dr. Faheem fell short of performing an adequate assessment, in what way the assessments of Meier and Hough caused their alleged injuries, and what facts gave rise to his conclusion that Meier was treated inhumanely or indecently by Dr. Faheem. He also neglects to describe the type of care needed by Meier to provide "continuity."

14. "A proper expert designation allows opposing counsel to anticipate the expert's testimony and make decisions about how to approach that expert."[16] The purported opinions set forth in Dr. Blotcky's Report are wholly inconsistent with a proper expert designation and really amount to nothing more than disjointed rantings about what, in general, Dr. Blotcky thinks is wrong with mental health care in Texas. Because so many of these "opinions" appear to be

---

[15] **Exhibit A,** p. 53.
[16] *Carr v. Montgomery County, Tex.,* No. H-13-2795, 2015 WL 5838862, at *4 (S.D. Tex. Oct. 7, 2015), *citing* **Cont'l Cas. Co. v. F-Star Property Mgmt., Inc.,** No. EP-10-cv-102-KC, 2011 WL 2887457, at *7 (W.D. Tex, July 15, 2011).

directed at Defendants as a group,[17] because there is scant factual support for the opinions, and because the Report is devoid of information regarding Dr. Blotcky's methodology, it is impossible for Dr. Faheem or her experts to determine what Dr. Blotcky will testify to regarding her alleged care and treatment of Meier, Hough, and Stokes. It will also be difficult, if not impossible, for Dr. Faheem to determine what expert and/or rebuttal evidence, if any, she will need to offer. In short, the deficiencies in the Report leave Dr. Faheem unable to adequately defend herself, and that is patently unfair.

**B-3. The Court should strike Dr. Blotcky's Report and testimony for failure to comply with Rule 26(a)(2).**

15. Pursuant to Rule 37(c)(1), a party that fails to provide information as required by Rule 26(a) may not use that information or witness to supply evidence on a motion, at hearing, or at a trial, unless the failure was substantially justified or harmless. In deciding whether to strike an expert witness for failure to comply with Rule 26(a)(2), a court should consider the following factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the designating party's failure to comply with the Rule's requirements."[18]

16. Assuming that the Faheem Plaintiffs genuinely consider Dr. Blotcky's testimony to have some importance in this case, the factors set forth above clearly weigh in favor of striking his Report and testimony. The significance of his testimony alone cannot and does not justify the Faheem Plaintiffs' unexplained failure to timely comply with their disclosure obligations.[19]

---

[17] **Exhibit A,** pp. 52 – 57, ¶¶ 5, 7 – 9, 18 – 21, 23, 25 – 29, and 34 – 39.
[18] ***Primrose Operating Co. v. Nat'l Am. Ins. Co.,*** 382 F.3d 546, 563-64 (5th Cir. 2004).
[19] ***Carr, ibid.,*** citing ***Geiserman v. MacDonald,*** 893 F.2d 787, 792 (5th Cir. 1990).

Indeed, "the importance of an expert's testimony highlights the need for that expert to be properly designated so that opposing counsel may adequately prepare for that testimony."[20]

17. Dr. Faheem would be significantly and unfairly prejudiced by the Court's acceptance of Dr. Blotcky's obviously deficient report. Any expert retained by Dr. Faheem must try to decipher and respond to Dr. Blotcky's opinions, which are incomplete, imprecise, and unsubstantiated – a time-consuming and costly exercise. Indeed, two of Dr. Blotcky's "opinions" are nothing more than sentence fragments: ¶ 24 ("With each Plaintiff failure of the physician to discharge the patient with [nothing further]") and ¶ 40 ("Each treatment facility to the extent it violated the Texas Health and Safety Code Sections 164.005, in compensation to their employees and agents including [nothing further]"). In addition, Dr. Faheem would be left in the untenable position of cross-examining Dr. Blotcky without being fully apprised of the factual basis for his opinions or the materials he relied upon in forming them.

18. A continuance will do nothing to cure the prejudice to Dr. Faheem. The deadline to make expert disclosures pursuant to Rule 26(a)(2) has already been extended multiple times, and the Faheem Plaintiffs have had sufficient time to make complete disclosures.[21] Dr. Faheem's deadline to make her expert disclosures is now fast-approaching, as are the mediation and trial dates, and any further delay to allow for revision of the inadequate designation will leave Dr. Faheem and her experts needlessly scrambling to meet their own disclosure obligations and guessing as to what Dr. Blotcky might testify to at a deposition or trial. If ever a report contained "sketchy" expert information contrary to the requirements of Rule 26(a)(2) or allowed for unfair surprise, Dr. Blotcky's does.

---

[20] **Geiserman,** *ibid.*
[21] Docket Entry Nos. 158, 276, and 297.

**Defendant Sabahat Faheem's Motion to Strike or Limit
the Expert Report and Testimony of Dr. Mark Blotcky**            **Page 8**

19. The Faheem Plaintiffs have offered no explanation for their failure to comply with Rule 26(a)(2). That failure was neither substantially justified nor harmless and, as a result, the Court should strike Dr. Blotcky's report and testimony (*see,* for example, *Brimer*, *ibid.* (striking expert report that "fail[ed] to provide any substantive expert opinions or the factual bases supporting the opinions" because "[t]hreadbare opinions are insufficient, and experts are required to give a factual predicate for each opinion in their report"); *Space Maker Designs*, *Inc. v. Weldon F. Stump & Co., Inc.,* No. 3:02-cv-0378-H and 3:02-cv-2239-H, 2003 WL 21805274, at *3 (N.D. Tex. Mar. 13, 2003) (striking expert opinion for failing to "file a complete statement of all opinions to be expressed and the basis and reasons therefor"); and *Surety Assoc., Inc. v. Fireman's Fund Ins. Co.*, No. 3:02-cv-223-J-16TEM, 2003 WL 25669165, at *2 (M.D. Fla. Jan. 7, 2003) (excluding expert report that was "clearly deficient in that it did not include a complete statement of all opinions to be expressed," "the basis and reasons for these opinions," or "specific data or other information used in reaching the proposed opinions")).

**B-4.** **The Court should strike Dr. Blotcky's Report and testimony with respect to Dr. Faheem because he was not provided with sufficient information about Meier, Hough, and Stokes, he has not set forth the facts on which his opinions are based, and his opinions are not reliable.**

20. The admissibility of expert testimony is also governed by Rule 702, which provides for the admission of opinion testimony from "a witness qualified as an expert by knowledge, skill, experience, training, or education" if such testimony will assist the trier of fact and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

21. The Faheem Plaintiffs bear the burden of establishing by a preponderance of the evidence that Dr. Blotcky's opinions about Dr. Faheem are reliable.[22] Reliability is not based exclusively on the expert's credentials; rather, it must be established with respect to all aspects of an expert's testimony: "the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia."[23] "Where the expert's opinion is based on insufficient information, the analysis is unreliable."[24] Thus, "a district court may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case."[25]

22. According to the Report, Dr. Blotcky was provided with and reviewed the deposition transcript and/or a deposition summary regarding all Plaintiffs who were admitted to a Defendant hospital[26] *except* Meier,[27] Hough,[28] and Stokes.[29] Plaintiffs' counsel had ample time to summarize the depositions of Meier's daughter, Hough, and Stokes and provide those summaries to Dr. Blotcky before his Report was completed (he was obviously still working on the Report on November 19, 2019, because he interviewed Stokes that day),[30] and perhaps to have supplied Dr.

---

[22] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[23] *Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 355 (5th Cir. 2007), *quoting* **Heller v. Shaw Indus., Inc.,** 167 F.3d 146, 155 (3d Cir. 1999).
[24] *Paz v. Brush Engineered Materials, Inc.,* 555 F.3d 383, 388 (5th Cir. 2009).
[25] *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015).
[26] **Exhibit A,** p. 11.
[27] Meier was not actually deposed because Plaintiffs' counsel represented to Dr. Faheem's counsel that Meier is so mentally debilitated (at least in part because she suffers from multiple sclerosis) that she was unable to answer questions about her hospitalization. One of Meier's daughters was deposed instead. The deposition took place on October 22, 2019. Interestingly, Meier was apparently well enough to be personally interviewed by Dr. Blotcky less than three weeks later, on November 10, 2019. *See* **Exhibit A,** pp. 36-39.
[28] Hough's deposition took place on October 15, 2019.
[29] Stokes' deposition took place on October 23, 2019 but was not completed because Plaintiffs' counsel represented to Defendants' counsel that Stokes, who lives in Florida, had a work commitment and needed to leave a little earlier than expected to catch a plane and because it became clear during the deposition that Stokes' was in possession of notes and other information that had not previously been disclosed.
[30] **Exhibit A,** p. 40.

Blotcky with the deposition transcripts themselves (Hough's was sent to Plaintiffs' counsel on October 30, 2019 and Meier's and Stokes' were sent on November 11, 2019).

23. Without at least a deposition summary, Dr. Blotcky clearly had incomplete and inaccurate information about the hospitalizations of Meier, Hough, and Stokes. For example, during her interview with Dr. Blotcky, Hough said that she was not suicidal on the day that she was taken to the hospital.[31] However, Hough testified that when asked by Dr. Faheem during their initial consultation how she was feeling, she replied that she had tried to kill herself.[32] Certainly Dr. Blotcky should have considered that information in his evaluation of Hough (particularly since the medical record contains information that Hough had previously attempted to kill herself at least once, and possibly twice). Likewise, Dr. Blotcky apparently concludes that Stokes did not require hospitalization because she denied being suicidal.[33] But Stokes testified that prior to her admission, she believed she had been eating rocks or pebbles,[34] which could be viewed as intentionally self-injurious behavior justifying her need for inpatient treatment. Obviously, Dr. Blotcky believes that deposition transcripts or summaries are important to his analysis or he would not have reviewed those of all the other patients. He should have insisted upon the same information with respect to Dr. Faheem's patients that he did with the patients of the other Defendant psychiatrists. His failure to consider sworn testimony of Hough, Stokes, and Meier's representative do so renders his opinions about Dr. Faheem unreliable and affirmatively misleading.

---

[31] **Exhibit A,** p. 29.
[32] *See* pp. 178:16 – 179: 5 of Hough's deposition transcript, a true and correct copy of which is annexed as **"Exhibit B"** and is incorporated herein for all purposes.
[33] **Exhibit A,** p. 41.
[34] See pp. 123:1 – 124:1 of Stokes' deposition transcript, a true and correct copy of which is annexed as **"Exhibit C"** and is incorporated herein for all purposes.

**Defendant Sabahat Faheem's Motion to Strike or Limit**
**the Expert Report and Testimony of Dr. Mark Blotcky**     **Page 11**

Case 4:18-cv-00615-ALM Document 383 Filed 12/06/19 Page 12 of 14 PageID #: 9664

24. Dr. Blotcky failed to set forth in the Report the facts on which he based his opinions about the psychiatric care rendered by Dr. Faheem. Reliability hinges on whether the reasoning underlying an expert's report and testimony is scientifically valid.[35] To be reliable, expert testimony must be supported by specific, identified facts in the record as well as the expertise and scientific knowledge of the expert.[36] In addition, the expert must furnish "some objective, independent validation of [his] methodology."[37]

25. Despite having received hundreds of pages of medical and hospital records relative to Meier, Hough, and Stokes, as well as other materials, Dr. Blotcky does not point to a single entry in any of those documents in support of his opinions or cite to any authority regarding how an ordinarily prudent psychiatrist would have treated Meier, Hough, or Stokes under similar circumstances. The conclusions in the Report appear to be based largely on the self-serving statements made by Meier, Hough, and Stokes when interviewed by Dr. Blotcky. An expert's report or testimony that merely regurgitates a layperson's oral history "is no more than [lay] testimony dressed up and sanctified as the opinion of an expert."[38]

26. Dr. Brotcky has selectively ignored the medical record and sworn testimony and has focused almost exclusively on what the Faheem Plaintiffs want him to hear. Moreover, he has failed or refused to disclose his methodology or to explain how the principles that he used to assess Dr. Faheem's conduct are in any way valid from a scientific standpoint. The connection between his opinions and the facts upon which they are based, which should be readily apparent, simply cannot be determined by reading his Report. Without a meaningful summary of the facts and

---

[35] *Carlson v. Bioremedi Therapeutic Systems,* 822 F.3d 194, 199 (5th Cir. 2016).
[36] *Holt v. St. Luke's Health System,* No. 4-16-2898, 2018 WL 706469, at *5 (S.D. Tex. Feb. 5, 2018).
[37] *Brown v. Ill. Cent. R. Co.,* 705 F.3d 531, 536 (5th Cir. 2013).
[38] *Sanderson v. IFF,* 950 F.2d 981, 1005 n. 4 (C.D. Cal. 1996), *citing Viterbo, ibid.*

opinions to which he intends to testify, Dr. Blotcky's Report cannot be deemed reliable and must be stricken.

### C. CONCLUSION AND PRAYER

27. For the reasons set forth herein, Dr. Faheem respectfully requests that the Court grant Dr. Faheem's Motion to Strike in its entirety, strike or limit Dr. Blotcky's Report and testimony as to Dr. Faheem, and grant such other and further relief to which she may be justly entitled.

Respectfully submitted,

**McCUE-PAULEY & ASSOCIATES, P.C.**

By: */s/David C. McCue*_____
David C. McCue
Texas State Bar No. 13494100
dmccue@mcpaulaw.com
Bruce A. Pauley
Texas State Bar No. 15643200
bpauley@mcpaulaw.com
Mary T. Sullivan, *Of Counsel*
Texas State Bar No. 24026656
msullivan@mcpaulaw.com

15150 Preston Road, Suite 200
Dallas, Texas 75248
Telephone: (972) 490-0808
Facsimile: (972) 490-9545

**ATTORNEYS FOR DEFENDANT SABAHAT FAHEEM**

## CERTIFICATE OF CONFERENCE

I hereby certify that on December 5, 2019, in accordance with Loc. R. CV-7(h), I conferred with Plaintiffs' counsel, John T. Burkhead, by telephone regarding the foregoing Motion to Strike, which is opposed. Mr. Burkhead and I conferred in good faith; however, no agreement could be reached because Defendant Dr. Sabahat Faheem believes that the Report of Plaintiffs' expert, Dr. Mark Blotcky, is non-compliant with Fed. R. Civ. P. 26(a)(2) and Plaintiffs disagree with that position. Although I am not lead counsel on this case, I had the authority to speak to Mr. Burkhead and took part in the conference because lead counsel, David C. McCue, was out of town and unable to confer with Mr. Burkhead.

*/s/ Mary T. Sullivan*  
Mary T. Sullivan