# EXHIBIT "A"

Attorney Russell Thornton
Thiebaud Remington Thornton Bailey LLP
4849 Greenville Ave
Dallas, TX 75206

12/27/2019

Re: Meier et al v Metha and U.H.S.

Dear Mr. Thornton:

Upon your request, I have reviewed the Millwood Hospital medical records and other supporting documents for the hospitalizations of Yolanda McPherson (admitted 1/23/18 – 1/31/18, 8 days) and Jalissa Green (admitted 4/21/18- 5/3/19, 13 days). Specifically, the records that I have reviewed are:

1. Deposition of Ms. Green
2. Deposition of Ms. McPherson
3. Deposition of Dr. Mehta
4. Deposition of Dr. Buttar
5. Deposition of Mr. Quinn
6. Millwood records on Ms. Green
7. BH Connections records on Ms. Green
8. Dr. Buttar's records on Ms. Green
9. Millwood records on Ms. McPherson
10. Dr. Tao's records on Ms. McPherson
11. Methodist Mansfield records on Ms. McPherson
12. BH Connections records on Ms. McPherson
13. Mansfield Fire Department records on Ms. McPherson
14. Care Flite records on Ms. McPherson
15. Family Health Care Associates records on Ms. McPherson
16. Report of Dr. Mark Blotcky

I am a licensed physician in Massachusetts and have practiced psychiatry in this state since completing my residency in 1990. I am currently the Chair of Psychiatry at North Shore Medical Center, which includes the Epstein Center for Behavioral Health, a 120 bed psychiatric inpatient facility that is affiliated with Massachusetts General Hospital. In this role I am responsible for the quality of care provided by the department, oversee the physicians and nurse practitioners, and provide direct care on the adult in geriatric psychiatry units. I also have an outpatient hospital clinic practice, as well as an outpatient private practice.

I am a part-time Instructor in Psychiatry at Harvard Medical School and an Adjunct Instructor in Psychiatry at Tufts Medical School. I also hold clinical appointments at Massachusetts General

1

Hospital and McLean Hospital. I am a member of the Boston Suicide Study Group, and I teach about suicide risk assessment and other aspects of working with suicidal patients at Harvard Medical School. I have given academic and clinical presentations on various aspects of working with suicidal patients locally, nationally and internationally. I have attached my CV for your review.

In my opinion, Dr. Mehta met the standard of care during the hospitalizations of both Ms. McPherson and Ms. Green. Both Ms. McPherson and Ms. Green met medical necessity criteria for psychiatric hospitalization, and neither had an inordinately long length of stay considering their initial presentation. Both Ms. McPherson and Ms. Green had made suicide attempts and had expressed intent, a wish that their overdose would end their lives. This is one of the strongest risk factors for completed suicide and a very clear indicator that hospitalization was needed. Length of stay for an inpatient psychiatric hospitalization is not predetermined by diagnosis, but is variable based on the degree of risk, patient's response to treatment, psychosocial factors, and physician judgment. One of the challenges for an inpatient psychiatrist is that many patients have a remission of their expressions of suicidality after coming into the hospital, but this in and of itself does not mean they are ready for discharge. Sometimes this represents true improvement that will last post-discharge but other times it is transient, and some patients may minimize how bad they are feeling as a way of getting out of the hospital more quickly. In one study of inpatient suicides, almost 80% of patients who completed suicide had documented denial of suicidal ideation just proximal to the event (Busch et al, 2003). In addition, the period immediately post-discharge is one of the highest risk times in the patient's life.

I disagree with Dr. Blotcky's opinion that Dr. Mehta failed to meet the standard of care when she treated Ms. McPherson and Ms. Green at Millwood Hospital. Below I will list a few of the assertions made by Dr. Blotcky and state my disagreement with each assertion.

- "Failure to assess need and appropriateness for admission"
  - Ms. McPherson and Ms. Green were appropriately assessed for admission. They had both made suicide attempts by overdose and were evaluated by an emergency department physician, with consultation from a psychiatric assessor. The determination to admit was appropriate.

- "Failure to release patients upon request, applicable to every person"
  - Ms. Green was admitted on 4/21/18 and signed an AMA form on 4/23/2018. There was subsequently a hearing during which time her case came before a judge who apparently determined that she needed to stay in the hospital.
  - Ms. McPherson at times expressed that she did not want to be in the hospital but did not request an AMA discharge form.

- Ms. Green "was no danger, which was supported by the nursing notes and they would not let her leave."

2

- o Ms. Green had made a suicide attempt with intent to die just proximal to her psychiatric hospitalization. A suicide attempt, particularly with intent to die, is one of the strongest risk factors for completed suicide. Even if she was currently denying suicidal ideation, Ms. Green was at very high risk for suicide compared to the general population. Denial of suicidal ideation is one of many factors that a physician needs to consider when evaluating readiness for discharge and cannot alone be relied upon as a risk assessment. In addition, the time following psychiatric hospitalization is a high-risk time for suicide.

- "With each plaintiff, failure to provide appropriate treatment for the patient's illness in the least restrictive setting..."
    - o Ms. McPherson and Ms. Green both received appropriate treatment based on their diagnosis and symptoms. Both met medical necessity criteria for inpatient psychiatric hospitalization after having made a suicide attempt.

- "Failure to communicate with family members"
    - o This is not true. The records of both Ms. McPherson and Ms. Green document a family meeting prior to discharge from Millwood Hospital.

- Failure to have "a personal evaluation of the patient by a physician before admission..."
    - o Both Ms. McPherson and Ms. Green were evaluated in the emergency department by an emergency department physician. The emergency department physician consulted with a psychiatric assessor and determined that inpatient psychiatric admission was warranted.

- Failure of the facility to "have a voluntary patient evaluated by a physician at regular intervals to determine the person's need for continued inpatient treatment..."
    - o Both Ms. McPherson and Ms. Green were evaluated by Dr. Mehta throughout the inpatient stay. Dr. Mehta worked with a nurse practitioner who did most of the documentation, but she herself also saw each patient on multiple occasions.

My opinions about this case are based on my review of the records that have been available to me to date. I reserve the right to supplement or to modify my opinions based on additional review of information that becomes available.

Sincerely,

Mark Schechter, MD