# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **BARBARA MEIER; MADISON HOUGH;** | § | |
| **JASON HOUGH; GOVINDA HOUGH;** | § | |
| **TIFFANY YOUNG; SANDRA STOKES;** | § | |
| **YOLANDA MCPHERSON;** | § | |
| **TROY HARVEY; BILL CROWELL;** | § | |
| **DIANE CREEL; LYNN CREEL; AND** | § | |
| **JALISA GREEN** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | **Civil Action No: 4:18-cv-00615-ALM** |
| | § | |
| **UHS OF DELAWARE, INC.;** | § | |
| **UNIVERSAL HEALTH SERVICES, INC.;** | § | |
| **MAYHILL BEHAVIORAL HEALTH, LLC;** | § | |
| **SABAHAT FAHEEM;** | § | |
| **KENNETH CHAD ELLIS;** | § | |
| **MILLWOOD HOSPITAL LP;** | § | |
| **SEJAL MEHTA; GARY MALONE** | § | |
| **BEHAVIORAL HEALTH** | § | |
| **MANAGEMENT, LLC** | § | |
| **D/B/A BEHAVIORAL HOSPITAL OF** | § | |
| **BELLAIRE; JAMAL RAFIQUE;** | § | |
| **HICKORY TRAIL HOSPITAL, LP;** | § | |
| **UNIVERSAL PHYSICIANS, P.A.;** | § | |
| **DR. SAYS LLC; MD RELIANCE, INC.;** | § | |
| **OFFICEWINSOME, LLC;** | § | |
| **YU-PO JESSE CHANG;** | § | |
| **QUINGGUO TAO; TIMOTHY TOM;** | § | |
| **HARMANPREET BUTTAR;** | § | |
| **YUNG HUSAN YAO;** | § | |
| **BEHAVIORAL HEALTH CONNECTIONS,** | § | |
| **INC.; WENDELL QUINN;** | § | |
| **JAN ARNETTE,** | § | |
| | § | |
| *Defendants*. | § | |

**<u>EXPERT REPORT OF JEFFREY MATTHEWS</u>**
January 6, 2020

Expert Report of Jeffrey Matthews
January 6, 2020

## I.   QUALIFICATIONS & ASSIGNMENT

I am a Partner at StoneTurn Group LLP ("StoneTurn"), based in StoneTurn's Dallas, Texas office. StoneTurn has been retained by the law firm Haynes and Boone, LLP ("Counsel") on behalf of its clients, UHS of Delaware, Inc., Universal Health Services, Inc., Behavioral Health Connections, Inc., Wendell Quinn; and Jan Arnette (collectively, the "Client") for the lawsuit pending in District Court for the Eastern District of Texas Sherman Division.[1]

StoneTurn is a global consulting firm that offers economic, financial, and business management expertise to major law firms, corporations, accounting firms, and governments. StoneTurn serves such clients from offices across the U.S., U.K. and in Germany, Brazil and South Africa, assisted by a network of senior advisers around the world.

I have significant experience in financial investigations, forensic accounting, and litigation support. I have been designated as the expert in a RICO matter involving a national behavioral health organization that is accused of paying bribes and kickbacks to secure federal grants. Further, during the last 12 months, I have served as either a consulting or testifying expert in 4 other healthcare matters with similar allegations.  Also, during my career, I have calculated damages for more than 75 individuals that have claimed personal injury damages such as these.  I have spent twenty-five years practicing for Big Four accounting firms, consulting firms, and state, local, and federal governmental bodies. I have analyzed alleged damages arising from alleged age discrimination, wrongful termination, breach of contract, breach of fiduciary duty, diminution of value and misappropriation of trade secrets claims, among others.

A copy of my CV is attached to this report as **Exhibit A.**

StoneTurn is being compensated for my time in this matter at an hourly rate of $525. Rates of consultants working under my direction range from $195 to $450. Neither my nor StoneTurn's compensation is dependent on the outcome of this matter.

---

[1] *Barbara Meier et al. v. UHS of Delaware, Inc. et al.*, in District Court for the Eastern District of Texas Sherman Division, Civil Action No: 4:18-cv-00615-ALM, dated May 28, 2019 ("the Lawsuit").

*Confidential Information – Attorneys' Eyes Only*

Expert Report of Jeffrey Matthews
January 6, 2020

It is my understanding that Barbara Meier ("Ms. Meier") filed her first original petition against Mayhill Hospital for the alleged damages for "violations of the Texas Health and Safety Code …" on December 8, 2017.[2] On August 1, 2018, Ms. Meier amended the Original Petition to name UHS of Delaware, Inc. as a defendant.[3] The Original Petition was moved to the Eastern District of Texas Sherman Division on August 28, 2018 because Ms. Meier's allegations involve violations of federal statutes.[4]

It is also my understanding that on October 1, 2018, new counsel filed an amended complaint naming eight new Plaintiffs and 21 Defendants.[5] Plaintiffs filed a Second Amended Original Complaint on April 15, 2019 with additional three new Plaintiffs: Diane Creel, Lynn Creel, and Jalisa Green and additional Defendant: Timothy Tom. On May 29, 2019, Plaintiffs filed their Third Amended Original Complaint.

The Plaintiffs in this matter were at one time patients of a facility operated by the Defendants except for Jason and Govinda Hough. The Plaintiffs allege that they were damaged from their respective stays in Defendants' facilities and by some of the individuals at those facilities.

Claims against Defendants include alleged violations of the Racketeer Influenced and Corrupt Organizations ("RICO") statute, Section 504 of the Rehabilitation Act, the Texas Deceptive Trade Practices Act, the Texas Mental Health Code, false imprisonment, civil conspiracy, respondeat superior, negligence, gross negligence, and sexual exploitation by mental health services providers.[6]

Counsel has instructed me to review, analyze, and opine on the Plaintiffs' alleged damages presented in the above-mentioned pleadings and in an expert report by Mr. Michael B. Van Amburgh dated November 21, 2019.[7]

---

[2] *Barbara Meier v. Mayhill Hospital*, in District Court of Denton County, Texas, dated December 8, 2017 (the "Original Petition").
[3] Plaintiffs' Third Amended Original Complaint dated May 28, 2019 (the "Complaint"), p.3, par. 3.
[4] The Complaint, p.3, par. 3.
[5] Ibid, p.3, par. 3.
[6] Ibid, p.4, par. 4.
[7] Michael B. Van Amburgh report dated November 21, 2019 (the "Van Amburgh Report").

*Confidential Information – Attorneys' Eyes Only*

Expert Report of Jeffrey Matthews
January 6, 2020

## II.   INFORMATION AND MATERIAL ANALYZED

In connection with my analysis, I relied on information and documents provided by the parties to this litigation (see "**Exhibit B**"), various pleadings, discussions with Counsel, publicly available information about the parties, and my own education, training and experience analyzing issues of the sort raised by the damages claimed in this case. This report, which sets forth my opinions and the basis for those opinions, relies on the information available, reviewed, and analyzed as of January 6, 2020.

Since discovery is still ongoing, it is likely that additional information will be available for my review and consideration. I reserve the right to supplement or amend this report based on additional relevant information that I receive, including, but not limited to, additional documents produced in this matter, depositions, testimony, admissions, or other relevant evidence.

## III.   EXECUTIVE SUMMARY

After analyzing the information available in this matter and Mr. Van Amburgh's report, it is my opinion that there are no economic damages caused by the Defendants to the Plaintiffs included in Mr. Van Amburgh's report.  Further, as of the date of this report, I do not have an opinion, with the exception of damages claimed by Sandra Stokes, on other damages claimed in the complaint as there is no sufficient support to conclude on damages. I reserve the right to supplement this report should damage opinions be provided for additional plaintiffs.

It is my opinion that Mr. Van Amburgh ignores significant and relevant facts of the case, and his calculation is replete with material errors and omissions and does not follow standard acceptable methodology. Further, the calculation of economic losses included in Mr. Van Amburgh's report is highly speculative, deeply flawed, lacks sufficient support, and is not performed within a reasonable degree of accounting certainty. In general, and as discussed later in greater detail, I noted that Mr. Van Amburgh:

- Fails to address how the alleged actions of the Defendants proximately caused damages to the Plaintiffs;

*Confidential Information – Attorneys' Eyes Only*

Expert Report of Jeffrey Matthews
January 6, 2020

- Fails to consider other facts produced in discovery that either likely caused, or that may be largely responsible for the decline in revenues, net income and/or wages;

- Makes unsupported and speculative assumptions;

- Makes mathematical errors and flawed methodology for each of the plaintiffs' calculations;

- Ignores the mitigating activities for each Plaintiff represented subsequent to the alleged date of harm.

## IV.    BACKGROUND FACTS

### **The Parties**

Tiffany Young ("Mrs. Young") resides in Mansfield, Texas. Mrs. Young is a real estate investor and owns a real estate investment business called Young & Young Investment Group, LLC ("Young & Young"). Mrs. Young is in the business of flipping houses; she buys residential properties, renovates the properties, and then resells them.[8] Mrs. Young voluntarily spent three days at Hickory Trail Hospital in DeSoto, Texas in early November 2017.[9]

Diane Creel ("Mrs. Creel") resides in Fort Bend County, Texas. Mrs. Creel and her husband are small business owners; Mrs. Creel is the company's salesperson.[10] Mrs. Creel was voluntarily admitted to Behavioral Hospital of Bellaire ("BHB") on August 8, 2017.[11] Mrs. Creel spent approximately six days at BHB.[12]

Madison Hough ("Ms. Hough") resides in Denton, Denton County, Texas. Ms. Hough was a college freshman at Texas Women's University ("TWU") at the time she was voluntarily admitted to Mayhill when she allegedly attempted to overdose on ibuprofen.[13]

---

[8] The Complaint, p.30, par. 160 - 161.
[9] Ibid, p. 30, par. 159.
[10] Ibid, p. 42, par. 228.
[11] Ibid, p. 44, par. 234; Oral and Videotaped Deposition of Diane Creel dated September 10, 2019 ("Creel Deposition"), p. 82.
[12] Creel Deposition, p. 126.
[13] The Complaint, p. 20, par. 85 – 87; Oral and Videotaped Deposition of Madison Paige Hough dated October 15, 2019 ("Hough Deposition"), p. 94.

*Confidential Information – Attorneys' Eyes Only*

Expert Report of Jeffrey Matthews
January 6, 2020

The Plaintiffs retained Mr. Van Amburgh as their financial expert. As such, Mr. Van Amburgh's report offers damages opinions for these parties only. However, there are several other plaintiffs who also allege damages.

Barbara Meier, Govinda Hough, Jason Hough, Yolanda McPherson, Troy Harvey, Bill Crowell, Sandra Stokes, and Jalisa Green (collectively named "Other Plaintiffs") are individuals and citizens of the state of Texas, who reside in various Texas counties.[14] These Other Plaintiffs (except for Jason Hough and Govinda Hough) were voluntarily admitted to either Mayhill, Millwood, Hickory Trail, and/or BHB (collectively named "Hospital Defendants").[15]

Universal Health Services, Inc. ("UHS") is a holding company and operates through its subsidiaries including its management company, UHS of Delaware, Inc.[16] UHS is one of the nation's largest providers of hospital and healthcare services, has more than 350 acute care hospitals, behavioral health facilities, and ambulatory centers across the U.S.[17] UHS is based in King of Prussia, Pennsylvania and ranked on the Fortune 500 list for the 16th year.[18] UHS owns and operates Mayhill, Millwood, Hickory Trail, and BHB.

Behavioral Health Connections, Inc. ("the Connection") provides 24-7 on demand comprehensive mental health services focusing on the assessment, diagnosis, treatment and disposition of patients needing mental health evaluation, recommendation and care for patients in medical facilities.[19] UHS allegedly utilized the Connection as a dispatch company and coordinates the intake of patients to a UHS-owned facility.[20]

---

[14] The Complaint, p. 5, par. 6.
[15] Oral and Videotaped Deposition of Jalisa Green dated September 6, 2019 ("Green Deposition"), p. 92; Oral and Videotaped Deposition of Troy Anthony Harvey dated September 12, 2019 ("Harvey Deposition"), p. 206; Oral and Videotaped Deposition of William Crowell dated September 11, 2019 ("Crowell Deposition"), p. 191.
[16] https://www.uhsinc.com/about-uhs/, accessed on December 20, 2019.
[17] https://www.uhsinc.com/about-uhs/, accessed on December 20, 2019.
[18] https://www.uhsinc.com/about-uhs/, accessed on December 20, 2019; The Complaint, p. 9, par. 19.
[19] https://bhconnections.org/about-us/, accessed on December 20, 2019.
[20] The Complaint, p. 9, par. 21.

*Confidential Information – Attorneys' Eyes Only*

Expert Report of Jeffrey Matthews
January 6, 2020

Wendell Quinn and Jan Arnette were named in the Complaint as the representatives who recommended patients to Millwood.[21]


## V.    ANALYSIS OF MR. VAN AMBURGH'S REPORT

Mr. Van Amburgh estimates damages allegedly incurred by Mrs. Young (Young & Young), Mr. and Mrs. Creel (Display Graphics), and Ms. Hough totaling $1,095,861. The lost profits analyses are flawed, misleading, inaccurate, speculative, lack support, and are not performed within a reasonable degree of accounting certainty. Furthermore, Mr. Van Amburgh fails to apply and ignores how the Plaintiffs mitigate their damages.


Based upon information available to date, I believe that Mr. Van Amburgh ignores facts and documents produced in this case and fails to address how damages are proximately caused by the alleged actions of the Defendants. The proximate cause element requires plaintiffs to tie damages to the wrongful acts; lost profits are recoverable only when they can be traced to, and result directly from, the wrong to be redressed.[22] This makes establishing causation essential to the plaintiffs' case because lost profit damages are not recoverable unless they "are direct[ly] and proximate[ly] caused by a defendant's" wrongful act.[23] While parties may seek to show causation through other witnesses or means, this does not relieve a damages expert from their professional responsibilities. Further, when the profits are lost as a consequence of "a completely voluntary and independent business decision," the plaintiff may not be able to meet this burden even if the defendant's actions are a contributing factor underlying the plaintiff's decision.[24]

---

[21] The Complaint, p. 25, par. 124; p. 28, par. 144.
[22] See, e.g., National Market Share, Inc. v. Sterling National Bank, 392 F.3d 520, 525 (2d Cir. 2004) ("[c]ausation is an essential element of damages in a breach of contract action; and, as in tort, plaintiff must prove that a defendant's breach directly and proximately caused his or her damages"); Quick Air Freight, Inc. v. Teamsters Local Union No. 413, 575 N.E.2d 1204, 1215 (Ohio App. 1989) ("[t]he recovery of lost profits for defendant's wrongful acts is not allowed unless the loss is the immediate and not the remote consequence of the wrongful acts.").
[23] National Market Share, Inc., 392 F.3d at 526-27 (citations omitted).
[24] Consolidated Data Terminals v. Applied Digital Data Systems, 708 F.2d 385 (4th Cir.1983).

7

Expert Report of Jeffrey Matthews
January 6, 2020

## **Young & Young**

Young & Young began operating in June 2017 and was owned by Mrs. Young and her husband, James Young, at 50 percent each.[25] Although James Young owned 50 percent of Young & Young, he did not contribute to the operations of the business.[26] On November 5, 2017, Mrs. Young admitted herself into Hickory Trail Hospital and spent three days there. Mrs. Young alleges that Young & Young suffered damages as a result of her stay at Hickory Trail Hospital.[27] She claimed that her inpatient admission caused a negative impact on her business because she allegedly could not think clearly, make good decisions, or focus after she was discharged.[28]

Mr. Van Amburgh calculates damages for Young & Young; however, the damages methodology contains errors including, but are not limited to, the following:

1.  Mr. Van Amburgh fails to consider alternative causes why Young & Young's net income declined, despite a number of facts produced in this matter. Instead, Mr. Van Amburgh concludes that the decline in net income was solely due to Mrs. Young's stay at Hickory Trail Hospital. The *AICPA & CIMA Forensic & Valuation Services Practice Aid – Calculating Lost Profits* states that "the practitioner should consider whether losses could be associated with unrelated external events or events subsequent to the wrongful act. Practitioners need to attempt to identify the non-violative facts affecting losses and ensure that the damage analysis identifies and calculates as damages only those losses that are violative within the asserted causes of action." Prior to the alleged date of harm, Young & Young was experiencing a net loss.[29]

---

[25] 2017 and 2018 Form 1065 – U.S. Return of Partnership Income. PLTF 018759-779 and PLTF 018746-758.

[26] Deposition of Tiffany Young, September 20, 2019 ("Young Deposition"), pg. 190. "Q.· Was your husband involved in that decision-making process? A. No. Q. Was he a -- he's a 50-percent partner in the investment company, is he involved at all in the business? A. The only thing he did was he kept track of the spreadsheet for me. And I consulted with him, he builds apartments. And so if I ran into a tough situation and I needed advice I would consult with him."

[27] Q.  Is it your contention that my client is responsible for that loss? A. I was not -- after I left Hickory Trails I was so traumatized by the events that took place that I did not come out of there the same person. I was not able to think clearly, I was not able to make good decisions, I was not able to focus. I don't know if you have ever been under that type of stress or trauma. And I never believed that PTSD was even a thing until it happened to me. But it absolutely affected every part of my life, particularly my ability to focus and concentrate and make good decisions and that is reflected here.

[28] Ibid.

[29] Appendix I.1.

8

*Confidential Information – Attorneys' Eyes Only*

Expert Report of Jeffrey Matthews
January 6, 2020

   a. For example, Mrs. Young alleges that the 811 Whitley property was sold at a loss due to her stay at Hickory Trail Hospital; however, it is important to note that the listing price for the property was reduced multiple times from its first listing of $364,900 on August 12, 2017.[30] On October 31, 2017, prior to Mrs. Young entering Hickory Trail Hospital, the listing price was reduced to $315,000[31] and ultimately sold for $306,541.[32] Thus, it is clear that this loss is unrelated to Mrs. Young's stay at Hickory Trail Hospital.

2. Gross receipts from the Young & Young 2018 U.S. Return of Partnership Income Form 1065 ("Young & Young 2018 Tax Return") were used as a base period to project net sales for 2019 through 2023 and for the terminal value year. This is an error because the gross receipts from the Young & Young 2018 Tax Return include business activity subsequent to the date that Mrs. Young alleges her harm. In other words, the gross receipts in the Young & Young 2018 Tax Return were made from houses sold during a period in which Mrs. Young alleges that she was not thinking clearly. Gross receipts should be projected based on Young & Young's performance prior to the alleged date of harm.[33,34]

3. Lost profits were calculated for future periods 2019 through 2023 and the terminal value. However, the present value of these future cash flows was not determined. Furthermore, no support was provided for the operating expenses.

4. A terminal value was included in the lost profits analysis. Including a terminal value amount in a lost profits analysis implies that the business will lose profits into perpetuity. "Lost profits measures are appropriate when the defendant's actions have negatively affected, but not destroyed, a business or when damages occur over a **finite**

---

[30] Appendix I.2.1.
[31] Appendix I.2.1.
[32] PLTF 018789.  No support for this transaction was produced other than the spreadsheet prepared by Young & Young.
[33]  "Before and After. This approach compares the plaintiff's sales **before the defendant's wrongdoing** with the plaintiff's sales level after the defendant's wrongdoing…" Litigation Services Handbook, The Role of a Financial Expert, Sixth Edition, pp. 4 - 34.
[34] "Most experts consider the historical financial performance of the subject company in validating estimates of but-for performance, regardless of the method to develop the but-for estimate.  Failure to do so will expose experts to criticism if their pro forma estimates materially diverge from actual past performance…" Litigation Services Handbook, The Role of a Financial Expert, Sixth Edition, pp. 4 - 32.

*Confidential Information – Attorneys' Eyes Only*

Expert Report of Jeffrey Matthews
January 6, 2020

period."[35] In mid-2018, Mrs. Young and a CPA started Houses, Heels and Hammers, LLC ("HHH") where Mrs. Young began conducting the same business as she did for Young & Young. Based on the support analyzed, Mrs. Young wound down the operations of Young & Young in 2018 while focusing those same efforts on HHH. Effectively, Mrs. Young was operating the same business, just under a different name.

5. The terminal year was calculated using a 25 percent Yield Rate and fails to provide support, fails to include a long-term growth rate.

6. Mr. Van Amburgh also makes a number of errors, including:

   a. Depreciation expense added back to net income was $10,488 while the Young & Young 2018 Tax Return reflected only $4,812.

   b. Using a 7.5 percent gross margin rate which was applied to total revenue to calculate total gross profit. The 7.5 percent gross margin rate is unsupported. Based on an analysis of houses flipped prior to Mrs. Young entering Hickory Trail Hospital, the gross profit is approximately 0.1 percent.[36] Using a 7.5 percent gross margin rate essentially inflates Mr. Van Amburgh's damages for Young & Young.

Table 1

| Property Address | Purchase Date | Sale Date | Sales Price | Net Income/(Loss) to Young & Young | % Profit Margin |
|---|---|---|---|---|---|
| 811 Whitley | 6/23/2017 | 12/8/2017 | $ 306,541.00 | $ (41,793.08) | -13.6% |
| 4509 Blackstone | 3/3/2017 | 6/6/2017 | 177,500.00 | 10,915.57 | 6.1% |
| 2716 Ryan Place | 4/12/2017 | 7/4/2017 | 350,000.00 | 9,828.61 | 2.8% |
| 201 Lansford | 5/1/2017 | 9/25/2017 | 245,000.00 | 14,293.32 | 5.8% |
| 2500 Purselley | 5/31/2017 | 8/8/2017 | 120,200.00 | 7,271.20 | 6.0% |
| 2201 Pin Oak | 7/28/2017 | 11/9/2017 | 250,638.18 | 1,104.24 | 0.4% |
| | | | **$1,449,879.18** | **$ 1,619.86** | **0.1%** |

---

[35] Litigation Services Handbook, The Role of a Financial Expert, Sixth Edition, pp. 4 - 24.
[36] Appendix I.2.

*Confidential Information – Attorneys' Eyes Only*

Expert Report of Jeffrey Matthews
January 6, 2020

7. Finally, Mr. Van Amburgh fails to mitigate the "lost profits" of Young & Young by ignoring the net income/profits of HHH. HHH is owned by Mrs. Young and a CPA at 50 percent each[37] and has shown healthy "gains" of over $103,000 between June 2018 and May 2019.[38] Based on the support analyzed, Mrs. Young has been more profitable earning 50 percent of the profits of HHH versus incurring 100 percent of the losses of Young & Young prior to the date of harm (see Table 2).

Table 2

| Houses, Heels, and Hammers Sales after November 2017 | | | |
|---|---|---|---|
| Property Address | Sale Date | Gain/Loss | % Profit Margin |
| 3116 Fairfiew | 2/22/2019 | 12,203.73 | 7.0% |
| 2100 Hurstview | 8/6/2019 | 31,975.75 | 19.2% |
| 1026 Westminster | 4/16/2019 | 20,214.13 | 8.3% |
| 404 Bellaire | 9/6/2019 | 20,360.97 | 10.7% |
| 702 E. Parks | 5/31/2019 | 11,187.55 | 6.6% |
| 2408 Cales | 5/23/2019 | 7,776.99 | 4.1% |
| 3201 Eastland | Closes in 7 days | | |
| 729 Edgefield | In process | | |
| 206 Farley | In process | | |
| 403 Richmond | For sale | | |
| Total Gross Profit | | **103,719.12** | **9.3%** |
| Average Gross Profit Per Property | | 17,286.52 | |
| Estimated Profit for Remaining Properties | | 69,146.08 | |
| Estimated Gross Profit for 20193 | | 172,865.2 | |
| Tiffany Young 50% Interest | | **86,432.60** | |

Based on the documents analyzed, Young & Young was not profitable in 2017 prior to admitting herself into Hickory Trail Hospital. Mrs. Young started a new company, HHH, in 2018 that shows to be profitable. In fact, the average profit margin on the six sales transactions prior to her admission was 0.1% compared to the 9.3% average profit margin from the six sales transactions after her discharge.[39]

---

[37] "I'm profitable again now because I have brought in a CPA to partner with me and handle the financial part of my business. But I have given up 50 percent of my profits to do that." Young Deposition, p. 170.
[38] The business activity of HHH are included in the Van Amburgh Report Exhibit 1.1, however, no support has been provided to analyze the activity.  See Appendix I.3 for details.
[39] The six transactions after her discharge were made through the new entity, Houses, Heels, and Hammers, LLC.

*Confidential Information – Attorneys' Eyes Only*

Expert Report of Jeffrey Matthews
January 6, 2020

Table 3



Had Young & Young been damaged as alleged, the lost profits would have been mitigated by the profits of HHH. As such, it is my opinion that Young & Young experienced no lost profits damages.

## Diane and Lynn Creel – Display Graphics, Inc.

Mrs. Creel was voluntarily admitted to Behavioral Hospital of Bellaire ("BHB") on August 8, 2017. Mrs. Creel works as salesperson for Display Graphics, Inc. ("Display Graphics"), which is owned by her and her husband, Mr. Creel. She claims the business suffered due to her admission at BHB as it hindered her confidence and ability to focus which thus affected her work performance.[40]

Mr. Van Amburgh calculates damages for Display Graphics; however, the damages analysis is based on unsupported and arbitrary assumptions that render them unreliable. The errors and omissions include, but are not limited to, the following:

1. Display Graphics' revenues were declining well before Mrs. Young's voluntary admission. For the Twelve Trailing Months ("TTM") August 2015 through July 2016, total revenue for Display Graphics was $1,000,145. For the TTM August 2016 through July 2017, total revenue for Display Graphics was $675,111.  This reflects a decrease in sales of $325,034, or 32.5 percent.[41] Therefore, Design Graphics already began to experience a downturn in revenue due to the events mentioned above (see Table 4 on the next page).

---

[40] Creel Deposition pp. 30 - 31.
[41] Appendix II.1.

*Confidential Information – Attorneys' Eyes Only*

Expert Report of Jeffrey Matthews
January 6, 2020

Table 4



a.  It is important to note that since Mrs. Creel's admission in August 2017, Display
Graphic's revenues have stabilized and have not declined as experienced in years
prior.

Table 5



13

*Confidential Information – Attorneys' Eyes Only*

Expert Report of Jeffrey Matthews
January 6, 2020

2. Further, while Mr. Van Amburgh uses an 18.88 percent profit margin, it is very inconsistent with the data. According to the 2016 and 2017 U.S. Income Tax Return for an S Corporation for Display Graphics ("2016 Display Graphics Tax Return", "2017 Display Graphics Tax Return"), Display Graphics was not profitable at all. The 2016 Display Graphics Tax Return reflects that Display Graphics experienced a loss of $167,678 while the 2017 Display Graphics Tax Return reflected a $35,018 loss.[42] Additionally, the balance sheet included in the 2016 and 2017 tax returns shows that Display Graphics was in a bankruptcy plan and has been experiencing financial issues prior to 2016. The 2016 Display Graphics Tax Return reflects Retained losses of $775,144.[43]

3. Mr. Van Amburgh fails to consider or apportion losses associated with unrelated external events or events subsequent to Mrs. Creel admitting herself into Behavioral Hospital of Bellaire.  For example:

   a. On the document titled Sales – Yearly Sales by Calendar Month, notes are typed on this document showing dates and events including – "Dec. 2016, printer operator dies", "April 2017, 25-year employee was our guy Friday dies".[44]  I see no analysis done to determine the financial impact of these departures. However, these two events may have had a substantial impact on Display Graphics' ability to continue operating at the level they historically achieved, much less grow.

4. Mr. Van Amburgh's calculations contain numerous math and typo errors:

   a. Exhibit 2.1 reflects monthly sales from January 2014 through October 2019. Mr. Van Amburgh attempts to segregate sales for January through July, and then August through December for each year. I assume this is due to Mrs. Creel's August admission. However, his calculation fails for 2015 through 2018. In those four years, the numbers presented in Exhibit 2.1 for January through July only include January through June. Sales in July are included in the subtotals for August through December. This error overstates the percentage decline used in projecting lost

---

[42] D. Creel - DG 2016 1120S Tax Return.pdf (PLTF 028417-028452); D. Creel - DG 2017 1120S Tax Return.pdf (PLTF 028453-028488).
[43] D. Creel - DG 2016 1120S Tax Return.pdf (PLTF 028417-028452).
[44] Sales - Yearly Sales By Calendar Month.pdf (PLTF 017882).

*Confidential Information – Attorneys' Eyes Only*

profits. As such, the lost profits calculation in Exhibit 2.1 is inaccurate and unreliable.

b. Exhibit 2.2 attempts to project revenue for Display Graphics using a regression analysis based on historical sales; however, historical sales for October 2016 is inflated by $100,000, from actual revenues of $42,450.39 to $142,450.39. This inflation in sales discredits the results achieved by his regression analysis and therefore renders his overall conclusion presented in Exhibit 2.2 inaccurate and unreliable. Additionally, the regression analysis in Exhibit 2.2 is flawed as the higher monthly sales, or seasonality of the business, moves from November through January historically, to July through August in the 2019 projection.

Based on the documents analyzed and as discussed above, Display Graphics experienced a significant downturn in revenue and was not profitable prior to Mrs. Creel admitting herself into BHB. The historic financial performance of Display Graphics shows that the company experienced net loss and was in a bankruptcy plan due to financial issues prior to 2016. Further, if her business declined after her admission, there has been no analysis to apportion the damages due to the loss of two key employees of Display Graphics.  As such, it is my opinion that Display Graphics experienced no lost profits damages relating to the alleged harm.

**Madison Hough**

Ms. Hough was a freshman at TWU when she was admitted into Mayhill in March of 2017.[45]  She claims that upon her release, and as a result of trauma she sustained in Mayhill she was no longer able to focus and concentrate in college. She ultimately dropped out of TWU and moved to Galveston, Texas.[46]

Mr. Van Amburgh calculates damages for Ms. Hough assuming (i) she would have graduated college in 4 years, (ii) earned a starting wage far in excess of national average, and (iii) Ms. Hough

---

[45] Hough Deposition, p. 126.
[46] Hough Deposition, p. 220.

*Confidential Information – Attorneys' Eyes Only*

Expert Report of Jeffrey Matthews
January 6, 2020

is now forever unemployable. This very logic ignores reality, in that Ms. Hough reenrolled in TWU

January 2019 and was able to finish the semester with a higher GPA than before.[47,48]

Table 6



He also fails to adjust for the graduation rate, and assumes Ms. Hough will graduate from TWU,

despite the fact that the 4-year graduation rate for TWU is only 22 percent.[49]   Mr. Van Amburgh's

methodology includes the following errors and faulty assumptions:

1. The starting income used in Mr. Van Amburgh's report of $60,996 for a 4-year College
   Degree graduate is highly speculative. He seems to use Bureau of Labor Statistics data that
   is overly general and not applicable to Ms. Hough's regional location and college degree.[50]
   It also ignores the actual median starting salary of TWU's alumni of $46,300.[51,52]

2. The annual wage increases are baseless and unsupported.

---

[47] Hough Deposition, p. 122.
[48] PLTF 027373.
[49] https://www.usnews.com/best-colleges/texas-womans-university-3646, accessed on December 26, 2019.
[50] https://www.bls.gov/careeroutlook/2018/data-on-display/education-pays.htm, accessed on December 26, 2019.
[51] Alumni is defined as three years of postgraduation work experience and whose highest degree is a bachelor's. I have
seen no evidence to suggest that Ms. Hough has three years of postgraduation work experience.
[52] https://www.usnews.com/best-colleges/texas-womans-university-3646, accessed on December 26, 2019.

*Confidential Information – Attorneys' Eyes Only*

Expert Report of Jeffrey Matthews
January 6, 2020

3. The gender pay gap and work-life expectancy is ignored. [53]

4. Lastly, Mr. Van Amburgh incorrectly calculates the line item "Net Income Differential, Net of Education Costs" for years 1, 2, and 3. Mr. Van Amburgh includes the education costs (tuition, room, board, and fees) but fails to include the Income Differential amounts of $40,248, $41,053, and $41,874. This error affects the Cumulative Net Income Differential throughout the projection period that Mr. Van Amburgh relies on when deriving its damage amount for Ms. Hough and overstates his computed damages by $123,175.

Ms. Hough also claims out-of-pocket expenses for medical bills totaling $9,840. Per review of the invoices, Ms. Hough incurred these expenses *prior* to her admission at Mayhill on May 25, 2017, such as Denton FD Emergency Medical Services, Medical City Denton and Sacred Cross[54] - all of which are dated March 24, 2017.

Based on the documents analyzed and the discussion above, it is my opinion that Ms. Hough did not experience any damages or lost wages from the alleged harm.

## VI.    OTHER DAMAGES

In addition to economic damages presented in Mr. Van Amburgh's report, other Plaintiffs not mentioned above allege that they were injured by the action of the Defendants for injury to property or business. Plaintiffs seek monetary recovery for damages related medical charges, taking of property, and lost earning capacity.[55]

These alleged damages lack support, methodology and a causal link to the Plaintiffs' alleged harm. I have seen no evidence to suggest that the Plaintiffs were involuntarily admitted to the Hospital Defendants nor evidence of damages attributable to the claims. The out-of-pocket expenses such as medical bills and ambulance bills would have been incurred by the Plaintiffs whether they admit

---

[53] In 2018, median annual earnings in the U.S. for men working full time, year-round were $55,291, compared to just $45,097 for women, according to the most recent census data. That means women were paid just 82% percent of men's earnings - a gap of 18 percent (www.aauw.org/fairpay, accessed on December 31, 2019).
[54] Hough Deposition, p. 79.
[55] The Complaint, p. 64, par. 317.

*Confidential Information – Attorneys' Eyes Only*

Expert Report of Jeffrey Matthews
January 6, 2020

themselves to the Hospital Defendants or other hospitals. Further, I have not been presented with an expert opinion as it relates to these alleged damages. As of the date of this report, I do not have an opinion on these alleged damages with the exception of Ms. Stokes.  However, I reserve the right to revise this report if additional support or expert opinions are provided or made available.

## A.  <u>Sandra Stokes</u>

Sandra Stokes ("Ms. Stokes") was admitted to Mayhill from May 14, 2017, through May 15, 2017. She claimed loss of income for April 2017 through January 2019 totaling $88,800. Ms. Stokes also alleged loss of earning capacity totaling $5,180,000 as she claims she is unable to work due to suffering a fall at Mayhill and developing a seizure disorder. As of the date of this report, I have seen no support to substantiate or support these amounts.

However, documents show that Ms. Stokes was diagnosed with a concussion due to a mirror hitting her head in April 2017, prior to her admission into Mayhill.[56] As a result of this concussion, Ms. Stokes was on a leave of absence and was not scheduled to return to work until August 1, 2017.[57] I have seen no analysis to apportion damages between Ms. Stokes' April injury, and the fall she claims to have sustained in Mayhill.

While Ms. Stokes seeks damages and claims she is no longer able to work, her resume shows that she is currently employed as a business consultant for Matrix Analytics and has been February 2018.[58] Further, her employer changed its business model and moved Ms. Stokes from a full-time employee to a contractor starting December 1, 2017 due to the downturn in business.[59]  Nothing in the record suggests this change of employment status pertained to Ms. Stokes' falls.

Based on the analysis of documents related to Ms. Stokes' alleged damages, it is my opinion that the alleged damages are flawed, unreasonable and unsubstantiated.

---

[56] PLTF 035464.
[57] Email dated July 17, 2017 from Sandra Stokes indicating she has medical clearance to return to work (PLTF 034580-034582).
[58] Sandra Stokes Resume (PLTF 005633-005635).
[59] Email from Sandra Stokes' employer indicating her work position will be changed to a contractor position (PLTF 034813-034814).

*Confidential Information – Attorneys' Eyes Only*

Expert Report of Jeffrey Matthews
January 6, 2020

## VII.    DAMAGES SUMMARY AND OPINION

Based on the analysis of documents available in this matter and the discussion above, it is my opinion that Young & Young, Display Graphics, Ms. Hough and Ms. Stokes did not sustain financial damages from their respective stays in the Defendants' facility.

Since discovery is ongoing, it is likely that additional information will be available for my analysis and consideration. I reserve the right to further supplement or amend this report based on additional relevant information that I receive, including, but not limited to, additional documents produced in this matter, depositions, testimony, admissions, or other relevant evidence.

Jeffrey G. Matthews, CPA, CFE

*Confidential Information – Attorneys' Eyes Only*

# Exhibit A



# Jeffrey G. Matthews
## CPA, CFE

### Partner

T: +1 214 403 7004
E: jmatthews@stoneturn.com

**Dallas**
100 Crescent Court
Suite 700
Dallas, TX 75201

Jeffrey Matthews, a Partner with StoneTurn, brings over 20 years of experience in financial investigations, forensic accounting and litigation support. He has served as a financial expert in corruption and white-collar criminal cases, as well as multi-jurisdictional business disputes, testifying in multiple civil and criminal matters at the state and federal levels. His clients include the nation's top law firms, Fortune 100 legal departments and government investigative agencies.

Jeff recently led "the largest domestic public corruption case in history". The investigation involved more than $4 million in bribes and kickbacks and resulted in three individuals being sentenced to prison and ordered to repay $125 million to the government.

Jeff served as the expert and provided trial testimony in a unanimous, $23.6 million jury verdict on behalf of a cattle broker in one of the largest cattle fraud cases in Texas history. The matter has been named to the "*Texas Lawyer* Hall of Fame Verdicts" list and is featured in the publications magazine, that chronicles the highest dollar verdicts in the State of Texas.

### Education

Bachelor of Business Administration, University of Louisiana at Monroe

### Practice Areas

Litigation Advisory

Business Disputes

Expert Testimony

Investigations

Anti-Corruption

Anti-Money Laundering

Financial Fraud

Compliance & Monitoring

Valuation Advisory

StoneTurn.com



# Jeffrey G. Matthews, CPA, CFE                                    Partner

An experienced FINRA Arbitrator, Jeffrey was designated in a matter involving two of the world's largest financial institutions in which investors alleged theft, inflated asset values, unsuitable investments and many other fraudulent actions. He has also calculated damages resulting from breach of contract, breach of fiduciary duty, diminution of value and misappropriation of trade secrets, and served as a court-appointed accountant in federal Bankruptcy court.

Jeffrey was instrumental in developing proprietary anti-fraud and compliance tools at two large public accounting firms and has developed and implemented numerous risk management programs for companies across a range of industries. He brings significant expertise in issues related to the Lanham Act, Sarbanes-Oxley, the False Claims Act and the Foreign Corrupt Practices Act (FCPA).

Prior to joining StoneTurn, Jeffrey led the Forensic and Litigation practice of a Texas-based, nationally-oriented accounting firm. He currently teaches at the University of Texas at Arlington and serves as the executive creator and producer of *The Forensic Forum,* a web-based CPE/CLE production that airs quarterly across the globe. Jeff's autobiography and accounting textbook entitled, "Holding Accountants Accountable," was published by Wiley in 2019. This detailed review of forensic accountancy contains hard-won practical advice on how auditors can identify and prevent unethical behavior.

Jeffrey is a Certified Fraud Examiner (CFE) and a Certified Public Accountant (CPA) in the state of Texas.

## PREVIOUS EXPERIENCE

- Weaver and Tidwell, LLP (2017—2019)
- Charles River Associates (2011—2017)
- LECG (2009—2011)
- Grant Thornton (2004—2009)

## PROFESSIONAL AFFILIATIONS / OTHER

- Certified Public Accountant in Texas (CPA)
- Member, Texas CPA Society
- Certified Fraud Examiner (CFE)
- Past President, Board Member and National Lecturer; current member, Association of Certified Fraud Examiners (ACFE)

## AWARDS

- 2013 Certified Fraud Examiner of the Year, a prestigious honor awarded annually to one of more than 65,000 members of the Association of Certified Fraud Examiners (ACFE)
- Four-time national All-Star speaker, voted on by members of the Institute of Internal Auditors (IIA)



**Jeffrey G. Matthews, CPA, CFE**                                                    **Partner**

## PRESENTATIONS AND PUBLICATIONS

- "Planning and Conducting a Formal Fraud Examination: Hear from the Experts," *Fraud Magazine*, November/December 2019.
- *Holding Accountants Accountable: How Professional Standards Can Lead to Personal Liability*, Wiley, October 2019.
- "Ensuring Accurate Royalty Determination and Payment." (Presented at Professional Development Institute annual conferences)
- "Storm Readiness - How to be a First Responder to Fraud Risks during an Economic Storm." (AICPA annual National Oil and Gas Conference)
- "Fraud Prevention/Detection for Royalty Owners - How to Ensure Accurate Royalty Determination and Payout." (Presented to various internal and external focus groups)
- "Investment Schemes; a Fraud and Forensic Refresher." (Presented at National Association of Petroleum Engineers conference)
- "Subprime Crisis and Strategies – A Forensic Accountant's Perspective." (Provided to various sections of the American Bar Association)
- "False Claims Act and Qui Tam Actions – What Small Companies Need to Know." (Presented to various organizations, including the Business Professionals Network, Institute of Internal Auditors, and Association of Certified Fraud Examiners)
- "Occupational Fraud and Abuse; a Qui Tam primer." (Presented to Texas Chapter of CPAs)
- "Advanced Interviewing Techniques." (SEC, FINRA, TSSB Annual Southwest Securities Conference)
- "Hitting Pay Dirt: Drilling Down to Discover Litigation Risks during joint venture and M&A opportunities." (Presented at the AICPA National Conference)
- "Ponzi Schemes and Preventive Controls." (ABA White Collar Crime Seminar Roundtable participant)
- "War of the Worlds; When Attorneys and Auditors Collide," *Thompson Reuters Westlaw Journal*,
- "Cooperation in Financial Fraud Investigations - What are the benefits?," *XPRT Forum Magazine*,
- "Treading into International Waters; What fraud risks lurk beneath the surface of your foreign affiliates?" (Presented to Institute of Internal Auditors)
- "Calculating Commercial Damages: Case theories and strategies." (Presented to various law firms in the Dallas/Fort Worth area)
- "Storm Troopers; Becoming a First Responder to Fraud Risks during an Economic Storm." (Presented to AICPA, IIA and ACFE)
- "Time for Kickoff; Readying your team to face the competition." (Created and moderated an extensive panel discussion for the ACFE covering the FCPA, Ponzi schemes, intellectual property disputes and various international scandals)
- "Ensuring Integrity of Financial Reporting – the Role of Outside Counsel." (Presented to several large law firms in the Dallas)
- "Developing Sound Anti-Fraud Controls – Sarbanes Oxley and Fraud." (Presented to various organizations throughout the United States)



**Jeffrey G. Matthews, CPA, CFE**                                                    **Partner**

---

## SELECT PROFESSIONAL EXPERIENCE

### Commercial Damages

- Served as the expert in a complex royalty dispute between two large manufacturing companies. Reviewed thousands of transactions based on statistical methodology to calculate the appropriate royalty calculations, and testified in state court.
- Provided an expert report and calculated damages on behalf of one of the world's largest energy companies in a wrongful death matter.
- Directed a team hired to calculate damages on behalf of an international bank in which the government, and others, sought to recoup billions in losses stemming from mortgage-backed securities. Valued the underlying securities and recreated the "waterfall" from the underlying mortgage payments, as well as constructed the damages models. Provided expert testimony in a dispute between two large mortgage brokers involving the alleged raid of key employees and related branches. Forecasted revenues and net income and created a damage model considering a number of different variables.
- Calculated a business interruption loss for an international resort property that was impacted by a hurricane. Forecasted revenues after computing historical occupancy rates, seasonal trends and restaurant traffic, as well compiled industry-wide growth percentages. Further, calculated the extra expenses, as well as those saved as a result of the damage.
- Provided testimony in a False Claims matter involving an international manufacturing company. Analyzed the alleged claims, and rebutted the opposing expert's damage calculation. Built a proprietary cost model to depict various cost accounting scenarios.
- Provided testimony in an antitrust, Lanham Act mater, between two national telecommunications companies. involving Generally Accepted Accounting Principles (GAAP), solvency, going concern principles, and related disclosure requirements. Provided rebuttal testimony regarding the opposing expert's damage calculations.
- Managed and led a cross-disciplined team assisting an international insurance company in the calculation of damages arising from a re-insurance treaty dispute. The case involved manipulating large quantities of data and re-creating a complex, proprietary insurance rating system. The system was validated through extensive statistical sampling. The case also evolved into a multifaceted bankruptcy fraud investigation that required expert testimony.
- Designated as an arbitrator in a manner involving two of the world's largest financial institutions, in which investors alleged theft, inflated asset values, unsuitable investments and many other fraudulent actions.
- Directed a business interruption matter involving a group of technology companies that experienced extensive damage. Calculated lost profits, extra expenses, saved expenses and participated in the mediation.
- Directed an international effort that included interviews, electronic discovery, background investigations and damage calculations for a publicly-traded company that was accused of paying a major competitor's long-term employee(s) for trade secrets and diverting revenue.
- Admitted as an expert in a dispute involving the insurance investments offered by one of the world's leading financial management and advisory companies. Conducted extensive research and performed various analyses



<span style="color:teal">**Jeffrey G. Matthews, CPA, CFE**</span>                                                       <span style="color:teal">**Partner**</span>

---

to determine the appropriate rates of return and the impact of market conditions had on the investment portfolio. Participated in the FINRA Arbitration.

- Designated as the expert in a breach of contract dispute involving a technology company, performing a valuation and lost profit analysis based on extensive industry analysis and forecasting. Provided two depositions in the matter.
- Served as the expert for a telecommunications company and their higher educational affiliate in a breach of contract and wrongful termination matter. Served as an expert and provided extensive reports in the matter that included unique damage calculations for more than 40 individuals. The methodology ranged from wrongful death to breach of contract. The client prevailed and the case was largely dismissed in Summary Judgment.
- Designated as the expert and provided testimony in an arbitration involving a well-known national retailer. Conducted extensive industry research, projected financial results, calculated reasonable royalties owed relating to a breach of contract and salaries due under wrongful termination, as well as opined on certain professional responsibilities of a CPA.
- Served as the expert in a pre-litigation matter involving an employment dispute. Calculated damages resulting from alleged corporate misbehavior and a wrongful termination.
- Managed the Dallas team in the antitrust and intellectual property suit involving a Fortune 500 corporation with international presence in the telecommunications industry, which alleged that a number of its employees misappropriated trade secrets, as well as tortuous interference by a competitor.
- Served as an expert in a dispute involving an international retail company and a telecommunications company. Calculated damages arising from breach of the agreements, unjust enrichment, misappropriation of intellectual property, and breach of fiduciary duty. Analyzed the opposing party's damage calculation. Testified in federal court.

## Investigations and Forensic Accounting

- Established an accounting system for a local petroleum company. During the assignment, reconciled the company's production program joint interest billing statements to the leases signed by the lease owners and investors. As such, the team determined the proper production allocation for each program, calculated the corresponding royalty and separated the funds that had been comingled between the programs.
- Served as the court-appointed accountant, designated as an expert and provided testimony in hearings and the trial in state and Federal Bankruptcy court on a real estate investment matter involving 16 investment partnerships and 5 management companies. Led a team that recreated the books and records, as well as identified inappropriate use of partnership funds, breaches of the offering memorandums, and calculated damages to the investors.
- Served as an expert for a clean energy company that was seeking to recover losses under a unique and proprietary insurance policy. Delivered a report addressing various accounting concepts that included going concerns, contingencies, accruals, asset values, and materiality. Testified at arbitration.



**Jeffrey G. Matthews, CPA, CFE**                                                    **Partner**

- Served as the expert on behalf of a group of investors in filed suit against an oil and gas producer. Allegations included co-mingling of assets, unauthorized expenses and inflated production costs. Authored an expert report and attended the adversaries' depositions. The matter promptly settled.
- After a publicly-traded manufacturing company experienced significant reconciliation issues and allegations surrounding its financial reporting process, directed an effort in 13 countries, consisting of data mining and manipulation to identify anomalies, tracing the sources and uses of cash, identifying internal control gaps, balancing the accounts, and investigating various FCPA allegations. Also led the effort relating to the company's restatement of four years' financial statements and their compliance with Sarbanes-Oxley.
- Directed an investigation into revenue recognition issues involving multiple element arrangements and the alleged manipulation of accounting records for an international software company. The findings resulted in the entity re-auditing and restating its financial statements for the previous four years.
- Served as the court-appointed independent accountant in a post-acquisition dispute involving two physician practices and the related pharmacies. Reconstructed the books and records on both a GAAP and cash basis, and provided the recommended earn-out payments. The parties successfully mediated the dispute.
- Performed an investigation into allegations that the president and vice president of a major electronics manufacturer conspired to manipulate accounting records and override internal policies and controls in an effort to reduce the company's value allowing a group of investors, including themselves, to obtain ownership. The investigation involved the preservation and review of the individual's hard drives which uncovered that the allegations were merited and this resulted in a change of corporate officers.
- Served as the expert in an investment dispute brought forth by the Securities Exchange Commission alleging a misappropriation of partnership funds, inadequate financial disclosures, and elements of a Ponzi scheme. Traced the sources and uses of cash for more than 30 investment vehicles and several public companies, analyzed certain disclosures and financial transactions and provided testimony.
- Directed a team through a large due diligence assignment involving a national lending institution making a sizeable investment in an insurance conglomerate. The complex corporate structure included numerous managing general agencies, reinsurance companies, and offshore captive associates. The team analyzed the agreements, re-calculated the case reserves, and deferred acquisition costs and reconciled hundreds of intercompany transactions.
- Served as the expert and provided testimony in a dispute involving the sale of certain real estate and oil producing properties by a Trust. Assessed damages, opined and identified the breach of fiduciary duties, discussed wrongful termination, and highlighted Generally Accepted Accounting Principles and various IRS regulations.
- An international semiconductor manufacturer purchased a large carve-out from a Fortune 500 company. A dispute arose over the accounting treatment for material balance sheet and income statement line items which had an impact on the earn-out provisions. Testified as an expert in Federal court and calculated the provisions, as well as addressed the appropriate treatment under GAAP and IRS regulations.
- Served as the expert in complex litigation matter involving a Trust's sale of certain assets. Mr. Matthews provided testimony regarding GAAP, IRS regulations, and damages suffered by the Trust caused by the potential breaches of fiduciary duties by various parties.



**Jeffrey G. Matthews, CPA, CFE**                                      **Partner**

- After a high-ranking official at a publicly traded company turned "whistleblower" and identified a large accounting fraud, directed the engagement in which the team calculated damages stemming from wrongful termination and provided a report suitable for the potential Qui Tam claim.
- Served as the outsourced Forensic Accountant for the world's leading international insurance company, managing dozens of assignments spanning many industries.

## Consulting Expert and Compliance

- Served as the consulting expert on two large, separate litigation matters involving medical centers involving breach of contract, tortious interference, and various claims. Mr. Matthews created alternative damage models and the cases settled.
- Consulted as an expert for two global financial institutions to implement their compliance, risk, and audit functions with respect to financial industry regulations. These assignments incorporated numerous federal and state regulations such as the CFPB, BSA, FCRA, and UDAAP, and also included a focus on anti-money laundering internal controls and precise work plans.
- Assisted two of the country's largest tribal entities in performing compliance risk assessment over their lending operations, which included drafting their compliance program manuals, policies and procedures, as well performing due diligence on their high-risk third-party vendors.





# Jeffrey G. Matthews
**CPA, CFE**

Partner

T: 214.403.7004
E: jmatthews@stoneturn.com

**Dallas**
100 Crescent Court
Suite 700
Dallas, TX 75201

## TESTIMONIAL EXPERIENCE

**2019** — **North DFW Urology Associates v Texas General Hospital and TGH Imaging I and II, et al—**

Deposition: Alleged breach of contract, valuation of damages, including lost revenue, terminal value of a business entity and other expenses. *(scheduled)*

TX State Court – Tarrant County

**2019** — **South Alamo Medical Group PA v Dr. Nora Olvera and Garza Medical Group and South Alamo PA**

Deposition: Alleged breach of contract, valuation of damages, including lost revenue, terminal value of a business entity and other expenses. *(scheduled)*

TX State Court – Bexar County

**2019** — **Risk Assurance Partners LLC v Warrantech Corporation**

Arbitration:  Accounting dispute; breach of fiduciary duty, breach of contact.

TX State Court – Dallas County

### Education

Bachelor of Business Administration, University of Louisiana at Monroe

### Practice Areas

Litigation Advisory

    Business Disputes

    Expert Testimony

Investigations

    Anti-Corruption

    Anti-Money Laundering

    Financial Fraud

Compliance & Monitoring

Valuation Advisory

StoneTurn.com



**Jeffrey G. Matthews, CPA, CFE**          **Partner**

---

**2019**  **Regents Holding, Inc. vs Rick Morgan and John Matthews**

Trial Testimony – diminution of value; tortious interference with a business contract *(scheduled)*

US Bankruptcy Court – Northern District of TX

---

**2019**  **Borden Exploration & Development vs. BBL Operating Company LLC, BBL Oil, Sean Roger, Kipp Whitman, Beth Whitman, Christopher Whitman, Oil Patch Kids LLC and Dash Drilling Products**

Deposition: Breach of contract, fraud, damage calculation, generally accepted accounting standards

TX State Court – Dallas County

Case No DC-17-09743

---

**2019**  **Paul F Chebib, Individually and/or Deriviately on behalf of TAO-LBBH, LP vs. TAO Development Group, LLC**

Deposition: Calculation of damages, cost modeling, market analysis and rebuttal of opposing expert.

TX State Court – Lubbock County

Cause No 2017-525, 455

---

**2018**  **Windmill Investments, LLC vs. Redhill Realty Investors, LP. et al.**

Deposition:  Fraud, damages, valuation of investment opportunities and market analysis

U.S. District Court for the Western District of Texas

5:16-CV-00345-OLG



**Jeffrey G. Matthews, CPA, CFE**                                                   **Partner**

---

**2017** | James Barnes, Individually and as Co-Trustee of the Barnes Revocable Trust; Terry Barnes, Individually and as Co-Trustee of the Barnes Revocable Trust; BBA CORP. d/b/a First Class Books Inc; and Gorilla Textbooks Inc. v. Sam Carter; Second Class Books, Inc. d/b/a High Country Books; and Jeremy Cucinella

Mediation:  Led the mediation involving theft of trade secrets, diminution of value in business entities, misappropriation of corporate assets and computer fraud.

United States District Court, Eastern District of Arkansas, Western Division

4:17-cv-00132-BRW

---

**2017** | Midwestern Cattle Marketing, LLC v Lyon Farms, et al.

Trial testimony: Fraud, damages, valuation of an entity using various, standard methodologies.

TX State Court – Jack County

---

**2016** | Everett Financial, Inc. d/b/a Supreme Lending v. Primary Residential Mortgage, Inc. Barry Jones, James Durham and Shannon Fortner

Deposition: Calculation of damages, cost modeling and rebuttal of opposing expert.

US District Court – Northern District of TX

Case No. 3-14-CV-01028-D

---

**2015** | Joshua Harman, on behalf of the United States of America, v. Trinity Industries, Inc., and Trinity Highway Products, LLC

Deposition and  Trial testimony: Investigation of false claims allegations, damage calculations, cost modeling and rebuttal of opposing expert.

US District Court – Eastern District of TX

Case No. 2:12-cv-00089-JRG

---



**Jeffrey G. Matthews, CPA, CFE**                                          **Partner**

---

**2015**   **Encore Services LLC v The Chippewa Cree Tribe, Plain Green LLC and First American Capital Resources LLC**

Deposition and Arbitration testimony: Breach of contract, damages, generally accepted accounting standards and conflicts of interest.

NV State Court

Case No. 79-148-Y-000118-13

---

**2014**   **Tristar Investors Inc v American Tower, et al.**

Depositions:  Various allegations, including anti-trust and fraud.  Damage calculations involved significant interpretations of solvency, generally accepted accounting principles, forecasts, projections and proprietary models.

US District Court – Northern District of TX

Case No. 3:12-CV-499

---

**2014**   **Rowdec, LLC D/B/A Westlake Associates v. Hancock Fabrics Inc.**

Deposition and Arbitration testimony: Breach of contract; wrongful termination, unjust enrichment, professional responsibilities of a CPA. Calculate reasonable royalties for distributions and sales.

TX State Court – Dallas County

Case No. 71 145 Y 00496 11

---

**2013**   **Securities and Exchange Commission vs David Ronald Allen, et al**

Deposition: Alleged breach of fiduciary duties, inappropriate use of investor funds, violation of Private Placement Memorandums and partnership agreements.

US District Court – Northern District

Case No. 3:11-CV-00882-O

---



**Jeffrey G. Matthews, CPA, CFE**                                                    **Partner**

| | | |
|---|---|---|
| **2012** | **In re Fossil Creek Group, Ltd, et al;  Greg Sederis, Bob Tomes, Tom Rick, John Maurillo, Larry Carter, Jim Bortmess, et al. v. K.A. Whitman, Mehul Patel, GHFT Corp et al v. Bruce Basden, Larry Berk et al.** | Hearing and Trial Testimony:  Alleged breach of fiduciary duties, inappropriate use of investor funds, violation of Private Placement Memorandums and partnership agreements. Recreation of the books and records. |
| | | US Bankruptcy Court – Northern District of TX; |
| | | TX State Court – Tarrant County; |
| | | (jointly administered) |
| | | *Case No. 11-40669-RFN-11* |
| **2011** | **Miro Vranac Jr v Legacy Investments, et al** | Deposition:  Alleged breach of fiduciary duties, as well as violations of generally accepted accounting principles, IRS regulations, professional standards and corporate governance. |
| | | TX State Court – Dallas County |
| | | Case No. 08-4692-A |
| **2011** | **David J Borland v. Marvell Semiconductor, Inc.** | Trial testimony: Breach of contract, Generally Accepted Accounting Principles, IRS regulations, importance of management in the financial reporting process. |
| | | US Federal District Court – Western District of TX |
| | | Case No. 1:09-CV-00364-LY |
| **2011** | **John Allen and Dennis Workman v. MobileTech Solutions, Inc. and Trimble Navigation Limited** | Trial testimony:  post-acquisition dispute, breach of contract and fraud. |
| | | TX State Court – Dallas County |
| | | Case No. 08-04024 |



## Jeffrey G. Matthews, CPA, CFE                                    Partner

| | | |
|---|---|---|
| **2011** | **Corexchange, Inc. v. Viceroy Partners, Viceroy Development, James Johnson & Associates Inc, Stephen J Rogers, and Peleton Real Estate Partners, LLC** | Depositions: Alleged breach of contract, valuation of damages, including lost revenue, terminal value of a business entity and other expenses.<br><br>TX State Court – Dallas County<br><br>Case No. CC-11-07331-E |
| **2008** | **GMA Accessories, Inc. v. ePartners, Inc.** | Arbitration:  Breach of contract, unjust enrichment, valuation of damages regarding patent infringement involving software products.<br><br>NY State Court – NY County |
| **2008** | **Union Standard Lloyds v American Express Travel Related Services Company, Inc. and Sheri Collins** | Arbitration:  Accounting dispute;  breach of fiduciary duty, breach of contact.<br><br>TX State Court – Dallas County |
| **2002** | **Amco Insurance Agencies Inc., Wells Fargo Bank of TX, v. Sommers Trust** | Deposition and trial testimony;  Fraud, breach of fiduciary duty;  bankruptcy abuse prevention and consumer protection; substantive consolidation.<br><br>US Bankruptcy Court – Southern District of TX<br><br>Adversary Proceeding No. 02-03135 |
| **2008** | **Dresser, Inc v. Technical Sales Inc** | Arbitration:  Breach of contract;  fraud, unjust enrichment.  Calculate reasonable royalties for distributions and sales.<br><br>US Federal District Court – 10th Circuit Court, Albuquerque<br><br>*Case No. 1:05-CV-00556-ACT-DJS* |



**Jeffrey G. Matthews, CPA, CFE**                                                                 **Partner**

---

**2013**   **Jerry W Slusser and BCL-Capital Funding LLC v Wesco Insurance Company**

Arbitration testimony:  Breach of contract, fraud, violation of generally accepted accounting principles, financial position and ability to repay,  and insurance underwriting guidelines.

IL State Court – Cook County

Case No. 51 195 Y 00248 13



# Exhibit B

Barbara Meier et al. v. UHS of Delaware, Inc. et al.                                                    Exhibit B
Documents Reviewed

| No. | File Description | Bates Range |
|---|---|---|
| 1 | Attorney Fees Records [PLTF 028243-028365] | PLTF 028243-028365 |
| 2 | [PLTF 018606-018607] 2018 0130 BHB Demand Bill | PLTF 018606-018607 |
| 3 | [PLTF 018610-018611] 2018 1009 Contemporary Med Assoc Statement | PLTF 018610-018611 |
| 4 | [PLTF 018650-018655] BHB Statements | PLTF 018650-018655 |
| 5 | [PLTF 018700] Liberty Dayton Reg Med Balance Overdue | PLTF 018700 |
| 6 | [PLTF 11898-11900] BHB Billing | PLTF 11898-11900 |
| 7 | [PLTF 12193-12200] Display Graphics Sales | PLTF 12193-12200 |
| 8 | [PLTF 017882] Sales - Yearly Sales By Calendar Month | PLTF 017882 |
| 9 | [PLTF 017883] Out of Pocket Costs | PLTF 017883 |
| 10 | [PLTF 028220] Display Graphics Revenue 2015-2019 | PLTF 028220 |
| 11 | [PLTF 028409] Creel - Display Graphics Revenue Chart 2015-2019 Loss on Revenue Basis | PLTF 028409 |
| 12 | [PLTF 028410] Creel - Out of Pocket Costs - updated | PLTF 028410 |
| 13 | [PLTF 028411-028412] Creel - Robert Fritz Attorney Time Records | PLTF 028411-028412 |
| 14 | [PLTF 028413-028414] D. Creel - Balance Sheet 10-31-19 | PLTF 028413-028414 |
| 15 | [PLTF 028415-028416] D. Creel - Balance Sheet 2018 | PLTF 028415-028416 |
| 16 | [PLTF 028417-028452] D. Creel - DG 2016 1120S Tax Return | PLTF 028417-028452 |
| 17 | [PLTF 028453-028488] D. Creel - DG 2017 1120S Tax Return | PLTF 028453-028488 |
| 18 | [PLTF 028489] D. Creel - Sales - Yearly Sales By Calendar Month | PLTF 028489 |
| 19 | [PLTF 028490-028494] D. Creel - W2s 2014 - 2018 | PLTF 028490-028494 |
| 20 | [PLTF 028495-028496] P&L 2019 thru 10-31-19 | PLTF 028495-028496 |
| 21 | [PLTF 003368-003370] Govinda - Bastrop County - Billing | PLTF 003368-003370 |
| 22 | [PLTF 027227] 2018 1016 Comunity Radiology Associates Bill [G. Hough] | PLTF 027227 |
| 23 | [PLTF 12517-12520] Millwood Billing | PLTF 12517-12520 |
| 24 | [PLTF 032206-032211] J. Green Economic Loss Documents | PLTF 032206-032211 |
| 25 | [PLTF 032212-032213] Jalisa Green 2019 2018 Checks | PLTF 032212-032213 |
| 26 | [PLTF 032214-032215] Jalisa Green W2 2017 | PLTF 032214-032215 |
| 27 | [PLTF 032216-032217] Jalisa Green W2 2018 | PLTF 032216-032217 |
| 28 | [PLTF 032356-032361] 2018 0503 J. Green Earnings | PLTF 032356-032361 |
| 29 | [PLTF 003412-003445] IA | PLTF 003412-003445 |
| 30 | [PLTF 003446-003447] Jason - Bastrop County (Dr. Gupta) - Billing | PLTF 003446-003447 |
| 31 | [PLTF 002743-002781] Album part 1 | PLTF 002743-002781 |
| 32 | [PLTF 003477-003484] Madison - Bastrop County (Dr. Gupta) Billing | PLTF 003477-003484 |
| 33 | [PLTF 027027] Creditor Ltr to M. Hough | PLTF 027027 |
| 34 | [PLTF 005478-005480] Mayhill Hospital - Billing | PLTF 005478-005480 |
| 35 | [PLTF 005633-005635] Sandra Stokes Resume | PLTF 005633-005635 |
| 36 | [PLTF 005636-005653] 2018 BCBSTX Insurance Info Rec'd from Client | PLTF 005636-005653 |
| 37 | [PLTF 13086-13091] Ketamine Clinic - Billing | PLTF 13086-13091 |
| 38 | [PLTF 028241-028242] Yearly Timeline | PLTF 028241-028242 |
| 39 | [PLTF 001437-001448] Med Exp.Costco Pharmacy | PLTF 001437-001448 |
| 40 | [PLTF 001933-001938] Pharmacy Records | PLTF 001933-001938 |
| 41 | [PLTF 12816] Itemized List for Millwood Expenses | PLTF 12816 |
| 42 | [PLTF 12818-12904] T. Harvey Med Billing | PLTF 12818-12904 |
| 43 | [PLTF 004331] img110B | PLTF 004331 |
| 44 | [PLTF 004332] img111B | PLTF 004332 |
| 45 | [PLTF 004333] img112B | PLTF 004333 |
| 46 | [PLTF 004395-004437] Millwood Hospital Docs | PLTF 004395-004437 |
| 47 | [PLTF 027107] McPherson CareFlite - Billing | PLTF 027107 |
| 48 | [PLTF 032218-032219] McPherson List of Out of Pocket Expenses | PLTF 032218-032219 |
| 49 | [PLTF 032220-032222] McPherson Out of Pocket Addl | PLTF 032220-032222 |
| 50 | 375-4 - Report of Michael Van Amburgh | |
| 51 | 2019-01-10 - Plaintiffs' Initial Disclosures | |
| 52 | 2019-05-28 #183 Ps Third Amended Original Complaint | |
| 53 | UHS Damages | |
| 54 | [PLTF 018789-018790] 811 Whitley | PLTF 018789-018790] |
| 55 | [PLTF 018791-018793] 2201 Pin Oak Lane | PLTF 018791-018793 |
| 56 | [PLTF 018794-018795] 2500 Purselly | PLTF 018794-018795 |
| 57 | [PLTF 018796-018798] 2716 Ryan Place Drive | PLTF 018796-018798 |
| 58 | [PLTF 018799-018801] 4509 Blackstone | PLTF 018799-018801 |

Barbara Meier et al. v. UHS of Delaware, Inc. et al.                                    Exhibit B

Documents Reviewed

| No. | File Description | Bates Range |
|-----|-----------------|-------------|
| 59 | [PLTF 018802-018804] 201 Lansford Drive | PLTF 018802-018804 |
| 60 | Young & Young Investment Group, LLC (Backup Sep 18,2019  01 46 PM) | |
| 61 | [PLTF 018746-018758] Young 2017 Partnership Tax Return | PLTF 018746-018758 |
| 62 | [PLTF 018759-018779] Young 2018 Partnership Tax Return | PLTF 018759-018779 |
| 63 | [PLTF 018780-018786] Young US Archive 2017 ArchiveTaxReturn | PLTF 018780-018786 |
| 64 | 2019-12-20 #430 Plaintiffs' Response to Motion to Strike Van Amburgh with Exhibits | |
| 65 | 2019-12-06 #386 Defendants' Motion to Strike Van Amburgh | |
| 66 | [PLTF 035482-035492] T. Young - CVS Pharmacy Records | PLTF 035482-035492 |
| 67 | [PLTF 032840-032841]  Dr. Offutt - Billing | PLTF 032840-032841 |
| 68 | [PLTF 034816-035430]_Stokes Tax Returns 2014-2018 | PLTF 034816-035430 |
| 69 | [PLTF 034580-034582] 2019 0717 U. Pitre email to S. Stokes | PLTF 034580-034582 |
| 70 | [PLTF 034813-034814] Pitre email to D. Stokes | PLTF 034813-034814 |
| 71 | [PLTF 034751] Crowell PAY | PLTF 034751 |
| 72 | [PLTF 027373] Unofficial TWU Transcript | PLTF 027373 |
| 73 | [PLTF 035461-035464] Sandra Stokes Timeline | PLTF 035461-035464 |
| 74 | 2019-12-27 #440 UHS Hospital Chang Ds Reply ISO Motion to Strike Testimony and Report of Van Am | |
| 75 | 2020-01-03 #451 Plaintiffs' Sur-Reply to Defs' Motion to Strike Van Amburgh | |

# Appendix I

Appendix I.1

**Barbara Meier et al. v. UHS of Delaware et al.**
Young Young Investment Group, LLC
*Projected 2018 and 2019 Net Income/(Loss)*

| | **Actual 2017 Activity Prior to Alleged Date of Harm**[1] |
|---|---|
| Sales | $ 1,449,879 |
| Cost of Sales | 1,448,259 |
| Gross Profit | 1,620 |
| | |
| Operating Expenses[2] | 42,921 |
| Net Income/(Loss) | $ **(41,301)** |

**Notes:**

1) See **Appendix I.2.**

2) Actual operating expenses from Young & Young 2017 U.S. Return of Partnership Income (PLTF 018746 - 018758).

**Barbara Meier et al. v. UHS of Delaware et al.**
Young Young Investment Group, LLC
*Projected 2018 and 2019 Net Income/(Loss)*

| Property Address[1] | Purchase Date | Sale Date | Sales Price | Net Income/(Loss) to Young & Young | % Profit Margin |
|---|---|---|---|---|---|
| 811 Whitley[2] | 6/23/2017 | 12/8/2017 | $   306,541.00 | $   (41,793.08) | -13.6% |
| 4509 Blackstone | 3/3/2017 | 6/6/2017 | 177,500.00 | 10,915.57 | 6.1% |
| 2716 Ryan Place | 4/12/2017 | 7/4/2017 | 350,000.00 | 9,828.61 | 2.8% |
| 201 Lansford | 5/1/2017 | 9/25/2017 | 245,000.00 | 14,293.32 | 5.8% |
| 2500 Purselley | 5/31/2017 | 8/8/2017 | 120,200.00 | 7,271.20 | 6.0% |
| 2201 Pin Oak | 7/28/2017 | 11/9/2017 | 250,638.18 | 1,104.24 | 0.4% |
| | | | $   1,449,879.18 | $   1,619.86 | 0.1% |

**Notes:**

1) The source of the data is from spreadsheets produced per property which indicates the sale price, closing costs, loan repayments, investor payments and net income (PLTF 018789-18804). The underlying documents for the properties were not produced; therefore, these amounts cannot be verified.

2) The 811 Whitley property was sold after the alleged harm, however, the listing price history on Zillow.com shows that the listing price was being reduced on a monthly basis after its initial listing on August 12, 2017. Just prior to the alleged harm date, on or about November 6-8, 2017, the price was dropped to $315,000 on October 31, 2017.  On November 8, 2017, the listing price dropped again to $299,000, which appears to be in line with listing price drops made prior to the alleged harm. (See **Appendix I.2.1.)** As such, the 811 Whitley property was included in the unaffected period on Appendix I.1.

**Barbara Meier et al. v. UHS of Delaware et al.**
Young Young Investment Group, LLC
*Projected 2018 and 2019 Net Income/(Loss)*

| Date | Event | Listing Price | % Change |
|------|-------|--------------:|---------:|
| 11/18/2017 | Pending sale | 299,000 | |
| 11/8/2017 | Price change | 299,000 | *-5.08%* |
| 10/31/2017 | Price change | 315,000 | *-4.26%* |
| 10/2/2017 | Price change | 329,000 | *-4.64%* |
| 9/27/2017 | Price change | 345,000 | *-3.90%* |
| 9/11/2017 | Price change | 359,000 | *-1.62%* |
| 8/12/2017 | Listed for sale | 364,900 | |

**Source**: ^https://www.zillow.com/homes/811-Whitley-Ct-Kennedale,-TX,-76060_rb/70572961_zpid/

**Barbara Meier et al. v. UHS of Delaware et al.**
Young Young Investment Group, LLC
*Projected 2018 and 2019 Net Income/(Loss)*

| Property Address[1] | Purchase Date | Sale Date | Sales Price | Purchase | Improv. Costs | Closing Costs | Total Cost | Gain/Loss |
|---|---|---|---|---|---|---|---|---|
| 3116 Fairfiew | 6/20/2018 | 2/22/2019 | $ 175,000.00 | $ 54,183.98 | $ 91,798.74 | $ 16,813.55 | $ 162,796.27 | $ 12,203.73 |
| 2100 Hurstview | 7/5/2019 | 8/6/2019 | 166,500.00 | 112,703.95 | 21,820.30 | | 134,524.25 | 31,975.75 |
| 1026 Westminster | 1/11/2019 | 4/16/2019 | 244,000.00 | 152,311.79 | 53,426.53 | 18,047.55 | 223,785.87 | 20,214.13 |
| 404 Bellaire | 3/27/2019 | 9/6/2019 | 190,500.00 | 91,293.33 | 72,115.40 | 6,730.30 | 170,139.03 | 20,360.97 |
| 702 E. Parks | 1/14/2019 | 5/31/2019 | 169,999.00 | 56,948.01 | 95,685.59 | 6,177.85 | 158,811.45 | 11,187.55 |
| 2408 Cales | 2/15/2019 | 5/23/2019 | 189,800.00 | 97,695.50 | 70,055.61 | 14,271.90 | 182,023.01 | 7,776.99 |
| 3201 Eastland | 9/7/2018 | Closes in 7 days | | 62,926.93 | 120,245.88 | | | |
| 729 Edgefield | 7/12/2019 | In process | | 215,275.06 | 77,067.18 | | | |
| 206 Farley | 5/17/2019 | In process | | 135,154.17 | 138,245.72 | | | |
| 403 Richmond | 4/29/2019 | For sale | | 145,922.25 | 114,917.37 | | | |

|  |  |
|---|---|
| Total Gross Profit | $ 103,719.12 |
| Average Gross Profit Per Property | $   17,286.52 |
| Estimated Profit for Remaining Properties[2] | $   69,146.08 |
| Estimated Gross Profit for 2019[3] | $ 172,865.20 |
| Tiffany Young 50% Interest | **$   86,432.60** |

**Notes:**

1) The source of this information is Exhibit 1.1 of the Van Amburgh Report. No other documents have been produced to analyze the accuracy of this data. Furthermore, it is assumed that Houses, Heels, and Hammers, LLC ("HHH") is owned by Tiffany Young and John Parker at 50% each.  The positive net income/performance of HHH mitigate the alleged losses claimed by Tiffany Young relating to Young & Young Investment Group, LLC.

2) Average gross profit per property times four properties.

3) Total gross profit plus estimated profit for remaining four properties.

# Appendix II

Barbara Meier et al. v. UHS of Delaware et al.

Display Graphics, Inc.

*Historical Monthly Sales*

| | 2015-2016 | 2016-2017 | 2017-2018 | 2018-2019 |
|---|---|---|---|---|
| August | 49,697 | 90,223 | 41,951 | 35,326 |
| September | 73,481 | 39,877 | 29,731 | 33,483 |
| October | 79,347 | 42,450 | 51,071 | 80,282 |
| November | 222,536 | 36,702 | 22,254 | 54,018 |
| December | 121,348 | 29,584 | 31,574 | 42,648 |
| January | 103,799 | 83,295 | 64,364 | 79,816 |
| February | 73,888 | 49,762 | 46,040 | 21,393 |
| March | 50,152 | 75,529 | 77,117 | 38,718 |
| April | 63,123 | 69,594 | 33,735 | 30,237 |
| May | 55,716 | 49,055 | 49,466 | 43,989 |
| June | 50,397 | 62,085 | 64,798 | 36,933 |
| July | 56,660 | 46,955 | 28,728 | 33,886 |
| **Total Sales** | **1,000,145** | **675,111** | **540,829** | **530,729** |
| | | | | |
| *% Decrease* | | *-32.5%* | *-19.9%* | *-1.9%* |

**Source:** Display Graphics, Inc. - Sales - Yearly Sales by Calendar Month (PLTF 017882)