# United States District Court

## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| BARBARA MEIER, *et al.* | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-00615 |
| | § | Judge Mazzant |
| UHS OF DELAWARE, INC., *et al.* | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are seven motions to strike various expert witnesses filed by both parties (Dkt. #383; Dkt. #384; Dkt. #386; Dkt. #392; Dkt. #393; Dkt. #434; Dkt. #482). Having considered the motions and the relevant pleadings, the Court finds that four motions should be granted in part and denied in part (Dkt. #383; Dkt. #392; Dkt. #393; Dkt. #434) and the remaining three motions should be denied (Dkt. #384; Dkt. #386; Dkt. #482).

## BACKGROUND

On August 1, 2018, Plaintiff Meier filed her First Amended Petition in the 158th Judicial District Court of Denton County, Texas (Dkt. #1 ¶ 3). On August 27, 2018, Defendant UHS of Delaware, Inc. removed the case to this Court (Dkt. #1).

On October 1, 2018, Plaintiff Meier filed her First Amended Complaint in this Court, adding Plaintiffs Madison Hough, Jason Hough, Govinda Hough, Crowell, Harvey, McPherson, Stokes, and Young (Dkt. #11 ¶ 1). Plaintiff Meier also added as Defendants: Universal Health Services, Inc.; Dr. Sabahat Faheem; Kenneth Chad Ellis; Millwood Hospital LP; Dr. Sejal Mehta; Dr. Gary Malone; Alan B. Miller; Universal Physicians, P.A.; Dr. Says LLC; MD Reliance, Inc.; Office Winsome, LLC; Dr. Yupo Jesse Chang; Yung Husan Yao; Dr. Quingguo Tao; Dr. Harmanpreet Buttar; Behavioral Health Management, LLC; Dr. Jamal Rafique; Hickory Trail

Hospital, LP; Behavioral Health Connections, Inc.; Jan Arnett; and Wendell Quinn (Dkt. #11 ¶¶ 2–9).[1]

On April 26, 2019, without receiving leave of court, Plaintiffs filed a Second Amended Complaint, adding Plaintiffs Diane Creel, Lynn Creel, and Jalisa Green (Dkt. #130 ¶¶ 4, 5(j)–(k)).[2] Plaintiffs also added Defendant Dr. Timothy Tom (Dkt. #130 ¶¶ 4, 10(e)).

On May 28, 2019, Plaintiffs requested leave to file their Third Amended Complaint (Dkt. #182).  Plaintiffs maintained that the new complaint did not add new defendants or causes of action but simply accounted for new factual and procedural developments (Dkt. #182 at p. 1). Plaintiffs also attempted to address issues that were raised by Defendants' motions to dismiss Plaintiffs' prior complaints (Dkt. #182 at p. 1).  The Court granted Plaintiffs leave to file their Third Amended Complaint (Dkt. #197).

Under the operative, Third Amended Complaint, Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against all Defendants (Dkt. #183 at pp. 55–56).  Plaintiffs' RICO claim is their primary claim, and it is based on Plaintiffs' allegations that Defendants "engaged in racketeering activities and conspired to fraudulently admit and detain patients in four hospitals" (Dkt. #183 ⁋ 4).  Plaintiffs then allege as "counts in the alternative" violations of the Rehabilitation Act; violations of the Texas Deceptive Trade Practices Act ("DTPA"); violations of the Texas Health and Safety Code; violations of the Texas Mental Health Code; False Imprisonment; Civil Conspiracy; Negligence; Gross Negligence; and violations of the Texas Civil Practice and Remedies Code (Dkt. #183 at pp. 90–111).[3]

---

[1]  Plaintiffs voluntarily dismissed Defendant Miller from the case on December 20, 2018 (Dkt. #30).

[2]  Plaintiffs note they requested leave to amend in their responses to Defendants' motions to dismiss (Dkt. #157 at pp. 1–2).

[3]  Though not causes of action, Plaintiffs also list Respondeat Superior and Exemplary Damages Cap Busting as "counts in the alternative."  *E.g.*, *Turner v. Upton Cty.*, 915 F.2d 133, 138 n.7 (5th Cir. 1990) (stating that respondeat

After Plaintiffs filed their Third Amended Complaint, Defendants filed eleven separate motions to dismiss, many with overlapping issues. The Court denied all eleven motions (Dkt. #381). Ignoring the Court's request to file one consolidated motion moving forward, Defendants filed twelve separate motions for summary judgment—many with overlapping issues. The Court granted in part and denied in part eleven of the motions for summary judgment, and the Court denied the remaining motion for summary judgment (Dkt. #548).

Consistent with the parties' insatiable appetite for motion practice, the parties have now filed seven motions to strike as follows:

- On December 6, 2019, Defendant Sabahat Faheem filed a Motion to Strike or Limit the Expert Report and Testimony of Dr. Mark Blotcky (Dkt. #383). Plaintiffs responded and filed a sur-reply (Dkt. #431; Dkt. #452).

- On December 6, 2019, Defendants filed a Motion to Strike Testimony and Report of Plaintiffs' Expert Roger D. Sanders (Dkt. #384). Plaintiffs responded, and Defendants replied (Dkt. #427; Dkt. #439). Plaintiffs then filed a sur-reply (Dkt. #450).

- On December 6, 2019, Defendants filed a Motion to Strike Testimony and Report of Plaintiffs' Expert Michael B. Van Amburgh (Dkt. #386). Plaintiffs responded, and Defendants replied (Dkt. #430; Dkt. #440). Plaintiffs then filed a sur-reply (Dkt. #451).

- On December 9, 2019, Defendants filed a Motion to Strike Plaintiffs' Healthcare Finance Expert, Rebecca M.S. Busch (Dkt. #392). Plaintiffs responded, and Defendants replied (Dkt. #432; Dkt. #441). Plaintiffs then filed a sur-reply (Dkt. #453).

- On December 9, 2019, Defendants filed a Joint Motion to Strike Plaintiffs' Non-Retained Experts (Dkt. #393). Plaintiffs responded, and Defendants replied (Dkt. #433; Dkt. #437). Plaintiffs then filed a sur-reply (Dkt. #454).

superior itself is not a cause of action); *Sulzer Carbomedics, Inc. v. Or. Cardio-Devices, Inc.*, 257 F.3d 449, 461 (5th Cir. 2001) (stating that a claim for punitive damages is not a separate cause of action).

- On December 26, 2019, Defendants filed a Joint Motion to Strike Plaintiffs' Physician Expert, Mark Blotcky, M.D. (Dkt. #434).[4] Plaintiffs responded, and Defendants replied (Dkt. #431; Dkt. #438). Plaintiffs then filed a sur-reply (Dkt. #452).

- On January 21, 2020, Plaintiffs filed their Motion to Strike Defendants' Experts (Dkt. #482). Several groups of Defendants responded (Dkt. #520; Dkt. #522; Dkt. #523; Dkt. #525; Dkt. #526; Dkt. #527; Dkt. #528; Dkt. #529), prompting Plaintiffs to file two separate replies (Dkt. #551; Dkt. #552). Defendants then filed a joint sur-reply (Dkt. #566).

## LEGAL STANDARDS

### I.  Untimely Expert Report

Parties must make timely expert-witness disclosures within the deadlines set by the Court's Scheduling Order. *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, No. 3:16-CV-2255-L, 2019 WL 1436659, at *21 (N.D. Tex. Mar. 31, 2019) (citing FED. R. CIV. P. 26(a)(2)(D)). "A district court may grant a party leave to supplement an expert's report after the deadline in the scheduling order has expired, but only if good cause is shown under Rule 16(b)." *Id.*

The Court considers four factors is evaluating whether good cause exists: (1) the explanation for the failure to timely disclose; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *See Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

### II.  Federal Rule of Evidence 702

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S.

---

[4] Defendant Faheem filed his motion to strike the same expert—on the same grounds—in a separate motion (Dkt. #383).

579, 590–93 (1993).  Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91.  A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education."  FED. R. EVID. 702.  Moreover, to be admissible, expert testimony must be "not only relevant but reliable."  *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony."  *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594.  In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244.  When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate."  *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test."  *Id.* at 593.  As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one."  *Id.* at 594.  The test for

determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

The Court begins by addressing all of Defendants' motions to strike. It then addresses Plaintiffs' motion to strike.

### I.   Defendants' Motions to Strike Plaintiffs' Expert Witnesses

### A.  Michael B. Van Amburgh

Defendants argue that Mr. Van Amburgh's testimony is unreliable, and thus, inadmissible under Federal Rule of Evidence 702 (Dkt. #386). Specifically, they argue that Mr. Van Amburgh's opinion regarding economic losses is impermissibly speculative and based on arbitrary assumptions (Dkt. #386 at p. 2). Defendants claim that Mr. Van Amburgh's opinions are "simply not supported by the data and methodology provided in his report" (Dkt. #386 at pp. 5–6). Defendants also take issue with the fact that Mr. Van Amburgh's opinions do not address proximate causation, which is a required element of a lost-profits determination in a RICO claim (Dkt. #386 at pp. 2, 8).

Plaintiffs counter that Mr. Van Amburgh formed his opinions in compliance with the valuation standards contained in the "Uniform Standards of Professional Appraisal Practice" (Dkt. #430 at p. 1). Plaintiffs further detail how Mr. Van Amburgh came to his conclusions in a method generally accepted in the business analysis and valuation industry (Dkt. #430 at pp. 1–4). Plaintiffs also argue that, although Mr. Van Amburgh considered causation in making his report, Plaintiffs do not need to prove proximate cause through Mr. Van Amburgh's testimony for his testimony to be admissible under Rule 702 (Dkt. #430 at pp. 4–5). The Court agrees with Plaintiffs

that Mr. Van Amburgh should be allowed to testify under Rule 702—Defendants' concerns go to the weight of Mr. Van Amburgh's testimony, not the admissibility.

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore County*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir.1987)). Defendants here challenge the bases and sources of Mr. Van Amburgh's opinion— they claim that his opinions are based on arbitrary assumptions and not supported by the data. Cross examination is the proper way to expose these alleged deficiencies. Indeed, cross examination is preferred because "[i]t is the role of the adversarial system, not the court, to highlight weak evidence . . . ." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004); *see also Mobility Workx, LLC v. Cellco P'ship*, 4:17-CV-00872, 2019 WL 5721814, at *6 (E.D. Tex. Nov. 5, 2019) (Mazzant, J.).

Defendants' other complaint—their assertion that Mr. Van Amburgh's opinions should be struck because he does not address proximate causation—presents another issue better addressed on cross examination. As Plaintiffs note, they are not required to prove proximate cause through a particular witness. And should Defendants wish to show the jury that Mr. Van Amburgh's opinions do not address proximate causation, that can be accomplished through the adversarial system. *See id.* Accordingly, Defendants' Motion to strike Mr. Van Amburgh is denied.

### B. Mark Blotcky

Quizzically, there are two separate motions challenging Dr. Blotcky's expert testimony. One comes from Defendant Faheem individually (Dkt. #383); the other is a joint motion filed by all remaining Defendants (Dkt. #434). The arguments are nearly identical. Both motions argue

that Plaintiffs did not comply with Federal Rule of Civil Procedure 26's disclosure requirements and that Dr. Blotcky's expert testimony is unreliable under Federal Rule of Evidence 702.

Both motions argue that Dr. Blotcky's expert report is not in compliance with Rule 26 (Dkt. #383 at p. 2; Dkt. #434 at p. 4). Both motions claim that Dr. Blotcky did not explain or provide the proper factual predicate for his opinions (Dkt. #383 at p. 4; Dkt. #434 at p. 5). The motions also point to the report's incomplete and haphazard opinions, and on at least one occasion, it appears that blanks have been left in place of crucial details (Dkt. #383 at p. 5; Dkt. #434 at p. 6). The motions argue that under the four-factor *Geiserman* test, these disclosure deficiencies should result in the exclusion of Dr. Blotcky's testimony (Dkt. #383 at p. 7; Dkt. #434 at p. 6).

Both motions also argue that Dr. Blotcky's testimony does not comply with Rule 702 and *Daubert* (Dkt. #383 at p. 9; Dkt. #434 at p. 8). The motions argue that Dr. Blotcky's opinions are not based on sufficient facts or data; the motions argue that Dr. Blotcky's opinions are conclusory and unreliable; the motions argue that Dr. Blotcky's opinions just repeat the facts and opinions contained in the Plaintiffs' Third Amended Complaint; and the motions argue that Dr. Blotcky provides no methodology for his conclusions and lacks the qualifications to aid the jury (Dkt. #383 at pp. 9–12; Dkt. #434 at pp. 8–13).

Plaintiffs concede that Dr. Blotcky's report is labeled a "preliminary report," but Plaintiffs claim that it contained the "lion's share" of Dr. Blotcky's opinions (Dkt. #431 at p. 2). While Plaintiffs do not believe the report is deficient, Plaintiffs claim that supplementation would be harmless (Dkt. #431 at p. 4). Plaintiffs also counter Defendants' *Daubert* challenge, claiming that Dr. Blotcky's methodology is reliable and peer reviewed (Dkt. #431 at p. 13). Any complaints Defendants have, Plaintiffs assert, can and should be addressed through cross examination (Dkt. #431 at p. 15).

### i.    Disclosure under Rule 26

Plaintiffs' disclosure is insufficient under Rule 26(a)(2)(B).  For retained or specially employed experts—which Plaintiffs do not contest Dr. Blotcky is—a party must disclose the following information in its expert report:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B).

An expert's report must be "detailed and complete."  *Brumley v. Pfizer, Inc.*, 200 F.R.D. 596, 603 (S.D. Tex. 2001) (quoting *Sierra Club v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 571 (5th Cir. 1996)).  "Preliminary reports do not satisfy the express terms of Rule 26."  *Id.* (citing *Sherrod v. Lingle*, 223 F.3d 605, 612 (7th Cir. 2000)).  By Plaintiffs' own admission, Dr. Blotcky's expert report does not meet the Rule 26 standard.

Plaintiffs agree that Dr. Blotcky's expert report is styled as a "preliminary report." (Dkt. #431 at p. 2).  Plaintiffs agree that Dr. Blotcky's report does not contain all of his opinions—though they justify that fact by claiming it still contains the "lion's share" of his opinions (Dkt. #431 at p. 2).  Plaintiffs do not address Defendants' argument that Dr. Blotcky's report contains incomplete and haphazard opinions, and on at least one occasion, it appears that blanks have been left in place of key facts (Dkt. #383 at p. 5; Dkt. #434 at p. 6).  Dr. Blotcky's report does not constitute "a complete statement of all opinions the witness will express and the basis and

reasons for them." FED. R. CIV. P. 26(a)(2)(B). The Court finds that Plaintiffs' disclosure of Dr. Blotcky's is insufficient.

Having determined that Plaintiffs' disclosure is insufficient, the Court analyzes the four *Geiserman* factors to determine the appropriate remedy. *Id.* at *3. Here, the Court finds that the appropriate remedy is supplementation.

The four *Geiserman* factors are: (1) the explanation for failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing testimony; and (4) the availability of a continuance to cure such prejudice. *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

Defendants argue that the four factors should result in exclusion. First, Defendants claim that they will be significantly and unfairly disadvantaged in their ability to designate a responsive expert who can respond to Dr. Blotcky (Dkt. #434 at p. 6). Next, Defendants assert that the prejudice cannot be cured, as the incomplete report has prolonged the litigation and increased the cost of defending against this lawsuit (Dkt. #434 at pp. 6–7). Finally, Defendants claim that the fact that Plaintiffs are able to supplement the report does not warrant a continuance (Dkt. #434 at p. 7).

Plaintiffs also address the four factors but conclude that supplementation is sufficient to cure any prejudice (Dkt. #431 at p. 4). Plaintiffs argue that Dr. Blotcky's testimony is important to Plaintiffs, which weighs against exclusion (Dkt. #431 at p. 4). Plaintiffs then claim that the nondisclosure caused almost no prejudice to Defendants and that any prejudice it did cause can be cured through supplementation (Dkt. #431 at pp. 4–5).

The Court agrees with Plaintiffs—supplementation of Dr. Blotcky's report is sufficient to cure any prejudice caused by the nondisclosure. A continuance is the "preferred means of dealing

with a party's attempt to designate a witness out of time." *Bradley v. U.S.*, 866 F.2d 120, 127 n.11 (5th Cir. 1989). "Excluding [Dr. Blotcky's] testimony would be a serious sanction for an improper designation." *See Avneri v. Hartford Fire Ins. Co.*, 4:16-CV-00917, 2017 WL 4517955, at *3 (E.D. Tex. Oct. 10, 2017) (Mazzant, J.). Here, supplementation is appropriate to cure the prejudice of nondisclosure. *See id.* The harsh remedy of exclusion is not needed. Nor do Defendants meaningfully contest the fact that supplementation is sufficient to cure any prejudice. *See* (Dkt. #434 at p. 7). Accordingly, Plaintiffs have fourteen days from the date of this order to produce a report that is in full compliance with Rule 26.

### ii. *Daubert* Challenge

For the same reasons the Court articulated in its analysis concerning Mr. Van Amburgh, the Court finds that cross examination—not exclusion—is the proper means for Defendants to attack the bases and sources of Dr. Blotcky's opinion. Accordingly, the Court will not strike Dr. Blotcky's opinions.

### C. Rebecca M.S. Busch

Defendants argue that Plaintiffs did not comply with Federal Rule of Civil Procedure 26's disclosure requirements and that Ms. Busch's expert testimony is unreliable under Federal Rule of Evidence 702 (Dkt. #392). First, Defendants claim that Ms. Busch's expert report is an incomplete and noncompliant preliminary report (Dkt. #392 at p. 5). They argue that Plaintiffs attempted to file an incomplete report with the hopes of later materially changing the report after the disclosure deadline passed, which under the four-factor *Geiserman* test, should result in the exclusion of Ms. Busch's testimony (Dkt. #392 at pp. 5–7).

Defendants also argue that under Rule 702, Ms. Busch's testimony should be struck as unreliable (Dkt. #392 at p. 8). Defendants argue that the sources Ms. Busch used to come to her conclusion are questionable, and they argue that Ms. Busch makes unsupported and speculative

conclusions about several of the Defendants (Dkt. #392 at p. 9). Finally, Defendants argue that Ms. Busch is unqualified to serve as an expert here (Dkt. #392 at p. 10). Defendants claim that she is not qualified to opine as to the standard of care of a private psychiatric facility or the standard of care for psychiatrists, hospitals, or telemedicine physicians (Dkt. #392 at pp. 10–11). Defendants further take issue with legal conclusions they claim Ms. Busch made regarding federal regulations and kickbacks (Dkt. #392 at p. 11).

Plaintiffs first respond to Defendants' qualification argument; Plaintiffs point out that Ms. Busch is qualified to serve as an expert, having "literally [written] the book on health care fraud" (Dkt. #432 at p. 2). Plaintiffs also point to Ms. Busch's CV to show that she is well qualified in behavioral health and is a registered nurse (Dkt. #432 at p. 3). Plaintiffs also allude to ongoing work not on her CV that they claim is governed by non-disclosure agreements to support Ms. Busch's qualifications as an expert here (Dkt. #432 at p. 3).

Next, Plaintiffs assert that Ms. Busch's report was complete, sufficient, and in compliance with Rule 26's disclosure requirements (Dkt. #432 at p. 4). Plaintiffs also claim that Ms. Busch's "preliminary" report simply indicated that it could be supplemented if new information turned up through discovery (Dkt. #432 at pp. 11–12). Plaintiffs distinguish the case law cited by Defendants, arguing that Plaintiffs did not file an incomplete report with the hopes of later materially changing it (Dkt. #432 at p. 11).

### i. Disclosure under Rule 26

For the same reasons the Court articulated in its analysis concerning Dr. Blotcky, the Court finds that Plaintiffs' disclosure was insufficient but that supplementation is available to cure the prejudice of nondisclosure. Accordingly, Plaintiffs have fourteen days from the date of this order to produce a report that is in full compliance with Rule 26.

### ii. *Daubert* Challenge

For the same reasons the Court articulated in its analysis concerning Mr. Van Amburgh, the Court finds that cross examination—not exclusion—is the proper means for Defendants to attack the bases and sources of Ms. Busch's opinion. Accordingly, the Court will not strike Ms. Busch's opinions.

### D. Roger D. Sanders

Defendants argue that Plaintiffs did not comply with Federal Rule of Civil Procedure 26(a)(2)'s disclosure requirements (Dkt. #384). Defendants' Rule 26 argument as to Mr. Sanders is almost identical to their Rule 26 argument with regard to Ms. Busch: Defendants take exception with the preliminary nature of Mr. Sanders's written report and the fact that the report references completing a final report in the future (Dkt. #384 at p. 4). Defendants argue that the report should be struck under the four-factor *Geiserman* test (Dkt. #384 at p. 5). Defendants also argue that Mr. Sanders's expert testimony should be struck under Rule 702 because it is unreliable (Dkt. #384 at p. 7). But Defendants use Mr. Sanders's failure to provide a complete written report as the main basis for Mr. Sanders's unreliability (Dkt. #384 at p. 8).

Plaintiffs argue that the preliminary nature of Mr. Sanders's report is necessitated by his subject matter—attorney's fees (Dkt. #427 at pp. 1–2). Citing Federal Rule of Civil Procedure 54, Plaintiffs argue that because they are seeking attorney's fees for costs, and not for damages, Plaintiffs will need to file their motion for attorney's fees within fourteen days of the Court's entry of judgment (Dkt. #427 at p. 2). So, Plaintiffs assert that the preliminary nature of Mr. Sanders's disclosure is necessary because it would be impossible for Mr. Sanders to calculate a final lodestar prior to the entry of judgment and the filing of their motion for attorney's fees (Dkt. #427 at p. 6). The Court agrees with Plaintiffs.

Mr. Sanders is an attorney's fees expert—as Plaintiffs alluded to, the issue of attorney's fees will only come up after trial. Consistent with the Court's practice, the Court will allow both parties to submit affidavits and briefing on attorney's fees after trial if needed. Mr. Sanders will not be testifying to the jury about attorney's fees. Defendants' challenge of Mr. Sanders's allegedly deficient report is not ripe for consideration at this time. Accordingly, the Court will not strike Mr. Sanders.

### E. All Experts Plaintiffs Designated as Non-Retained

Defendants argue that Plaintiffs' disclosure of their non-retained experts—Amy Offutt, M.D., Michael Brophy, M.D., David Mechanic, Ph.D., State Representatives Bill Zedler and Stephanie Klick, Julie Massey, M.D., and Bill Crowell—are deficient for two independent reasons: (1) all of these experts should have been properly disclosed as specially employed experts under Rule 26(a)(2)(B); or (2) even if properly characterized as non-retained experts, Plaintiffs did not make sufficient disclosures under Rule 26(a)(2)(C) (Dkt. #393). Under either theory, Defendants argue that the four *Geiserman* factors should result in the exclusion of these witnesses' testimony (Dkt. #393).

Defendants also take exception with a "catch all" Plaintiffs included in their designation, which stated that Plaintiffs "reserve the right to call as an expert, anyone mentioned in any deposition or document in this case and reserve the right to allow any designated retained testifying expert rely upon any of those opinions." (Dkt. #393).

Plaintiffs counter by asserting that Defendants have enough time to depose all of the non-retained experts prior to trial (Dkt. #433). Plaintiffs claim that all of the experts are properly characterized as non-retained and all have provided a summary of their facts and opinions as required by Rule 26(a)(2)(C) (Dkt. #433). Plaintiffs also aver that there is "no need to analyze the *Geiserman* factors, but the factors weigh in favor of allowing the experts to testify." (Dkt. #433).

But true to their word, Plaintiffs never actually analyze the *Geiserman* factors to explain *why* "the factors weigh in favor of allowing the experts to testify." At times, Plaintiffs also provide slightly more information about the witnesses—information that was absent from their actual disclosures.

"The distinction between retained and non-retained experts should be interpreted in a common sense manner." *DiSalvatore v. Foretravel, Inc.*, 9:14-CV-00150-KFG, 2016 WL 7742996, at *2 (E.D. Tex. May 20, 2016) (Giblin, Mag. J.) (citing *Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 7 (1st Cir. 2011)). As the court in *DiSalvatore* explained:

> A retained expert witness is an expert who, without prior knowledge of the facts giving rise to litigation, "is recruited to provide expert opinion testimony." In contrast, a non-retained expert witness' testimony "arises not from his enlistment as an expert, but, rather, from his ground-level involvement in the events giving rise to the litigation."

*Id.* (quoting *Downey*, 633 F.3d at 6). It is the Plaintiffs' burden to demonstrate that their experts are non-retained experts. *See Eagle Oil & Gas Co. v. Travelers Prop. Cas. Co. of Am.*, 7:12-CV-00133-O, 2014 WL 3744976, at *8 (N.D. Tex. July 30, 2014).

But even when a party properly characterizes an expert as non-retained, the party must still comply with Rule 26(a)(2)(C)'s disclosure requirement. As the Court has held on numerous occasions, "[w]hen a party fails to provide a meaningful 'summary of the facts and opinions' forming the basis of a [non-retained expert's] testimony, the disclosure is insufficient." *Avneri*, 2017 WL 4517955, at *2 (citing *Motio, Inc. v. BSP Software LLC*, No. 4:12-CV-647, 2016 WL 74425, at *2 (E.D. Tex. Jan. 6, 2016) (Mazzant, J.)). And "referral to depositions is not an adequate substitute for the summary required by Rule 26." *Motio*, 2016 WL 74425, at *2.

The Court first addresses whether Plaintiffs' witnesses were properly characterized as non-retained experts. The Court finds that only Dr. Offutt and Mr. Crowell were properly characterized as a non-retained experts. Even then, Plaintiffs failed to provide the disclosures required of them under Rule 26(a)(2)(C).

As for the remaining five witnesses, the Court finds that they cannot be properly characterized as non-retained experts; accordingly, their disclosures, which must conform to the Rule 26(a)(2)(B) standard, are woefully deficient. But under the *Geiserman* factors, Plaintiffs' disclosure deficiencies should not result in the non-retained experts automatically being struck. Instead, the Court orders Plaintiff to properly supplement their disclosures in accordance with Rule 26 within fourteen days.[5]

Finally, Plaintiffs' "catch-all disclosure" is so plainly violative of Rule 26 that the Court will grant Defendants' motion to strike it from Plaintiffs' disclosure.

### i.  Amy Offutt, M.D.

Plaintiffs disclosed Dr. Offutt as a non-retained expert and stated that "Dr. Offutt may provide evidence of her care and treatment of Tiffany Young and the affect [sic] that the incident made the basis of this lawsuit had on her, including diagnosis and any prognosis and need for care and the costs associated with that care." (Dkt. #376, Exhibit 1). Plaintiffs then argue in their response to Defendants' motion that because Dr. Offutt is the treating physician for one of the individual plaintiffs and will only testify to her personal treatment of that individual plaintiff, Dr. Offutt properly qualifies as a non-retained expert (Dkt. #433 at p. 1). Defendants counter by arguing that Dr. Offutt is a retained expert because she "will *almost definitely* rely on facts discovered in relation to this lawsuit . . . *will likely* rely on hypotheticals at trial . . . [and] will also *likely* opine as to causation . . . ." (Dkt. #437 at pp. 4–5) (emphasis added).

The Court agrees with Plaintiffs—given her personal treatment of one of the individual plaintiffs, Dr. Offutt qualifies as a non-retained expert. *See Tolan v. Cotton*, CIV.A. H-09-1324, 2015 WL 5332171, at *1 (S.D. Tex. Sept. 14, 2015) ("[A] witness is 'specially employed' when

---

[5] Given where this case is in the litigation, failure to adequately do so in compliance with this order *will* result in the expert's testimony being excluded.

he has no personal involvement in facts giving rise to the litigation, but is engaged to provide opinion testimony, regardless of whether he is compensated or simply volunteers."); *see also DiSalvatore*, 2016 WL 7742996, at *2. Defendants' concerns may be well founded, and indeed, "when a physician goes beyond what he personally saw and did and why as a treating physician . . . and opines about causation, prognosis or future disability not part of his treatment . . . the physician must provide an expert report." *Tolan*, 2015 WL 5332171, at *1 (collecting and analyzing cases). But Defendants' objections are speculative and premature. The issues Defendants anticipate having with Dr. Offutt's testimony will be addressed if Dr. Offutt begins to provide those opinions. Since Dr. Offutt is the treating physician for one of the individual plaintiffs, it is certainly possible for Dr. Offutt's testimony to be cabined to what Dr. Offutt personally saw and did as a treating physician. Defendants admit as much in their motion to strike (Dkt. #393 at p. 8).

Even though Dr. Offutt is properly characterized as a non-retained expert, Plaintiffs did not properly provide opposing counsel with the subject matter that Dr. Offutt is expected to testify to and a "meaningful" summary of the facts and opinions to which Dr. Offutt is expected to use in her testimony. *See* Fed. R. Civ. P. 26(a)(2)(C); *Avneri*, 2017 WL 4517955, at *2. Thus, Plaintiffs' disclosure of Dr. Offutt is not sufficient under Rule 26(a)(2)(C).

Having determined that Plaintiffs' disclosure was insufficient, the Court analyzes the four *Geiserman* factors to determine the appropriate remedy. *Id.* at *3. Here, the Court finds that the appropriate remedy is supplementation.

The four *Geiserman* factors are: (1) the explanation for failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing testimony; and (4) the availability of a continuance to cure such prejudice. 893 F.2d at 791. Plaintiffs do not even attempt

to address these four factors in their response other than through their conclusory statement that the "factors weigh in favor of allowing the experts to testify." (Dkt. #433). Nor do Plaintiffs explain their failure to properly disclose Dr. Offutt or the importance of Dr. Offutt's testimony. And Defendants' persuasively argue that Plaintiffs' nondisclosure will prejudice their ability to effectively respond to the testimony. The first three factors weigh in favor of exclusion.

But as the Court noted earlier in this Order, a continuance is the "preferred means of dealing with a party's attempt to designate a witness out of time." *Bradley*, 866 F.2d at 127 n.11. "Excluding [Dr. Offutt's] testimony would be a serious sanction for an improper designation." *See Avneri*, 2017 WL 4517955, at *3. Here, a continuance is available to cure the prejudice of nondisclosure. *See id.* The harsh remedy of exclusion is not needed. Accordingly, Plaintiffs have fourteen days from the date of this order to produce a report that is in full compliance with Rule 26.

### ii. Michael Brophy, M.D.

Plaintiffs disclosed Dr. Brophy as a non-retained expert and stated that "Dr. Brophy is a psychiatrist and may provide evidence of his opinions of Dr. Gary Malone's care and treatment of patients who request to leave a hospital AMA and past history." (Dkt. #376, Exhibit 1). Plaintiffs seem to argue that Dr. Brophy is properly characterized as a non-retained expert because Dr. Brophy was not paid and volunteered to testify for Plaintiffs. Plaintiffs are incorrect.

First, payment of an expert does not determine whether the expert is specially employed—a witness can qualify as "specially employed" for Rule 26 purposes "regardless of whether he is compensated or simply volunteers." *Tolan*, 2015 WL 5332171, at *1. And from the information before the Court, Dr. Brophy is not being called to talk about his personal treatment of an individual plaintiff. Rather, he is being called to give expert opinion about whether an individual doctor-defendant properly treated an individual plaintiff. This is testimony "beyond

what he personally saw and did" as a treating physician. *Tolan*, 2015 WL 5332171, at *1 (collecting and analyzing cases). Plaintiffs have not met their burden of showing that Dr. Brophy will be able to testify about any "ground-level involvement in the events giving rise to the litigation." *DiSalvatore*, 2016 WL 7742996, at *2 (quotation omitted). Accordingly, Dr. Brophy was improperly characterized as a non-retained expert. So, even if Dr. Brophy's disclosure would have been sufficient under Rule 26(a)(2)(C), it is unquestionably insufficient under the operative rule—Rule 26(a)(2)(B).

Having determined that Plaintiffs' disclosure is insufficient, the Court analyzes the four *Geiserman* factors to determine the appropriate remedy. *Id.* at *3. For the same reasons as the Court explained in relation to Dr. Offutt's testimony, the Court finds that the appropriate remedy is supplementation. Plaintiffs have fourteen days from the date of this order to produce a report that is in full compliance with Rule 26.

### iii.    David Mechanic, Ph.D.

Plaintiffs disclosed Dr. Mechanic as a non-retained expert and stated that "Dr. Mechanic is an American Medical Sociologist and may provide evidence of his opinions related to health care financing, going into some of the fraud and health care spending patterns of the late 80's and early 90's." (Dkt. #376, Exhibit 1). In Plaintiffs' response to Defendants' motion to strike, they provide absolutely no argument that Dr. Mechanic was properly characterized as a non-retained expert except to say that Plaintiffs have not paid Dr. Mechanic (Dkt. #433 at p. 3).

As the Court addressed above with Dr. Brophy, payment of an expert does not determine whether the expert is specially employed. *Tolan*, 2015 WL 5332171, at *1. For the same reasons that the Court articulated when it concluded that Dr. Brophy was improperly characterized as a non-retained expert, the Court finds that Plaintiffs improperly characterized Dr. Mechanic as a

non-retained expert. So, even if Dr. Mechanic's disclosure would have been sufficient under Rule 26(a)(2)(C), it is unquestionably insufficient under the operative rule—Rule 26(a)(2)(B).

Having determined that Plaintiffs' disclosure is insufficient, the Court analyzes the four *Geiserman* factors to determine the appropriate remedy. *Id.* at *3. For the same reasons as the Court explained in relation to Dr. Offutt's testimony, the Court finds that the appropriate remedy is supplementation. Plaintiffs have fourteen days from the date of this order to produce a report that is in full compliance with Rule 26.

### iv. State Representatives Bill Zedler and Stephanie Klick

Plaintiffs disclosed Mr. Zedler and Ms. Klick as non-retained experts and stated that they would be discussing legislation they have sponsored and their observations from filming a TV special (Dkt. #433 at pp. 3–4). Again, Plaintiffs' only rebuttal to Defendants' challenge is that Plaintiffs never paid the representatives to testify. For the same reasons that the Court articulated when it concluded that Dr. Brophy and Dr. Mechanic were improperly characterized as non-retained experts, the Court finds that Plaintiffs improperly characterized Mr. Zedler and Ms. Klick as non-retained experts. So, even if Mr. Zedler and Ms. Klick's disclosures would have been sufficient under Rule 26(a)(2)(C), they are unquestionably insufficient under the operative rule— Rule 26(a)(2)(B).

Having determined that Plaintiffs' disclosure is insufficient, the Court analyzes the four *Geiserman* factors to determine the appropriate remedy. *Id.* at *3. For the same reasons as the Court explained in relation to Dr. Offutt's testimony, the Court finds that the appropriate remedy is supplementation. Plaintiffs have fourteen days from the date of this order to produce a report that is in full compliance with Rule 26.

### v. Julie Massey, M.D.

Plaintiffs disclosed that Dr. Massey "will have knowledge of recommended compliance efforts and UHS's response to them." (Dkt. #433 at p. 4). In their response, Plaintiffs bolster Dr. Massey's credentials and experience and state she is not being paid for testimony—but critically, Plaintiffs once again cannot manage to explain how Dr. Massey has any "ground-level involvement in the events giving rise to the litigation." *DiSalvatore*, 2016 WL 7742996, at *2. For the same reasons that the Court articulated when it concluded that Dr. Brophy and Dr. Mechanic were improperly characterized as non-retained experts, the Court finds that Plaintiffs improperly characterized Dr. Massey as a non-retained expert. So, even if Dr. Massey's disclosure would have been sufficient under Rule 26(a)(2)(C), it is unquestionably insufficient under the operative rule—Rule 26(a)(2)(B).

Having determined that Plaintiffs' disclosure is insufficient, the Court analyzes the four *Geiserman* factors to determine the appropriate remedy. *Id.* at *3. For the same reasons as the Court explained in relation to Dr. Offutt's testimony, the Court finds that the appropriate remedy is supplementation. Plaintiffs have fourteen days from the date of this order to produce a report that is in full compliance with Rule 26.

### vi. Bill Crowell

Mr. Crowell is one of the individual plaintiffs (Dkt. #433 at p. 5). Plaintiffs disclosed that Mr. Crowell "has significant experience in health care technology, software, billing, and compliance," and that he "will testify about non-compliance and offer opinions of the false claims in this case." (Dkt. #433 at p. 5). Like Dr. Offutt, Mr. Crowell is properly characterized as a non-retained expert witness. Also like with Dr. Offutt, Plaintiffs did not properly provide opposing counsel with the subject matter Mr. Crowell is expected to testify to and a "meaningful" summary

of the facts and opinions to which he is expected to testify.  *See* Fed. R. Civ. P. 26(a)(2)(C); *Avneri*,

2017 WL 4517955, at *2.  Thus, Plaintiffs' disclosure of Mr. Crowell is insufficient.

Having determined that Plaintiffs' disclosure is insufficient, the Court analyzes the four

*Geiserman* factors to determine the appropriate remedy.  *Id.* at *3.  For the same reasons as the

Court explained in relation to Dr. Offutt's testimony, the Court finds that the appropriate remedy

is supplementation.  Plaintiffs have fourteen days from the date of this order to produce a report

that is in full compliance with Rule 26.[6]

### vii.    Plaintiffs' "Catch-All" Disclosure

Plaintiffs also "reserve[d] the right to call as an expert, anyone mentioned in any deposition

or document in this case and reserve the right to allow any designated retained testifying expert

rely upon any of those opinions."  (Dkt. #393).  Somehow, Plaintiffs' attempt to justify this so-

called "disclosure" as necessary to allow Plaintiffs to call any witness that might need to be called

as an expert at trial  (Dkt. #433 at p. 6).

It seems axiomatic that an expert witness *disclosure*—made to allow opposing counsel to

properly prepare for trial and respond to expert testimony—cannot be used to reserve the right to

call any possible witness ever mentioned in discovery as an expert.  To conclude otherwise flies

in the face of the Court's disclosure deadlines, the purpose of disclosure, and Rule 26 itself.  *See*

*Newberry v. Disc. Waste, Inc.*, 4:19-CV-00147, 2020 WL 363775, at *3 (E.D. Tex. Jan. 22, 2020)

(Mazzant, J.) (citing Alexander J. Chern, *"Hybrid Witnesses" Are Not Entitled to "Hybrid Rules"*,

38 Rev. Litig. 333, 348 (2019)).  Accordingly, Plaintiffs will not be allowed to call *any* witness

---

[6] Any of Defendants' objections to Mr. Crowell's qualifications goes to the weight of his testimony, not the admissibility of the testimony, and should be properly addressed during cross examination.  *See Primrose Operating Co.*, 382 F.3d at 562 ("[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its *admissibility* and should be left for the jury's consideration.").

at trial under this "catch-all disclosure"—which, on its face, is plainly no disclosure at all.  *See* FED. R. CIV. P. 26(a)(2).[7]

## II.     Plaintiffs' Motion to Strike All of Defendants' Expert Witnesses

Plaintiffs have also filed a motion to strike Defendants' expert witnesses.  Plaintiffs' motion is scattershot, and it often does not appear that Plaintiffs actually want the Defendants' experts struck—primarily, Plaintiffs' motion asks the Court to preemptively limit certain experts from testifying to information not in their expert reports, and it attacks the cross-designation of several experts by the various Defendants (Dkt. #482 at p. 1).  Plaintiffs' motions also cursorily attacks nearly every one of Defendants' expert reports for not listing how much the expert was paid and for being electronically, and not physically, signed (Dkt. #482).

Notable is Plaintiffs' complete dearth of cited authority in support of their motion. Plaintiffs' motion points the Court to just one case from the Southern District of New York— which Plaintiffs cite only twice—to support their motion to strike nine different expert witnesses (Dkt. #482).  And at times, Plaintiffs simply copy-and-paste the same generalized one-paragraph "argument," changing nothing in the paragraph except the names.[8]

---

[7] The Court notes that either party may still call the other side's expert witnesses at trial.  Striking Plaintiffs' "catch-all" disclosure does not alter that ability.

[8] *Compare* (Dkt. #482 at p. 2):

> The designation of **Jacobs** does not comply with the disclosure rules because the report does not state how much **Jacobs** was paid for the report.  **Jacobs** did not review any records for any **Plaintiff** apart from **Troy Harvey**.  **Jacobs** does not have any opinions apart from those related to **Defendant Malone**.  Accordingly, **Jacob's** testimony should be limited to **Plaintiff Troy Harvey and Defendant Gary Malone**.  Finally, although **Jacobs** has impressive educational credentials, he has not shown that he is familiar with the standards that apply to practitioners in the state of Texas, which has unique rules that relate to the admission and discharge of psychiatric patients[,]

*with* (Dkt. #482 at pp. 2–3):

> The designation of **Schechter** does not comply with the disclosure rules because the report does not state how much **Schechter** was paid for the report.  **Schechter** did not review any records for any **Plaintiffs** apart from **Yolanda McPherson and Jalisa Green**.  **Schechter** does not have any opinions apart from those related to **Defendant Mehta**.  Accordingly, **Schechter's** testimony should be

Defendants' first retort is that Plaintiffs' objections are either premature or relate to the weight of the testimony, not its admissibility (Dkt. #520 at pp. 2–7). Defendants next argue Rule 26(a)(2)(B) simply requires the expert report to include a statement of compensation to be paid for the study and testimony, which the reports provide via a copy of each expert's fee schedule (Dkt. #520 at p. 7). Defendants then submit that—in an abundance of caution—they will provide Plaintiffs with adjusted reports "more directly outlining the experts' total compensation, as well as their physical signatures as opposed to the electronic signatures that accompanied the initial expert disclosures." (Dkt. #520 at pp. 7–8). But Defendants aver that under the four-factor *Geiserman* analysis, striking their expert witnesses for alleged assorted nondisclosures is inappropriate (Dkt. #520 at p. 8).

The Court agrees with Defendants. First, all of Plaintiffs' concerns can and should be addressed through cross examination. *See Primrose Operating Co.*, 382 F.3d at 562 ("[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its *admissibility* and should be left for the jury's consideration.") (quoting *14.38 Acres of Land*, 80 F.3d at 1077 (emphasis and alteration in original). Cross examination is preferred because "[i]t is the role of the adversarial system, not the court, to highlight weak evidence . . . ." *Id.*; *see also Mobility Workx*, 2019 WL 5721814, at *6. Plaintiffs provide no argument—and no binding or persuasive case law—to allow the Court to draw a contrary conclusion.

---

limited to **Plaintiffs Yolanda McPherson and Jalisa Green and Defendant Sejal Mehta**. Finally, although **Schechter** has impressive educational credentials, he has not shown that he is familiar with the standards that apply to practitioners in the state of Texas, which has unique rules that relate to the admission and discharge of psychiatric patients.

(emphasis on the only differences between the two paragraphs added).

Second, Plaintiffs' objection that cross-designation of the experts by several of the individual Defendants should result in those experts being struck is without merit. Just as the Court held above with regard to Dr. Offutt—one of Plaintiffs' experts—simply because an expert *could* improperly testify to opinions not contained in his report is not a reason to strike the expert. Instead, the issues Plaintiffs anticipate having with Defendants' cross-designated experts will be addressed if they begin to provide opinions not contained in their report at trial. The Court will not strike Defendants' expert designation on this ground, and Plaintiffs provide no binding or persuasive case law to allow the Court to come to a different conclusion.

Finally, Defendants' expert witnesses should not be struck for any of the alleged disclosure deficiencies that Plaintiffs repeatedly copy-and-paste throughout their motion. Plaintiffs do not even cite, let alone analyze, the four factors outlined in *Geiserman*. And Defendants have already submitted to the Court that they will cure the technical deficiencies Plaintiffs' complain of (Dkt. #520 at pp. 7–8). The Court is satisfied that this is sufficient, particularly where Plaintiffs do not make any effort to analyze the relevant law.[9] Accordingly, Plaintiffs' motion is denied.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Strike Testimony and Report of Plaintiffs' Expert Michael B. Van Amburgh (Dkt. #386); Defendants' Motion to Strike Testimony and Report of Plaintiffs' Expert Roger D. Sanders (Dkt. #384); and Plaintiffs' Motion to Strike Defendants' Experts (Dkt. #482) are hereby **DENIED**.

It is further **ORDERED** that Defendant Sabahat Faheem's Motion to Strike or Limit the Expert Report and Testimony of Dr. Mark Blotcky (Dkt. #383); Defendants' Motion to Strike

---

[9] Because the Court finds that striking Defendants' expert witnesses is inappropriate in any circumstance, the Court will not address whether electronically signed expert reports or expert reports with only the expert's pay table—and not an actual calculation of the expert's compensation—are actually violations of Rule 26.

Plaintiffs' Healthcare Finance Expert, Rebecca M.S. Busch (Dkt. #392); Defendants' Joint Motion to Strike Plaintiffs' Non-Retained Experts (Dkt. #393); and Defendants' Joint Motion to Strike Plaintiffs' Physician Expert, Mark Blotcky, M.D. (Dkt. #434) are hereby **GRANTED in part** and **DENIED in part**.  Plaintiffs' "catch-all" disclosure is **STRUCK**.

It is further **ORDERED** that Plaintiffs shall produce a report that complies with Federal Rule of Civil Procedure 26(a)(2)(B) for Mark Blotcky, Rebecca M.S. Busch, Michael Brophy, David Mechanic, Bill Zedler, Stephanie Klick, and Julie Massey within **fourteen (14)** days.

It is further **ORDERED** that Plaintiffs shall supplement Amy Offutt and Bill Crowell's Rule 26(a)(2)(C) disclosures to comply with Rule 26(a)(2)(C)'s requirements within **fourteen (14)** days.

**SIGNED this 26th day of February, 2020.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE