# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| BARBARA MEIER, *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO.  4:18-CV-00615 |
| | § | Judge Mazzant |
| UHS OF DELAWARE, INC., *et al.*, | § § | |
| *Defendants*. | § § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Non-Party Ashok Jain's Motion to Quash Plaintiffs' Notice of Deposition and Subpoena Duces Tecum (Dkt. #714) and Universal Health Services, Inc.'s Motion to Quash Subpoena for Deposition of Ashok Jain, M.D. (Dkt. #715).  Having considered the motions and the relevant pleadings, the Court finds that the motions should be granted in part and denied n part.

### BACKGROUND

Under the operative Complaint, Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against all Defendants (Dkt. #183 at pp. 55–56).  Plaintiffs' RICO claim is their primary claim, and it is based on Plaintiffs' allegations that Defendants "engaged in racketeering activities and conspired to fraudulently admit and detain patients in four hospitals" (Dkt. #183 ¶ 4).  Plaintiffs then allege as "counts in the alternative" violations of the Rehabilitation Act; violations of the Texas Deceptive Trade Practices Act ("DTPA"); violations of the Texas Health and Safety Code; violations of the Texas Mental Health Code; False

Imprisonment; Civil Conspiracy; Negligence; Gross Negligence; and violations of the Texas Civil Practice and Remedies Code (Dkt. #183 at pp. 90–111).[1]

On March 5, 2021, non-party Dr. Ashok Jain ("Jain") filed a motion to quash the relevant subpoena (Dkt. #714). The same day, Universal Health Services, Inc. ("UHS") also filed a motion to quash the subpoena (Dkt. #715). On March 19, 2021, Plaintiffs filed a response regarding both motions (Dkt. #719). On March 26, 2021, both Jain and Defendant filed replies (Dkt. #723; Dkt. #724).

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1); *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). Relevant information includes "any matter that bears on, or that could reasonably lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). In other words, "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)). Consequently, "[u]nless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for

---

[1] Though not causes of action, Plaintiffs also list Respondeat Superior and Exemplary Damages Cap Busting as "counts in the alternative." *E.g.*, *Turner v. Upton Cty.*, 915 F.2d 133, 138 n.7 (5th Cir. 1990) (stating that respondeat superior itself is not a cause of action); *Sulzer Carbomedics, Inc. v. Or. Cardio-Devices, Inc.*, 257 F.3d 449, 461 (5th Cir. 2001) (stating that a claim for punitive damages is not a separate cause of action).

2

discovery should be allowed." *Brady*, 238 F.R.D. at 437. The Court has provided guidance in matters of discovery. The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "documents containing, information 'relevant to the claim or defense of any party.'" (Dkt. #21 at p. 3). Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense. . . ." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Pursuant to Rule 45(d)(3), upon timely motion, "the court for the district where compliance is required must quash or modify a subpoena that," *inter alia*, requires disclosure of privileged or protected matter or subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A). "The court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party." *RYH Properties, LLC v. West*, 2011 WL 13196550, at *2 (E.D. Tex. Feb. 3, 2011) (citing *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003)). When determining whether a subpoena is unduly burdensome, a court may consider: "(1) relevance of the information requested, (2) the need of the party for the documents, (3) the breadth of the document request, (4) the time period covered by the request, (5) the particularity with which the party describes the requested documents, and (6) the burden imposed." *West*, 2011 WL 13196550, at *2 (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Brady*, 238 F.R.D. at 437). The Court may also consider whether "the subpoena was issued to a non-party to the litigation and the expense and

inconvenience of compliance to the non-party." *Id.* (citing *Wiwa*, 392 F.3d at 818). The moving party has the burden of showing "that compliance with the subpoena[s] would be unreasonable and oppressive." *Wiwa*, 392 F.3d at 818.

## ANALYSIS

Both Defendant Universal Health Services, Inc. and non-party Dr. Ashok Jain ("Jain") ask the Court to quash the subpoena issued to Jain. The subpoena requires Jain to sit for an oral videotaped deposition, and Plaintiffs seek Jain's "file, excluding any documents that [Jain] contend[s] to be covered by the attorney-client privilege, from [his] lawsuit 2:13-cv-06499-AB" and "[a]ny documents that support the allegations made in your lawsuit 2:13-cv-06499-AB" (Dkt. #714, Exhibit 2 at p. 7).[2]

Jain argues that the testimony and materials sought by Plaintiffs are protected by a confidentiality agreement. Alternatively, Jain argues that the subpoena is overly broad and unduly burdensome. Defendant also challenges the subpoena on numerous grounds: namely, that Jain has no relevant knowledge, that the subpoena improperly seeks deposition testimony that would violate the Court's prior order, that the subpoena improperly seeks deposition testimony that would violate the federal settlement privilege, and that the subpoena improperly seeks deposition testimony that would violate the confidentiality provisions of the agreement between Jain and the defendants in the prior action.[3]

Plaintiffs contend that the non-disclosure agreement from Jain's individual settlement agreement is not enforceable against the Plaintiffs. Further, Plaintiffs argue that because the

---

[2] The lawsuit referenced, 2:13-cv-06499-AB, is a 2013 *qui tam* case filed by Jain against various defendants—including Universal Health Services, Inc. The case resulted in a global settlement between the defendants and the United States.

[3] Defendant notes that it has standing to challenge the subpoena. Because Plaintiffs do not appear to contest Defendant's standing, the Court finds Defendant's arguments persuasive and therefore determines standing does exist.

Confidentiality Clause permits testimony in litigation, no testimonial privilege applies. Plaintiffs claim that public policy prohibits the use of a confidentiality clause to buy silence of a whistleblower to prevent the people who were most directly impacted by the harm from presenting evidence when the witness's knowledge relates to matters of public health and safety. Finally, Plaintiffs argue that the deposition will not violate a prior court order, no federal settlement privilege can silence Jain, and the Court should ultimately permit the deposition.

### I. Information Subject to a Confidentiality Agreement

Both Jain and Defendant point to the confidentiality provision (the "Provision") contained within the global settlement agreement (the "Agreement") to support their argument that Plaintiffs' subpoena improperly seeks deposition testimony from Jain. Jain and Defendant contend that the Provision expressly prohibits Jain from divulging "the allegations that formed the basis of his relator action and the terms and conditions of the Agreement" (Dkt. #715 at p. 9). According to Jain, "[i]f [he] were to be determined to breach this Agreement, he would be subject to serious monetary consequences under its terms" (Dkt. #714 at p. 3).

Plaintiffs argue that the non-disclosure provision from Jain's individual settlement agreement is not enforceable against Plaintiffs. Further, Plaintiffs claim that "[t]he clause . . . that [Defendant] cites in its Motion fails to identify what information is confidential[] and, as such, the clause is not enforceable to bar the deposition" (Dkt. #719 at p. 4).

While the terms of the Agreement remain confidential, the relevant part of paragraph three states that:

> The Relator Releasing Parties shall keep strictly confidential, except to the extent permitted by paragraph 5 (allowing disclosures consistent with what is contained in the press release issued by the U.S. Department of Justice in connection with the settlement of the Civil Action), the allegations which form the basis of the Civil Action, and the specific terms and conditions of this Agreement, including the payment amount, and shall not disclose them to any person other than their

>respective legal or financial advisors or U.S. government officials who seek such information in the course of their official duties, unless compelled by law to do so

(Dkt. #714 at pp. 2–3).  While the Court agrees that Jain, on his own accord, could not testify in a deposition as to the "allegations which form the basis of the Civil Action" or the "specific terms and conditions of th[e] Agreement[,]" the Court could compel him to do so.  If the Court did order Jain sit for a deposition, he would not be in violation of the plain language of the Provision—regardless of Defendants' beliefs regarding Jain's alleged breach.  Thus, the Provision does not serve as a compelling reason for this Court to quash the subpoena issued to Jain.

## II. Relevant Knowledge

Defendant argues that "Jain does not have any knowledge of nonprivileged matters relevant to any party's claim or defense in this case" (Dkt. #715 at p. 5).  Specifically, Defendant contends that "Jain was a medical director of BHB, a hospital owned by [Defendant] between 2011 and 2013" and that Jain "did not admit or provide care to any of the Plaintiffs, and his employment at BHB predated the relevant time period by at least two years" (Dkt. #715 at p. 5).

Plaintiffs assert that testimony from Jain is relevant because "Jain saw one of Plaintiffs as a patient after her stay at the same UHS hospital where Jain worked" (Dkt. #719 at p. 2).  Plaintiffs also claim that "[t]he mere fact that Jain stopped working with UHS prior to 2015 does not mean that Jain's knowledge about what [Defendant] knew prior to or following his departure is not relevant to Plaintiffs' claims" because "Plaintiffs' Complaint and Jain's Complaint contain numerous mirroring allegations" (Dkt. #719 at p. 2).  Further, Plaintiffs assert that "Jain has evidence to provide that [Defendant] had a false claim's scheme that he witnessed, that [Defendant] had knowledge about it because Jain reported it to [Defendant's] corporate management, and that [Defendant] apparently did not do anything about it in time to prevent the claims in this case from occurring" (Dkt. #719 at p. 3).  According to Plaintiffs, "[t]hat evidence

6

is relevant to numerous claims—most obviously to Plaintiffs' RICO claim—which requires a showing of prior predicate acts that go back ten years" (Dkt. #719 at p. 3).

Federal Rule of Evidence 401 outlines the test for relevant evidence. Rule 401 states that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Because the test is whether the evidence has *any* tendency to make a fact more or less probable, "the [relevance] bar is low." *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 809 (5th Cir. 2017). The Court now looks to the substance of the evidence sought to determine whether it meets the minimum threshold established by Rule 401.

Plaintiffs seek Jain's case file, excluding any documents that Jain contends are covered by attorney-client privilege, and any documents supporting the allegations made in Jain's Relator Action (the "Relator Action"). Although the Court agrees that Jain likely has little, if any, knowledge regarding the specific allegations proffered by Plaintiffs in this case, his employment at UHS and the facts regarding the prior whistleblower lawsuit certainly tend to make, at a minimum, the RICO claim more or less likely. Further, one of the Plaintiffs, Diane Creel ("Creel"), visited Jain after her discharge from Defendant's facility. The Court assumes without deciding that Defendant is correct in contending any information obtained by Jain from Creel is hearsay. However, the mere fact that evidence is hearsay does not prevent it from being discoverable. *See* FED. R. CIV. P. 26(b)(1). As such, any information relayed from Creel to Jain regarding her stay at UHS—which Creel contends is the reason she sought therapy—would tend to make the allegations more or less likely as well.

Bearing in mind that Plaintiffs do not have a high burden to meet in showing relevance, the Court is persuaded they have done so here. While Jain brought an action regarding the False

7

Claims Scheme and Plaintiffs bring healthcare liability and RICO claims, the Court is persuaded that the facts of one necessarily blend with the other. Jain's knowledge regarding Defendant is not categorized by claim. Rather, the facts could very well apply to both claims with equal, or for Rule 401 purposes—some, force. Thus, Jain's knowledge is relevant, and the Court declines to quash the subpoena on relevance grounds.

Insofar as Jain and Defendant argue that the Court has already limited discovery in the case to five years and four hospitals, the Court finds that argument unavailing. That order was entered pursuant to objections made in Plaintiffs' Rule 30(b)(6) deposition notice issued to Defendant, not Jain. The notice was issued as to Defendant—not Jain. In an effort to corral discovery, the Court issued the order limiting the temporal proximity with which Plaintiffs could receive information about any complaints made regarding patients held against their will at any UHS facility in the state of Texas in the past seven years to present. In contrast, Plaintiffs are now asking for a file from one lawsuit and documentation supporting the lawsuit's relevant claims. The prior discovery order issued by the Court applied as to the discovery requests before it at the time of the order—not to subsequent requests on non-parties.

### III. Violation of a Court's Prior Order

Defendant also asserts, and Jain incorporates by reference, that the subpoena "seeks deposition testimony that would violate the Court's order on prior motions to quash" (Dkt. #715 at p. 6).

Plaintiffs argue that "[t]he Court's prior order, referenced by [Defendant], was not related to Dr. Jain" and that "Plaintiffs did not know about Dr. Jain's lawsuit at the time of the prior order" (Dkt. #719 at p. 7). Plaintiffs also contend that they "read the Court's prior order to only pertain to the discovery of a draft settlement agreement and contemplated that if an agreement became

public[,] then it would revisit the issue" (Dkt. #719 at p. 7). Alternatively, "the [Court's] order should be reconsidered because the order itself indicates that the [C]ourt would reconsider it" (Dkt. #719 at p. 7).

In Dkt. #666, the Court granted in part and denied in part Defendant's motions to quash (Dkt. #666 at p. 1). Specifically, the Court quashed the subpoenas "to the extent they seek to protect statements, documents, or other materials related to a pending settlement between [Defendant] and the Department of Justice" (Dkt. #666 at p. 1). Notably, however, the order was "subject to reconsideration should the materials in question be publicly released while discovery is ongoing" (Dkt. #666 at p. 1).

Per the language of the Court's prior order, statements, documents, and other materials related to a pending settlement between Defendant and the Department of Justice were protected from discovery. However, the Court is now faced with a new issue not expressly contemplated by its prior order: what happens when the settlement is finalized and no longer pending? While the order purports to resolve this issue by noting that it was subject to reconsideration should the materials in question be publicly released while discovery is ongoing, to the Court's knowledge, the materials in question were not publicly released (*see* Dkt. #724 at p. 3).[4] Notably, Defendant contends that the prior order "applies to Dr. Jain's anticipated deposition testimony regarding the settlement between [Defendant] and the United States" (Dkt. #724 at p. 3). The testimony sought by Plaintiffs from Jain does not, by itself, violate the Court's prior order. However, this issue takes the Court into Jain and Defendant's arguments regarding the federal settlement privilege. If the Court chooses to adopt the federal settlement privilege, the information sought by Plaintiffs

---

[4] According to Defendant, and not rebutted by Plaintiffs, "[t]he only materials that have been publicly released are the now-final settlement agreement and a related corporate integrity agreement" (Dkt. #724 at p. 3). What has not been publicly released are documents considered during negotiations and the information Jain had regarding the bases of his claims.

9

regarding the settlement negotiations and documentation created therein are, in fact, undiscoverable.

### a. Federal Settlement Privilege

Defendant contends that "[f]ederal courts have recognized a federal settlement privilege for purposes of discovery as a natural outgrowth from Rule 408's prohibition against admissibility of settlement offers or statements made in furtherance of negotiating settlements" (Dkt. #715 at p. 7). In fact, Defendant claims that "[t]his Court and others have repeatedly relied on *Goodyear* [*Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2013),]" a Sixth Circuit case wherein the court adopted a federal settlement privilege, "and the Federal Rules of Evidence to protect statements and materials relating to settlement from discovery" (Dkt. #715 at pp. 7–8).

Federal Rule of Evidence 408 provides that:

> Evidence of the following is not admissible . . . either to prove or disprove the validity or amount of a disputed claim or to impeach by prior inconsistent statement or a contradiction: (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim . . . .

FED. R. EVID. 408(a). Notably, Rule 408 does not state that the evidence is not discoverable; but rather, that the evidence is *inadmissible*. "Information within th[e general] scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). Though evidence need not be admissible to be discoverable, parties can only "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." *Id.* The Court is convinced, based on the language of Rule 26 and Rule 408, that the information at issue is non-discoverable only if the information is privileged—namely, in this particular instance, by the federal settlement privilege.

10

Defendant claims that this Court has relied on *Goodyear* to establish a federal settlement privilege.  However, a recent decision from a fellow court in this District looked to Judge Bates's decision in *In re Subpoena Issued to Commodity Futures Trading Comm'n* to note that "there is no federal settlement privilege, and . . . Rule 408 was directed to the issue of admissibility of settlement material, not its discoverability." *Allergan, Inc. v. Teva Pharm. USA, Inc.*, No. , 2017 WL 132265, at *3 (E.D. Tex. Jan 12, 2017) (citing *In re Subpoena*, 370 F. Supp. 2d at 207–12 (D.D.C. 2007)).  Though the analysis of Judge Bates's decision was dicta, the Court finds its logic particularly persuasive, especially considering the plain language of Rule 408.  Thus, for purposes of the discoverability of information pertaining to settlement negotiations and agreements, the Court finds no privilege applies.  The Court does not, however, reach a decision on the admissibility of such information at trial.  The federal settlement privilege therefore does not operate to serve as a valid basis upon which to quash the subpoena issued to Jain.

## IV.     Overly Broad and Unduly Burdensome

Jain argues that the subpoena is overly broad and unduly burdensome because "[i]t seeks the entire case file for a complex litigation that lasted nearly seven years" and "it seeks, without time limitation, any document that might be relevant to any of Dr. Jain's allegations in the Jain Relator Litigation" (Dkt. #714 at p. 5).

Federal Rule 45(d) requires a party "responsible for issuing and serving a subpoena" to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1).  If a subpoenaing party does impose an "undue burden" on a person subject to the subpoena, the Court "must quash or modify" the subpoena. FED. R. CIV P. 45(d)(3)(a)(iv).

As noted above, factors considered when determining whether a subpoena constitutes an undue burden are: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa*, 392 F.3d at 818 (citing *Williams v. City of Dall.*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)). Notably, "if the person to whom the document request is made is a non-party," as is the case presently before the Court, "the court may also consider the expense and inconvenience to the non-party." *Id.* (first citing *Williams*, 178 F.R.D. at 109; and then citing FED. R .CIV. P. 45(c)(2)(B)).

Along the same lines, subpoenas also "pose an undue burden when the subpoena is facially overbroad." *Scrum Alliance Inc. v. Scrum, Inc.*, No. , 2020 WL 6559625, at *1 (E.D. Tex. Nov. 9, 2020) (citing *Wiwa*, 392 F.3d at 818). "Facially overbroad subpoenas include those that 'seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date; [t]he requests are not particularized; and [t]he period covered by the requests is unlimited.'" *Id.* (quoting *Am. Fed'n of Musicians of the U.S. & Can. v. Skodam Films, LLC*, 313 F.R.D. 39, 45 (N.D. Tex. 2015)).

Plaintiffs' subpoena issued to Jain seeks two broad categories of documents—namely, (1) Jain's "file, excluding any documents that [he] contend[s] are covered by the attorney-client privilege, from [the Relator Action];" and (2) "[a]ny documents that support the allegations made in [the Relator Action]" (Dkt. #714, Exhibit 2 at p. 7). These broad categories of documents have no temporal restrictions, nor are the documents sought identified with any sort of particularity. The documents seek all information relevant to an action that was filed on November 6, 2013 and not resolved until August 11, 2020. The litigation spanned approximately seven years, and the

subpoena seeks information possibly arising even before the filing of the lawsuit. Plaintiffs did not place any restrictions, temporal or otherwise, on the documentation sought, other than to note that information covered by attorney-client privilege need not be produced. That lack of restrictions cause the subpoena to therefore be facially overbroad and unduly burdensome.

Plaintiffs contend that "the two document requests that were attached to the subpoena were intended to provide simplicity to the witness and his counsel and were not intended to be unduly burdensome or overbroad by requiring a massive privilege review" (Dkt. #719 at p. 3). Further, Plaintiffs state they "are absolutely willing to discuss a means to reduce the burden on Jain and his counsel for compliance with the subpoena" (Dkt. #719 at p. 3). Although Plaintiffs seek full production, they alternatively request "an order permitting the production of a list of documents from the litigation from Jain and/or Defendant so Plaintiffs can narrow their request" (Dkt. #719 at p. 4). In light of the broad categories of documents sought by Plaintiffs in the subpoena duces tecum, the Court finds a narrower request from Plaintiffs appropriate.

Jain's testimony, though subject to a confidentiality agreement, is allowed under the Provision if the Court compels such testimony. Further, Jain's knowledge is relevant, and his testimony would not violate either a prior order of this Court or any existing federal settlement privilege. However, the request for documents found within the subpoena duces tecum are facially overbroad and therefore do pose an undue burden on Jain. The Court does find that Plaintiffs' request for the production of a list of documents from the litigation from Jain would alleviate such burden.

## CONCLUSION

It is therefore **ORDERED** that Non-Party Ashok Jain's Motion to Quash Plaintiffs' Notice of Deposition and Subpoena Duces Tecum (Dkt. #714) and Universal Health Services, Inc.'s

Motion to Quash Subpoena for Deposition of Ashok Jain, M.D. (Dkt. #715) are hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Jain is to be available for a deposition, and any testimony covered by the confidentiality agreement is hereby compelled by law.

It is further **ORDERED** that Jain produce a list of the folders and files that contain material, apart from material covered by attorney-client privilege, from the Relator Action so that Plaintiffs may accordingly narrow their discovery request. Any privileged documents unintentionally provided to Plaintiffs by Jain that are covered by privilege must be returned within forty-eight (48) hours of their production.

**IT IS SO ORDERED**.
SIGNED this 1st day of April, 2021.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE