# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| BARBARA MEIER, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| | § | CIVIL ACTION NO.  4:18-CV-00615 |
| v. | § | Judge Mazzant |
| | § | |
| UHS OF DELAWARE, INC., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiffs' Motion to Strike Untimely and Inadequate Amended Designations of Experts by Hospital Defendants and Defendant Jamal Rafique, MD (Dkt. #727). Having considered the motion and the relevant pleadings, the Court finds that Plaintiffs' motion should be granted in part and denied in part.

## BACKGROUND

Under the operative Complaint, Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against all Defendants (Dkt. #183 at pp. 55–56).  Plaintiffs' RICO claim is their primary claim, and it is based on Plaintiffs' allegations that Defendants "engaged in racketeering activities and conspired to fraudulently admit and detain patients in four hospitals" (Dkt. #183 ¶ 4).  Plaintiffs then allege as "counts in the alternative" violations of the Rehabilitation Act; violations of the Texas Deceptive Trade Practices Act ("DTPA"); violations of the Texas Health and Safety Code; violations of the Texas Mental Health Code; False

Imprisonment; Civil Conspiracy; Negligence; Gross Negligence; and violations of the Texas Civil Practice and Remedies Code (Dkt. #183 at pp. 90–111).[1]

On April 6, 2021, Plaintiffs filed the present motion (Dkt. #727).  On April 13, 2021, the Hospital Defendants filed a response (Dkt. #748).  On the same day, Dr. Rafique also filed a response (Dkt. #749).

## LEGAL STANDARD

Parties must make timely expert-witness disclosures within the deadlines set by the Court's Scheduling Order.  *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, No. 3:16-CV-2255-L, 2019 WL 143659, at *21 (N.D. Tex. Mar. 31, 2019) (citing FED. R. CIV. P. 26(a)(2)(D)).  "A district court may grant a party leave to supplement an expert's report after the deadline in the scheduling order has expired, but only if good cause is shown under Rule 16(b)."  *Id.*

The Court considers four factors when evaluating whether good cause exists: (1) the explanation for the failure to timely disclose; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *See Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

## ANALYSIS

Plaintiffs ask the Court to strike the Amended Designation of Experts by the Hospital Defendants and Dr. Rafique.[2]  Plaintiffs specifically ask the Court: (1) "to strike the designation by the Hospital Defendants and Dr. Rafique of Dr. Schechter" and (2) "to strike the boilerplate

---

[1] Though not causes of action, Plaintiffs also list Respondeat Superior and Exemplary Damages Cap Busting as "counts in the alternative." *E.g.*, *Turner v. Upton Cty.*, 915 F.2d 133, 138 n.7 (5th Cir. 1990) (stating that respondeat superior itself is not a cause of action); *Sulzer Carbomedics, Inc. v. Or. Cardio-Devices, Inc.*, 257 F.3d 449, 461 (5th Cir. 2001) (stating that a claim for punitive damages is not a separate cause of action).
[2] The Amended Designation of Experts by Hospital Defendants is Dkt. #721, and the Amended Designation of Experts by Dr. Rafique is Dkt. #722.

designation by the Hospital Defendants of more than 100 witnesses associated with the Hospitals" (Dkt. #727, pp. 1–2).  The Court will address each request in turn.

## I.   Dr. Schechter

Regarding Dr. Schechter, Plaintiffs argue that "the witness was not properly disclosed, the amended designation is untimely, there is no good explanation for the failure to designate, the late designation demonstrates the lack of importance, the designation causes the Plaintiffs significant prejudice, and a continuance is not available to cure the disclosure deficiency" (Dkt. #727 at p. 1). Plaintiffs further allege that "the designation is incomplete because [Dr. Schechter] provides only general opinions and then specifically states that he has disagreements with Plaintiffs' expert that he fails to specifically list" (Dkt. #727 at p. 1).

The Hospital Defendants contend that the "supplemental expert disclosures from March 23, 2021 comply with the obligations set forth under [Rule] 26(a)(2)(B) and (C), and Rule 26(e)" (Dkt. #748 at p. 1).  Similarly, Dr. Rafique asserts that his "First Amended Expert Disclosures complies with the obligations set forth under [Rule] 26(a)(2)(B) and (C)" (Dkt. #749 at p. 1). According to the Hospital Defendants and Dr. Rafique (collectively, the "Defendants"), Dr. Schechter's updated report is properly characterized as both a supplemental report and a rebuttal report.  Further, the Defendants claim that, even if the updated report is untimely, the Rule 16 factors support granting Defendants leave to supplement Dr. Schechter's report.

### a.   Sufficient Initial Disclosure

Defendants claim that the Court's threshold inquiry is whether Dr. Schechter's updated report is properly classified as a supplemental report or a rebuttal report.  However, Defendants seem to ignore Plaintiffs' argument that the disclosure of Dr. Schechter was improper in itself. Bearing in mind that the classification of Dr. Schechter's report is likely irrelevant if he was not

disclosed in accordance with the Federal Rules of Civil Procedure, the Court must address the disclosure issue before reaching a decision on the characterization of the updated report.

Federal Rule of Civil Procedure 26(a)(2) requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." FED. R .CIV. P. 26(a)(2)(A). "A party must make these disclosures at the times and in the sequence that the court orders[,]" but "[a]bsent a stipulation or court order, the disclosures must be made: (i) at least 90 days before the date set for trial or for the case to be ready for trial; or (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within thirty days after the other party's disclosure." FED. R. CIV. P. 26(a)(2)(D).

On January 6, 2020, Dr. Sejal Mehta designated Dr. Schechter as a specially retained expert (Dkt. #456 at p. 1). Included within Dr. Mehta's designation were the requirements laid out in Rule 26(a), and Dr. Mehta included Dr. Schechter's initial report as Exhibit A to the disclosure (*see* Dkt. #456, Exhibit 1). Also on January 6, 2020, the Defendants cross-designated Dr. Schechter (*see* Dkt. #463 at p. 5; *see also* Dkt. #465 at p. 7). The Defendants incorporated Dr. Schechter's report into their cross-designation (*see* Dkt. #463 at p. 5; *see also* Dkt. #465 at p. 7). Dr. Mehta has since settled with Plaintiffs and been dismissed from this lawsuit. Defendants then designated Dr. Schechter as a retained expert on March 23, 2021 (*see* Dkt. #721; *see also* Dkt. #722).

The Court's scheduling order in this case required Defendants to disclose expert testimony pursuant to Rule 26(a)(2) and Local Rule CV-26(b) no later than January 6, 2020 (Dkt. #297). As noted above, January 6, 2020 is both when Dr. Mehta designated Dr. Schechter and when

Defendants cross-designated him.  Thus, both the original designation and the cross-designation were timely.

Bearing in mind that "[t]he 'basic purpose of [Rule 26 is to] prevent[] prejudice and surprise[,]'" *Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 Fed. App'x 444, 446 (5th Cir. 2013) (first quoting *Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994); and then citing *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007)) (alteration in original), the Court is persuaded that Defendants met the disclosure requirements.  Plaintiffs anticipated the testimony of Dr. Schechter from the date of designation and cross-designation, January 6, 2020, through the time the Court granted and approved the Plaintiffs' stipulation of dismissal as to Dr. Mehta on September 17, 2020.  On March 23, 2021, Defendants re-designated Dr. Schechter and provided his updated report to Plaintiffs.

The Court is convinced that the re-designation of Dr. Schechter was timely.  As noted above, Defendants' cross-designation was timely.  As a practical matter, Plaintiffs received notice of Dr. Schechter's identity and the propositions for which he would testify before the deadline in the Court's scheduling order.  As such, and with keeping the overarching goal of Rule 26(a) in mind, the Court finds Dr. Schechter's re-designation is more apt to an extension of a timely cross-designation.[3]  This conclusion does not end the Court's analysis into timeliness, however, because the scheduling order issued by the Court has no deadline for supplemental or rebuttal expert reports.  Now, the Court must decide whether Dr. Schechter's report can be classified as a supplemental report, a rebuttal report, both, or neither.

---

[3] In their motion, Plaintiffs "re-urge the objection to the cross designations of other retained experts who provide no specific opinions about the defendants" (Dkt. #727 at p. 5).  For the same reasons outlined in Dkt. #581, the Court again overrules Plaintiffs' objections.

### b.  Classification of Updated Report

Plaintiffs do not appear to offer argument on how the Court should classify Dr. Schechter's updated report.  Rather, Plaintiffs argue that the updated report is untimely because Defendants "now designate Dr. Schechter with numerous new opinions that were not contained in his initial report" (Dkt. #727 at p. 5).  Defendants, on the other hand, contend that Dr. Schechter's report can be properly classified as both a supplemental report and a rebuttal report.

The "Federal Rules of Civil Procedure do not define what constitutes a supplemental expert report." *Charter Sch. Sols. v. GuideOne Mut. Ins. Co.*, No. EP-18-CV-61-KC, 2019 WL 5258055, at *2 (W.D. Tex. June 28, 2019).  "Consequently, what constitutes a supplemental expert report is not a clear-cut issue and 'the distinction likely depend[s] on the facts of the case.'" *Gibson Brands, Inc. v. Armadillo Distrib. Enter., Inc.*, No. 4:19-cv-00358, 2020 WL 6581868, at *2 (E.D. Tex. Nov. 10, 2020) (quoting *Charles v. Sanchez*, No. EP-13-CV-00193-DCG, 2015 WL 808417, at *8 (W.D. Tex. Feb. 24, 2015)).

The facts of this case support a finding that Dr. Schechter's updated report is supplemental to his initial report.  Dr. Schechter provided an initial report, authored in December 2019, that was included with Dr. Mehta's expert disclosures.  The initial report was also incorporated by reference in Defendants' cross-designation of Dr. Schechter.  In accordance with the Court's finding above that the re-designation of Dr. Schechter was an extension of the timely cross-designation, it necessarily follows that the initial report authored by Dr. Schechter remains intact.

Plaintiffs' argument that new opinions offered in Dr. Schechter's updated report dictates Dr. Schechter's designation, or his report, be deemed untimely is without merit, because courts have found that a supplemental report does "contain[] information . . . not expressed in the original report, or there would be no need to supplement." *Charter Sch. Sols.*, 2019 WL 5258055, at *2.

6

Further, the definition of "supplemental"—"[t]hat which is added to a thing or act to complete it"—detracts from the viability of Plaintiffs' argument. *Supplemental*, BLACK'S LAW DICTIONARY (6th ed. 1990).  Ultimately, "a supplemental report 'adds to a previously-served report without going beyond the opinions expressed in the report and without using information available prior to the [supplement report's deadline][,]'" *Gibson Brands*, 2020 WL 6581868, at *2 (quoting *CEATS, Inc. v. TicketNetwork, Inc.*, No. 2:15-CV-01470-JRG-RSP, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018)) (alteration in original), and such a supplemental report is a "revised expert report that is consistent with the core opinions expressed in the original expert report." *Gilbane Bldg. Co. v. Downers Grove Cmty. High Sch. Dist. No. 99*, No. 02-C-2260, 2005 WL 838679, at *8 (N.D. Ill. Apr. 5, 2005).

Dr. Rafique provided an updated report from Dr. Schechter on March 23, 2021.[4] According to Defendants, the initial report was supplemented by Dr. Schechter after more information became available throughout the course of discovery.  Dr. Schechter's updated report includes additional information relating to not only Defendants, but also to additional patients not before analyzed.  After a thorough review of both the initial report and the updated report, the Court is persuaded that Dr. Schechter's core opinions remained the same.  In both reports, albeit lengthier in the updated report, Dr. Schechter took direct quotes from Dr. Blotcky's report and offered his own opinions contradicting Dr. Blotcky's assertions.[5]  The opinions in the reports remain consistent: Defendants "met medical necessity criteria for psychiatric inpatient hospitalization, and none [of the patients] had an inordinately long length of stay" (Dkt. #722, Exhibit 1 at p. 6).  Though additional facts were provided and relied upon in reaching that opinion

---

[4] The updated report was filed as an exhibit to Dr. Rafique's First Amended Disclosure of Expert Testimony, wherein Dr. Rafique re-designated Dr. Schechter as a specially retained expert (*see* Dkt. #722).
[5] Dr. Blotcky is Plaintiffs' expert retained to testify as to the same subject matter as Dr. Schechter.

in the updated report, Plaintiffs still must still defend the same overarching opinion as they did when Dr. Schechter was designated the first time. Because the updated report furnished by Dr. Schechter merely added information and facts that became available following his authoring of his initial report, the updated report classifies as supplemental.

In contrast to a supplemental report, Rule 26(a) does define a rebuttal report. Rebuttal reports are those written expert opinions "intended solely to contradict or rebut evidence on the same subject matter identified by another party." FED. R. CIV. P. 26(a)(2)(D)(ii). "Rebuttal is a term of art, denoting evidence introduced by a Plaintiff to meet new facts brought out in his opponent's case in chief." *Morgan v. Com. Union Assur. Companies*, 606 F.2d 554, 555 (5th Cir. 1979) (citations omitted). "This Court characterizes a rebuttal report as one that 'explains, repels, counteracts, or disproves evidence of the adverse party's initial report.'" *Gibson Brands*, 2020 WL 6581868, at *2 (quoting *CEATS*, 2018 WL 453732, at *3).

Dr. Schechter certainly contradicts specific opinions offered in Dr. Blotcky's expert report. In fact, Dr. Schechter's report quotes Dr. Blotcky's opinions, and Dr. Schechter offers explanations as to the perceived deficiencies therein. Thus, the Court is persuaded that Dr. Schechter's report is, at least in part, a rebuttal report.

### c.  Timeliness of Report

The Court has determined that Dr. Schechter's updated report classifies as both supplemental and, at least in part, rebuttal. Regarding the rebuttal nature of Dr. Schechter's report, "the disclosures must [have been] made . . . within 30 days after the other party's disclosure." FED. R .CIV. P. 26(a)(2)(D)(ii). No dispute appears to exist that Dr. Schechter's updated report came more than thirty days after the disclosure of Dr. Blotcky's report. Thus, the partial rebuttal report is untimely. However, due to the Court's classification of Dr. Schechter's updated report as also

supplemental, the untimeliness alone is not fatal to Defendants.  For Dr. Schechter's supplemental report to be timely, "[a]ny additions or changes" had to have been "disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."  FED. R. CIV. P. 26(e).

Rule 26(a)(3) provides that the time for pretrial disclosures is "at least 30 days before trial" "[u]nless the court orders otherwise."  FED. R. CIV. P. 26(a)(3)(B).  Looking to the Court's scheduling order, no express deadline exists regarding supplemental expert reports.[6]  However, the Court need not determine whether the supplemental report was timely or not because, in any event, good cause exists to allow Defendants leave to supplement.

Rule 16(b)(4) allows a deadline to be "modified only for good cause and with the judge's consent."  FED. R. CIV. P. 16(b)(4).  "The Court considers four factors in evaluating good cause: (1) the explanation for the failure to timely disclose; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."  *Gibson Brands*, 2020 WL 6581868, at *2 (citing *Russell v. Wal-Mart Stores*, No. 1:06-CV-408, 2007 WL 9725186, at *2 (E.D. Tex. June 7, 2007)).

### i.  Explanation for Failure to Timely Disclose

Plaintiffs claim that "neither Rafique nor the Hospital Defendants can provide a good excuse for the massive delay in providing the designation and report of [Dr.] Schechter" (Dkt. #727 at p. 6).

The Hospital Defendants respond that they "supplemented Dr. Schechter's report on March 23, 2021 . . . as soon as they were practically able based on global factors in this case[—]three of

---

[6] The Court did order "Defendants' disclosure of expert testimony pursuant to [Rule] 26(a)(2) and Local Rule CV-26(b)" be completed no later than January 6, 2020 (Dkt. #297).  However, requiring a party to supplement an expert report by that date would oftentimes cause an absurd result: in many circumstances, a party would be required to supplement an expert report on the same day that they initially disclose the expert witness.  Further, the deadline is far before discovery closed in this case.  Lastly, supplemental disclosures are governed by Rule 26(e), which in turn cites to the pretrial disclosure deadlines in Rule 26(a)(3).  The scheduling order only discusses the disclosures in Rule 23(a)(2).

four Defendant physicians settled out of the case in June 2020, taking their experts—cross-designated by Defendants—with them" (Dkt. #748 at p. 6). Dr. Rafique responds similarly.

The Court has already determined that the Defendants timely designated Dr. Schechter. However, the Court will still consider Defendants' explanations regarding the delay in both re-designating Dr. Schechter and supplementing his report.

A stipulation of dismissal was filed as to Dr. Mehta—the physician who initially designated Dr. Schechter—on September 17, 2020 (Dkt. #682). The same day, an order granting and approving the stipulation of dismissal was entered by the Court (Dkt. #683). "[A]s numerous federal courts have made clear, a voluntary dismissal without prejudice under Rule 41(a) leaves the situation as if the action had never been filed." 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2367 (4th ed.) (collecting cases). Thus, when Dr. Mehta was dismissed from the present case, her designated expert witnesses—including Dr. Schechter—went with her.

Defendants did not designate their own expert witness to testify as to the standard of care given by Defendants before the co-defendants settled. Defendants claim that they then spent several months attempting to contact the expert witnesses of the now-dismissed co-defendants in an effort to re-designate at least one of them. In December of 2020, three months after Dr. Mehta's settlement and dismissal, Defendants were able to retain Dr. Schechter, who "agreed to promptly prepare an updated report" (Dkt. #748 at p. 7). Defendants then sent Dr. Schechter updated discovery materials "such that his report would include the new documentation and records that have been received since he authored his first report which was timely disclosed on January 6, 2020" (Dkt. #749 at p. 6).

While "there is no shortage of monetary resources available to Defendants[,]" and "at no time did Defendants specifically indicate . . . that they intended to have [Dr.] Schechter provide any specific opinions on their behalf[,]" (Dkt. #727 at p. 7), the circumstances surrounding the dismissal of three co-defendants and the effect of those dismissals on Defendants' expert witness list, in conjunction with the explanation offered as to the length of delay, supports a finding of good cause.

### ii.  Importance of Testimony

Plaintiffs assert that "the evidence shows that testimony from [Dr.] Schechter or any retained psychiatrist would be unimportant to the Hospitals and Rafique" (Dkt. #727 at p. 7). Plaintiffs further argue that "[t]his lack of importance can be demonstrated by the lack of care or diligence in attempting to designate [Dr. Schechter] to testify as to each Plaintiff until 49 days prior to the trial date" and "[n]one of the defendants who now rely so heavily on [Dr.] Schechter can be said to be unfairly prejudiced by the lack of this important witness because they still have numerous psychiatric witness[es] who they can call to testify as to cumulative material, including Dr. Rafique and the other affiliated Psychiatrists who have been paid through the hospitals over the years" (Dkt. #727 at p. 7).

Defendants contend that Dr. Schechter's testimony is necessary because "Defendants planned to utilize the Defendant-psychiatrists (and their retained psychiatric experts) to opine as to the propriety of the admission, treatment, and discharge of Plaintiffs at Defendant Hospitals" (Dkt. #748 at p. 7).  According to Defendants, "[w]ithout Dr. Schechter, Defendants will be unable to rebut the opinions and testimony of Plaintiffs' psychiatric expert, Mark Blotcky, M.D., at trial" and "[i]n light of the foregoing, the importance of Dr. Schechter's supplemental report weighs in favor of permitting any untimely filing" (Dkt. #748 at p. 8).

Dr. Schechter's supplemental report includes information specific to the Defendants still remaining in the case.  Further, Dr. Schechter's supplemental report factors in evidence not previously incorporated into his analysis.  The Court is not persuaded that the delay in designating Dr. Schechter renders his testimony unimportant.  Further, although other psychiatrists do exist, both as a defendant and as employees of the Hospital Defendants, that could theoretically testify as to the standard of care given by Defendants, the testimony of those persons cannot reasonably be said to substitute for an unbiased third party's opinion on the relevant care.  The importance of the rebuttal testimony and lack of other available witnesses to opine on the same subject as Dr. Blotcky support this factor weighing heavily in favor of finding good cause.

### iii.  Potential Prejudice in Allowing Testimony

Plaintiffs argue that "[t]he potential prejudice in allowing the testimony is massive" because "it will prolong the trial and take away from the Court's already limited trial schedule[,]" and "Plaintiffs had a right to resolve their claims with the doctor who designated [Dr.] Schechter and rely upon the doctor's dismissal in planning the trial" (Dkt. #727 at p. 8).  According to Plaintiffs, "[i]f the Hospital Defendants and Rafique wanted to call [Dr.] Schechter and get his opinions, they should have at least done so within 30 days of the settlement and dismissal of Dr. Mehta" (Dkt. #727 at p. 8).  Plaintiffs finally claim that they "are surprised by the filing and the timing of the filing, both of which the defendants cannot controvert are unfairly prejudicial to the Plaintiffs" (Dkt. #727 at p. 8)

Defendants contend that, even if Plaintiffs' are slightly prejudiced as a result of Dr. Schechter's testimony, "Defendants' disclosure was made three months before trial and before the discovery deadline[,]" and "Plaintiffs will not have to expend time and money to re-depose Dr. Schechter (who has not been deposed)" (Dkt. #748 at p. 8).

Dr. Schechter's updated report did not become available until after the expert disclosure deadline passed.[7]  However, Dr. Schechter's updated report did become available approximately forty-eight days before trial.  Discovery is ongoing up to the date of trial in this case, and "[t]he subject matter of [Dr. Schechter's] opinions is a relatively manageable topic to prepare for without abundant discovery."  *Payne v. Brayton*, No. 4:15-CV-00809, 2017 WL 194210, at *4 (E.D. Tex. Jan. 18, 2017).  While Plaintiffs may have not anticipated the testimony of Dr. Schechter, they certainly anticipate examining Dr. Blotcky at trial.  Further, Dr. Schechter offers overarching opinions on matters that have been relevant throughout the trial: the quality of care and propriety of the admission and retention of patients at Defendants' hospitals.  Additionally, until September 17, 2020, Plaintiffs did anticipate the testimony of Dr. Schechter—thus, Dr. Schechter was only off Plaintiffs' radar for approximately six months.  While the March disclosure for a May trial setting is slightly prejudicial to Plaintiffs, "this is not a case of 'one party ambushing the other with undisclosed expert opinions at trial,' thereby gaining an unfair advantage."  *Adams v. Medtronic, Inc.*, No. 4:19-CV-870-SDJ-KPJ, 2021 WL 949462, at *4 (E.D. Tex. March 12, 2021) (first quoting *In re Complaint of C.F. Bean L.L.C*, 841 F.3d 365, 373 (5th Cir. 2016); and then citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).  Of particular importance is that Plaintiffs will not need to seek another expert to deal with the opinions offered by Dr. Schechter— Dr. Blotcky has opined already regarding the same subject matter.  The consistent nature of Dr. Schechter's reports, the subject matter involved in the experts' opinions, and the involvement of Dr. Blotcky counteract any slight prejudice resulting from the late-disclosed supplemental report of  Dr. Schechter.  As such, this factor weighs neither in favor of nor against a finding of good cause.

---

[7] The Court assumes without deciding that the expert disclosure date in the scheduling order is the operative deadline.

### iv.  Availability of Continuance

Plaintiffs contend that no continuance is available to cure the prejudice resulting from Dr. Schechter's testimony.  Plaintiffs offer multiple arguments in support of their position, with the most relevant being the Court's busy trial schedule.

Defendants respond that "[n]o continuance is necessary to mitigate prejudice[,]" and "Plaintiffs could cure whatever theoretical prejudice they do suffer because Defendants offer to make Dr. Schechter available for deposition as soon as desired to discuss his opinions, during which Plaintiffs may explore any weaknesses in his opinions before the May [11], 2021 trial" (Dkt. #748 at pp. 9–10).

The Court finds a continuance neither practical nor necessary.  While the Fifth Circuit "has repeatedly emphasized that a continuance is the 'preferred means of dealing with a party's attempt to designate a witness out of time[,]" *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1001 (5th Cir. 1998) (quoting *Bradley v. U.S.*, 866 F.2d 120, 127 n .2 (5th Cir. 1989), the Court found no prejudice has resulted from Dr. Schechter's lately-filed supplemental report or re-designation.  Even assuming slight prejudice did exist, such prejudice could be cured "because Defendants offered to make [Dr. Schechter] available" for a deposition at Plaintiffs' earliest request. *Gibson Brands*, 2020 WL 6581868, at *5.  As such, this factor weighs in favor of a finding of good cause.

After considering the relevant factors, the Court finds that Defendants demonstrated good cause to supplement Dr. Schechter's initial report.

### d.  General Opinions

Plaintiffs argue that Dr. Schechter's "designation is incomplete because he provides only general opinions and then specifically states that he has disagreements with Plaintiffs' expert that

14

he fails to specifically list" (Dkt. #727 at p. 1).  However, the Court is not convinced that Plaintiffs' argument is sufficient to strike Dr. Schechter as an expert.

As noted above, the designation of Dr. Schechter was timely.  Further, the Court found good cause exists to allow Defendants to supplement Dr. Schechter's report.  Regarding the specific qualms with Dr. Schechter's opinions, the Court is persuaded that Plaintiffs' arguments regarding "incomplete designations" goes to the weight, not the admissibility of Dr. Schechter's report.  As such, "[v]igorous cross-examination" and the "presentation of contrary evidence" are the proper mechanisms by which the challenge these opinions.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). Plaintiffs have the opportunity to cross-examine Dr. Schechter at trial or, if applicable, in a deposition, Plaintiffs may introduce evidence that strengthens their argument while contradicting Dr. Schechter's ultimate conclusions, and Plaintiffs may argue that Dr. Schechter's opinions were too broad to be reliable during closing arguments. *See id*.  As such, "[v]igorous cross-examination" and the "presentation of contrary evidence" are the proper mechanisms by which the challenge these opinions.  *See id.*

## II.    Boilerplate Designations

Plaintiffs contend that approximately 100 witnesses associated with the Hospitals must be struck because the Hospital Defendants failed "to disclose a summary of the facts and opinions of [the witnesses'] expected testimony under Federal Rule of Civil Procedure 26(a)(2)[.]"  According to Plaintiffs, the Hospital Defendants also failed "to provide an actual current phone number, a good address, and at times the names of the witness" (Dkt. #727 at p. 2).  The Hospital Defendants do not address the boilerplate designations made regarding witnesses associated with the Hospitals.

The Hospital Defendants designated numerous non-retained expert witnesses.  Generally, the Hospital Defendants contend that "[t]he opinions of the listed health care providers are

expected to be based on their care, treatment, and examination of the respective Plaintiffs, and their education, training and experience" (Dkt. #721 at p. 7).  Additionally, "[i]f called to testify at the trial of this cause, each of these individuals is expected to address the care, treatment, and examination each rendered to the respective Plaintiffs, each one's diagnosis of and prognosis for each in light of his or her medical conditions, including likely sequelae, and the facts and findings upon which such diagnosis and/or prognosis are based" (Dkt. #821 at p. 7).  The Hospital Defendants then proceed to list hundreds of witnesses.

Rule 26(a)(2) requires a party provide a disclosure regarding expert witnesses that states: "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and . . . a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C).  However, notwithstanding the general paragraph at the beginning of the list, the Hospital Defendants have offered no specificities comporting with the Rule 26(a)(2) requirements.  The Hospital Defendants have not opined as to the opinions that Landry's Seafood Inn & Oyster Bar – Galveston, Inc. and Brinker International d/b/a Chili's Bar & Grill—or the employees, agents, representatives, independent contractors, and custodian(s) employed therein—will offer regarding Plaintiff Madison Hough's care, treatment, and examination.  The names and addresses of non-retained expert witnesses, without a summary of facts and opinions to which the specific witnesses are expected to testify, are insufficient to satisfy Rule 26(a)(2).  As such, and without any argument as to the propriety of the designations from Hospital Defendants, the Court finds that the objected-to witness designations—specifically designations 5 through 122 on pages 11 to 31 of the Hospital Defendants' First Amended Disclosure of Expert Testimony Pursuant to [Rule] 26(a)(2) and Local Rule CV-26(b) (Dkt. #721)—should be stricken.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Motion to Strike Untimely and Inadequate Amended  Designations of Experts by Hospital Defendants and Defendant Jamal Rafique, MD (Dkt. #727) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that the Hospital Defendants' designations 5 through 122 on pages 11 to 31 of the Hospital Defendants' First Amended Disclosure of Expert Testimony Pursuant to [Rule] 26(a)(2) and Local Rule CV-26(b) (Dkt. #721) are hereby stricken.

**SIGNED this 21st day of April, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

17