# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DIANE CREEL and LYNN CREEL, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No.  4:18-cv-00615 |
| | § | Judge Mazzant |
| DR. SAYS, LLC, et al., | § § | |
| *Defendants*. | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Jamal Rafique, M.D.'s Renewed Motion for Judgment as a Matter of Law (Dkt. #885). Having considered the motion and the relevant pleadings, the Court finds the motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Diane Creel ("Diane") and Lynn Creel ("Lynn") (collectively, "Plaintiffs") took this action to trial in May of 2021, alleging various causes of action based upon Diane's involuntary committal and stay at Behavioral Health of Bellaire ("BHB"). These causes of action include: (1) violation of the civil Racketeer Influenced and Corrupt Organization Act ("RICO"); (2) RICO conspiracy; (3) false imprisonment; (4) medical negligence; and (5) gross negligence.

Plaintiffs sued several defendants, including Dr. Yupo Jesse Chang ("Dr. Chang"), Universal Physicians, PA, Dr. Says, LLC, MD Reliance, Inc., Office Winsome, LLC (collectively the "Chang Defendants"); Yung Husan Yao ("Yao"); Timothy Tom, M.D. ("Tom"); and Dr. Rafique ("Rafique") (collectively, Tom, Yao, the Chang Defendants, and Rafique are hereinafter referred to as "Defendants"). The jury did not find Rafique liable for any civil RICO violations. Despite that finding, the jury did find that Rafique conspired with all other Defendants to violate RICO.

Regarding state-law claims, the jury found no liability against Rafique and Tom for false imprisonment of Diane. The jury also determined that Rafique and BHB were medically negligent, though Tom was not. Rafique was assigned 60% of the negligence apportionment, and BHB was assigned 40%. Diane's damage amounts awarded are as follows: (1) $75,000.00 for physical pain and mental anguish sustained in the past; (2) $50,000.00 for physical pain and mental anguish that, in reasonable probability, Diane will sustain in the future; (3) $85,500.00 for loss of earning capacity sustained in the past; (4) $104,000.00 for loss of earning capacity that, in reasonable probability, Diane will sustain in the future; (5) $15,000.00 for medical care expenses incurred in the past; and (6) $50,000.00 for medical care expenses that, in reasonable probability, Diane will incur in the future. Despite these findings, the jury did not impose gross negligence liability on either Rafique or Tom.

The specific findings from Questions 3, 4, 5, and 8 of the verdict form are relevant to this motion. In Question 3, the jury was asked: "Have Plaintiffs proved by a preponderance of the evidence that Dr. Rafique, Dr. Tom, Dr. Chang, Universal Physicians, P.A., Dr. Says, LLC, MD Reliance, Inc., Office Winsome, LLC, or Yao, or all Defendants, if any, were employed by or associated with the alleged enterprise?" (Dkt. #850 at p. 3). The jury answered "Yes" to all Defendants except for Rafique, for whom the jury answered "No" (Dkt. #850 at p. 3).

In Question 4 the jury was asked: "Have Plaintiffs proved by a preponderance of the evidence that Dr. Rafique, Dr. Tom, Dr. Chang, Universal Physicians, P.A., Dr, Says, LLC, MD Reliance, lnc., Office Winsome, LLC, Yao, or all Defendants participated, either directly or indirectly, in the conduct of the affairs of the enterprise? (Dkt. #850 at p. 4). Again, the jury answered "Yes" to all Defendants except for Rafique, for whom the jury answered "No" (Dkt. #850 at p. 4).

In Question 5, the jury was asked: "Have Plaintiffs proved by a preponderance of the evidence that Dr. Rafique, Dr. Tom, Dr. Chang, Universal Physicians, P.A., Dr. Says, LLC, MD Reliance, Inc., Office Winsome, LLC, Yao, or all Defendants participated through a pattern of racketeering activity?" (Dkt. #850 at p. 5). The jury answered "Yes" to all Defendants except for Rafique, for whom the jury answered "No" (Dkt. #850 at p. 5).

However, in Question 8, the jury was asked: "Have Plaintiffs proved by a preponderance of the evidence that Dr. Rafique, Dr. Tom, Dr. Chang, Universal Physicians, P.A., Dr. Says, LLC, MD Reliance, Inc., Office Winsome, LLC, and Yao conspired together to violate RICO?" (Dkt. #850 at p. 7). The jury answered "Yes." There was not an option to select "Yes" or "No" for individual Defendants (Dkt. #850 at p. 7).

Defendants moved for judgment as a matter of law (or "JMOL") prior to the jury's verdict (Dkt. #845). Rafique has now renewed his motion for judgment as a matter of law on the jury's findings regarding civil RICO conspiracy liability and state law healthcare liability (Dkt. #885). Plaintiffs filed their response on August 23, 2021 (Dkt. #887). Rafique filed his reply on September 9, 2021 (Dkt. #894), and Plaintiffs filed their sur-reply on September 23, 2021 (Dkt. #895).

## LEGAL STANDARD

Upon a party's renewed motion for judgment as a matter of law following a jury verdict, the Court should properly ask whether "the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict." *Am. Home Assurance Co. v. United Space All.*, 378 F.3d 482, 487 (5th Cir. 2004); FED. R. CIV. P. 50(a). "The grant or denial of a motion for judgment as a matter of law is a procedural issue . . . reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Finisar Corp. v. DirectTV Grp., Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008). "A JMOL may only be granted when,

3

'viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion." *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1261 (Fed. Cir. 2013) (quoting *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838 (5th Cir. 2004)).

Under Fifth Circuit law, a court should be "especially deferential" to a jury's verdict and must not reverse the jury's findings unless substantial evidence does not support the findings. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000). A motion for judgment as a matter of law must be denied "unless the facts and inferences point so strongly and overwhelming in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden*, 693 F.3d at 498 (citation omitted). However, "[t]here must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

In evaluating a motion for judgment as a matter of law, a court must "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [the court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 451 (5th Cir. 2013) (citation omitted). Further, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving

party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.'" *Id.* at 151 (citation omitted).

## ANALYSIS

Rafique asserts JMOL is appropriate for two reasons: (1) Plaintiffs have not raised any evidence of a RICO conspiracy against Rafique; and (2) Plaintiffs lack sufficient evidence to support the jury's findings against Rafique for health care liability and medical negligence against under Texas. Plaintiffs respond that JMOL is improper on RICO conspiracy, and that "[t]here is sufficient evidence supporting the Plaintiffs' healthcare liability/medical negligence claims" (Dkt. #887 at p. 38). The Court will address each point in turn.

### I.     Civil RICO Conspiracy Liability

Rafique offers five specific reasons why the jury's finding of RICO conspiracy should be set aside: (1) "[t]here was no evidence which established an 'enterprise' of Dr. Rafique associating with other Defendants for a common purpose of engaging in a course of conduct"; (2) "[t]here was no evidence which established a 'pattern' of racketeering activity by Dr. Rafique"; (3) "[t]here was no evidence which established any 'racketeering activity' by Dr. Rafique"; (4) "[t]here was no evidence which established participation in a RICO conspiracy by Dr. Rafique"; and (5) "[m]ost importantly, the jury . . . answered" no to all RICO questions on the verdict form pertaining to Rafique, notwithstanding conspiracy (Dkt. #885 at pp. 4–5). Plaintiffs argue that "Rafique, along with each remaining Defendant, is jointly and severally liable under RICO as a conspirator" (Dkt. #887 at p. 32).

In the criminal context, Plaintiff would be correct. However, for the reasons detailed below, Rafique cannot be held liable as a conspirator, in the civil context, without a predicate finding of liability under subsection §§ 1962(a), (b), or (c).

5

As an initial matter, "the Fifth Circuit has clearly required that, to succeed on a statutory civil conspiracy theory under § 1962(d), a plaintiff must be able to plead and prove a violation of a provision of subsection (a), (b), or (c) of § 1962." *In re Sunpoint Secs.,* 350 B.R. 741, 751 (Bankr. E.D. Tex. 2006) (citing *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 930 (5th Cir. 2002) ("The failure to plead the requisite elements of either a § 1962(a) or § 1962(c) violation implicitly means [the plaintiff] cannot plead a conspiracy to violate either section.")). Just last year, the Fifth Circuit again noted that "a civil RICO claim requires a substantive RICO violation plus an injury." *HCB Fin. Corp. v. McPherson*, 8 F4th 335, 343 (5th Cir. 2021). Here, Plaintiffs did not prove, as evidenced by the jury's findings in verdict form questions 3, 4, and 5, that Rafique was "employed by or associated with the alleged enterprise," that Rafique "participated, either directly or indirectly, in the conduct of the affairs of the enterprise," or that Rafique "participated through a pattern of racketeering activity" (Dkt. #850 at pp. 3–5).

The Fifth Circuit recently dismissed a plaintiff's claim under RICO when the plaintiff "failed to properly plead a claim under §§ 1962(a), (b), or (c)" because, as the Fifth Circuit reasoned, the plaintiff's failure to appropriately plead a substantive RICO violation under subsections (a), (b), or (c), meant plaintiff "correspondingly failed to properly plead a claim under § 1962(d)." *North Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015) (first citing *Nolen*, 293 F.3d at 930; and then citing *Pan Am. Mar., Inc. v. Esco Marine, Inc.*, No. C.A. B-04-188, 2005 WL 1155149, at *8 (S.D. Tex. May 10, 2005)). Ultimately, Fifth Circuit precedent unequivocally dictates that "a civil RICO conspiracy claim cannot stand absent a showing of a substantive RICO violation." *Lavin v. Bank of Am. Corp.*, No. 3:09-CV-2440-P, 2010 WL 4883434, at *3 (N.D. Tex. Dec. 1, 2010) (citing *Nolen*, 293 F.3d at 930).

The jury's answers in verdict form questions 3, 4, and 5 necessitate a finding that Plaintiffs did not prove a substantive RICO violation as to Rafique.[1] As such, the jury's finding that Rafique conspired with the other Defendants to violate RICO, as a matter of law, cannot stand.

## II. Medical Negligence

Rafique also challenges the jury's finding of medical negligence. Specifically, Rafique argues that Plaintiffs lack competent expert testimony regarding standard of care and Rafique breached that standard. Plaintiffs claim that "the jury's verdict on this point was supported by sufficient evidence, including a properly qualified medical expert" (Dkt. #887 at p. 38). According to Plaintiffs, "the jury was presented with conflicting testimony—either of which the jury was entitled to believe" (Dkt. #887 at p. 38).

The Court submitted medical negligence to the jury, despite Plaintiffs' original claim alleging only ordinary negligence. The Court reached this decision by looking to the nature of Plaintiffs claims. *See Tex. West Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 176 (Tex. 2012) ("In seeking to distinguish ordinary negligence claims from [healthcare liability claims ('HCLCs')], the heart of these cases lies in the nature of the acts or omissions causing claimant's injuries and whether the events are within the ambit of the legislated scope of the [Texas Medical Liability Act ('TMLA')].").

Under Chapter 74 of the Texas Civil Practice and Remedies Code, a health care liability claim is "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds

---

[1] *See supra* p. 3.

in tort or contract." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). Because Diane's causes of action stemmed from her care and treatment at BHB, and the claims brought against her healthcare providers related to the care she received, the claims were properly submitted as an HCLC—namely, medical negligence—rather than ordinary negligence. Equally as important, "[c]auses of action that are HCLCs cannot be transmuted to avoid the structures of the medical liability statute." *Tex. West Oaks Hosp., LP*, 371 S.W.3d at 176.

"Claims for injuries arising from departures from proper 'treatment performed or furnished, or that should have been performed or furnished' are health care claims." *Id.* (quoting TEX. CIV. PRAC. & REM. CODE § 74.001(a)(10). "To prevail on [a] medical negligence claim under Texas law, [a plaintiff] must show: (1) [defendant] owed [plaintiff] a duty to meet the relevant standard of care; (2) [defendant] breached that standard of care; (3) [plaintiff] suffered injury; and (4) [defendant's] breach caused that injury." *Trimble v. Millwood Hosp.*, 420 F. Supp. 3d 550, 556 (N.D. Tex. 2016) (citing *Mills v. Angel*, 995 S.W.2d 262, 267 (Tex. App.—Texarkana 1999, no pet.). "The standard of care for a . . . medical provider is what an ordinary . . . medical provider would do under the same or similar circumstances." *Shaw v. BMW Healthcare, Inc.*, 100 S.W.3d 8, 13 (Tex. App.—Tyler 2002, no pet.). "The plaintiff must establish the standard of care as a threshold issue before the factfinder may consider whether the defendant breached that standard of care to the extent it constituted negligence." *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008) (citing *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003)). Notably, "'[u]nless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman, expert testimony will be required' to meet the plaintiff's burden of proof." *Id.* (quoting *Hood v. Phillips*, 554 S.W.2d 160, 165–66 (Tex. 1977)).

8

"The expert must . . . to a reasonable degree of medical probability, explain how and why the negligence caused the injury." *Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010). "[W]hen the facts support several possible conclusions, only some of which establish that the defendant's negligence caused the plaintiff's injury, the expert must explain to the fact finder why those conclusions are superior based on verifiable medical negligence, not simply the expert's opinion." *Id.* (citing *Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 707 (Tex. 1970)).

Dr. Mark Blotcky ("Blotcky") testified as an expert for Plaintiffs in this case. Blotcky testified at trial that his opinions were based "on a reasonable degree of medical certainty" (Dkt. #875 at p. 1840). Regarding Rafique's purported violation of the standard of care, Blotcky testified that "you need to be absolutely certain that . . . the guideline is least restrictive" (Dkt. #875 at p. 1839). Blotcky then stated that "if you could be treated as an outpatient, that[ is] where you start," and the doctor is then supposed to ask "does [the patient] really need something more intense because [the patient] was that dangerous, especially to be pushed into the hospital involuntarily" (Dkt. #875 at p. 1839). When asked "do you find that those violations of the standard of care caused harm to Diane Creel," Blotcky answered yes (Dkt. #875 at p. 1840). Blotcky stated that his opinion was rendered "within a reasonable degree of medical certainty" (Dkt. #875 at pp. 1839–40).

Defendants assert that Blotcky did not specifically note which actions taken by Rafique violated the standard of care. Because Blotcky offered no concrete examples of Rafique's actions that would show any violation, Defendants argue that the trial testimony was simply *ipse dixit* without the requisite factual support.

Plaintiffs respond that Blotcky walked through each of the requisite elements during his direct examination, contending that "Rafique's motion even reproduces the testimony of the

9

witness during his testimony on this point setting out the standard of care and that there was a breach of that standard" (Dkt. #887 at p. 38). Further, the motion "reproduces cross-examination that makes crystal clear that there was a disagreement whether the standard of care was met—a dispute that the jury resolved" in favor of Plaintiffs (Dkt. #887 at p. 38).

The Court finds that Plaintiffs produced sufficient evidence to uphold the jury's finding of medical negligence against Rafique. Plaintiff's expert, Blotcky, testified that the standard of care required Rafique, as a psychiatrist to provide the "least restrictive form of treatment" under the circumstances (Dkt. #875 at pp. 1839–40). He then testified that a psychiatrist should begin by considering outpatient care, then "a day hospital," and lastly, inpatient care (Dkt. #875 at pp. 1839). He also testified that he did not find Diane "was that dangerous, especially to be pushed into the hospital involuntarily" (Dkt. #875 at pp. 1839). This came after hours of testimony, from Blockty and others, regarding Diane's mental state when she arrived at BHB. Lastly, Blotcky testified to "a reasonable degree of medical certainty" that Rafique's "violations of the standard of care . . . caused harm to Diane" (Dkt. #875 at pp. 1839–40). The jury found this evidence was substantial and credited Blockty's testimony by finding against Rafique. Even if Plaintiffs did not produce direct evidence to prove a legal element of a particular claim, the "drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves*, 530 U.S. 133 at 150.

As Defendants note, admissible expert testimony "offers no expert assistance to the jury" when "an opinion is fundamentally unsupported." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). Blockty supported his expert opinion by walking the jury through his personal qualifications, his reasons for concluding that the danger Diane presented did not meet the threshold required for admission to inpatient care, the missteps made by Rafique and other Defendants, and the harm it caused Diane. It is not for the "especially deferential" Court to supplant

10

the jury's findings when the Court believes that reasonable jurors could arrive at such a conclusion. *See e.g.*, *Baisden*, 693 F.3d at 499; *Dresser-Rand Co.*, 361 F.3d at 838.

## CONCLUSION

It is therefore **ORDERED** that Defendant Jamal Rafique, M.D.'s Renewed Motion for Judgment as a Matter of Law (Dkt. #885) is **GRANTED in part** and **DENIED in part**. The Court sets aside the jury's verdict that Rafique conspired with all other Defendants to violate RICO because the finding cannot stand as a matter of law. The Court does not set aside the jury's verdict that Rafique was medically negligent in his care of Diane Creel.

**IT IS SO ORDERED**.

**SIGNED this 14th day of February, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE